UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOEL THOMAS TOLER,

          Plaintiff,

    v.

DAVID PAULSON; COUNTY OF SOLANO;
AL GARZA; and BROOK BYERLY,

          Defendants.

_____/

NO. CIV. S-06-735 LKK/DAD

O R D E R

    Plaintiff, Joel Thomas Toler ("Toler"), brought suit against defendants David Paulson (District Attorney for Solano County), the County of Solano, Al Garza (chief investigator for the Solano County D.A.'s office), and Brook Byerly (supervising investigator for the Solano County D.A.'s office) ("defendants"), alleging civil rights violations pursuant to 42 U.S.C. § 1983. Specifically, plaintiff avers that defendants retaliated against him, conspired to violate his civil rights and were inappropriately granted a

////

////

1

1  search warrant.[1]

2      Pending before the court is defendants' motion to dismiss

3  pursuant to Fed. R. Civ. P. 12(b)(6).  The matter is decided based

4  on the papers and pleadings filed herein and after oral argument.

5                                **I.**

6                      **FACTUAL BACKGROUND[2]**

7      Plaintiff is a licensed bail bondsman and licensed private

8  investigator with a principal place of business in Fairfield,

9  California.  Compl. at 2.  On March 27, 2005, plaintiff filed a

10 police report with the Fairfield Police Department regarding

11 threats of physical violence against his children.  Id.

12     On April 7, 2005, plaintiff came to the Solano County District

13 Attorney's Office ("D.A."), in an attempt "to find out if any

14 action was going to be taken on the report."  Compl. at 3.

15 According to sworn testimony from William Godwin, an investigator

16 for the D.A.'s office, plaintiff appeared "upset," but later

17 "calmed down enough for Godwin to take a statement regarding

18 plaintiff's report of threats."  Id.  Dissatisfied with defendants'

19 alleged inaction, plaintiff placed an advertisement in a local

20 Fairfield newspaper on April 12, 2005, which was critical of

21 defendants and the D.A.'s office.  Id.

22 ───────────────────

23     [1]  Plaintiff prays for the following relief: (1) compensatory
   damages; (2) exemplary and punitive damages; (3) preliminary and
24 permanent injunctions preventing defendants from further depriving
   plaintiff of his constitutional rights; (4) declaratory relief; (5)
25 attorneys' fees and costs; (6) and "other and further relief as may
   be ordered by the court." Compl. at 6-7.

26     [2]  All facts are derived from plaintiff's complaint.

                                2

1        Plaintiff alleges that on the same day, April 7, 2005,

2  defendant Byerly spoke to defendant Paulson about preparing a

3  report regarding plaintiff's violation of California Penal Code

4  § 76 when he visited the D.A.'s office on April 7, 2005 -

5  specifically, that plaintiff made threats against a public officer

6  or office.[3]  Compl. at 3.  Plaintiff claims the alleged "threat"

7  was "[d]on't make me defend my children."  <u>Id</u>.  Plaintiff avers

8  that defendants asked Godwin to prepare a memorandum regarding

9  Godwin's encounter with plaintiff during his April 7, 2005 visit,

10  "even though Godwin did not believe the incident necessitated

11  preparation of a memorandum."  <u>Id</u>.

12        Although the complaint does not make clear, plaintiff appears

13  to concede that he visited the D.A.'s office again on June 13,

---

14

15      [3]  Cal. Penal Code § 76(a)(1)-(2) provides, in pertinent part:
"[e]very person who knowingly and willingly threatens the life of,

16  or threatens serious bodily harm to, any elected public official,
county public defender, county clerk, exempt appointee of the

17  Governor, judge, or Deputy Commissioner of the Board of Prison
Terms, or the staff, immediate family, or immediate family of the

18  staff of any elected public official, county public defender,
county clerk, exempt appointee of the Governor, judge, or Deputy

19  Commissioner of the Board of Prison Terms, with the specific intent
that the statement is to be taken as a threat, and the apparent

20  ability to carry out that threat by any means, is guilty of a
public offense, punishable as follows:

21

22      (1) Upon a first conviction, the offense is punishable by a
fine not exceeding five thousand dollars ($5,000), or by

23  imprisonment in the state prison, or in a county jail not
exceeding one year, or by both that fine and imprisonment.

24      (2) If the person has been convicted previously of violating
this section, the previous conviction shall be charged in the

25  accusatory pleading, and if the previous conviction is found
to be true by the jury upon a jury trial, or by the court

26  upon a court trial, or is admitted by the defendant, the
offense is punishable by imprisonment in the state prison."

2005.   Compl. at 3-4. Plaintiff denies that he made any threats while visiting the D.A.'s office on this date.   Id.   Nevertheless, on June 15, 2005, defendants filed a "Petition of Employer for Injunction Prohibiting Violence or Threats of Violence against Employee and Application for Temporary Restraining Order" ("Workplace Violence Petition") pursuant to Cal. Civ. Proc. Code § 527.8 and 527.9.[4]   Id. at 3.   The petition sought to prevent plaintiff from coming within 500 yards of the D.A.'s office.   Id. Toler's business was within the 500 yards of the D.A.'s office. The petition was granted by the Solano Superior Court on the same day it was filed, June 15, 2005.   Id.

Plaintiff contends that it was defendants' "false statement" that "Toler had threatened to bring an Uzi to the District Attorney's Office" and that Garza was "an expert on workplace violence," that formed the basis for defendants' Workplace Violence Petition.   Compl. at 4.

On September 22, 2005, plaintiff maintains that he was standing in the first level of a public parking lot near the D.A.'s office when defendant Paulson "approached him."   Compl. at 4. Plaintiff alleges that he did not know it was defendant Paulson until someone called out Paulson's name.   Plaintiff alleges that he made no threatening gestures or movements towards defendant Paulson. Compl. at 4.   Plaintiff states that he "did extend his hand to shake Mr. Paulson's hand," but that this meeting was

---

[4]   See County of Solano, et al. v. Toler (Solano Superior Court Case No. FCS026197).

4

1  coincidental and "did not involve any violation of the TRO."

2  Compl. at 4.

3      Defendants nonetheless sought criminal prosecution of

4  plaintiff pursuant to Cal. Penal Code § 166 for violating the TRO.

5  Compl. at 4.  On October 27, 2005, criminal charges were brought

6  against plaintiff alleging five violations of Cal. Penal Code

7  § 166.[5]  (See People v. Toler, (Solano Case No. FCC 227937)).

8  Compl. at 4.

9      Plaintiff asserts that on November 3, 2005, defendants

10 obtained a search warrant that "was based on false or otherwise

11 inadequate information," without probable cause for the requested

12 search warrant, the issuance of which "violated the Fourth

13 Amendment of the United States Constitution." Compl. at 4.

14 Plaintiff alleges that, "as against the County [of Solano]," "the

15 acts complained of are indicative and representative of its custom

16

17     [5]  Cal. Penal Code § 166 provides, in pertinent part:
   "Criminal contempts; Punishment for contempt consisting of stalking

18 (a) Except as provided in subdivisions (b), (c), and (d), every
   person guilty of any contempt of court, of any of the following
   kinds, is guilty of a misdemeanor:

19

20     (4) Willful disobedience of the terms as written of any
   process or court order or out-of-state court order, lawfully
   issued by any court, including orders pending trial.

21 (b)

22     (1) Any person who is guilty of contempt of court under
   paragraph (4) of subdivision (a) by willfully contacting a

23 victim by phone or mail, or directly, and who has been
   previously convicted of a violation of Section 646.9 shall be

24 punished by imprisonment in a county jail for not more than
   one year, by a fine of five thousand dollars ($5,000), or by
   both that fine and imprisonment.

25 (2) For the purposes of sentencing under this subdivision,
   each contact shall constitute a separate violation of this

26 subdivision."

5

1  and polices," and that such customs and polices are a result of

2  "the County's indifference to prosecution of individuals in

3  retaliation for their exercise of their constitutional rights."

4  Compl. at 5.

5      Finally, plaintiff complains that a "conspiracy existed among

6  the Defendants herein and others to deprive Plaintiff of his civil

7  rights through a concerted campaign to intimidate Plaintiff by

8  bringing the Petition and the Criminal Case and taking the actions

9  referenced above."  Compl. at 6.

10     Both parties agree that there are pending criminal and civil

11 proceedings.  The pending criminal case is scheduled to be tried

12 on October 27, 2006.  The pending Workplace Violence Petition is

13 scheduled for trial on September 14, 2006.  Mot. at 4; Opp'n at 5.

14                                 **II.**

15        **DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)**

16     On a motion to dismiss, the allegations of the complaint must

17 be accepted as true.  See <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).

18 The court is bound to give the plaintiff the benefit of every

19 reasonable  inference  to  be  drawn  from  the  "well-pleaded"

20 allegations of the complaint.  See <u>Retail Clerks Intern. Ass'n,</u>

21 <u>Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).

22 Thus, the plaintiff need not necessarily plead a particular fact

23 if that fact is a reasonable inference from facts properly alleged.

24 See  <u>id.</u>;  <u>see also</u>  <u>Wheeldin v. Wheeler</u>,  373  U.S.  647,  648

25 (1963)(inferring fact from allegations of complaint).

26     In  general,  the  complaint  is  construed  favorably  to  the

6

1  pleader.   See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   So

2  construed, the court may not dismiss the complaint for failure to

3  state a claim unless it appears beyond doubt that the plaintiff can

4  prove no set of facts in support of the claim which would entitle

5  him or her to relief.   See Hishon v. King & Spalding, 467 U.S. 69,

6  73 (1984)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).   In

7  spite of the deference the court is bound to pay to the plaintiff's

8  allegations, however, it is not proper for the court to assume that

9  "the [plaintiff] can prove facts which [he or she] has not alleged,

10 or that the defendants have violated the . . . laws in ways that

11 have  not  been  alleged."    Associated  General  Contractors  of

12 California, Inc. v. California State Council of Carpenters, 459

13 U.S. 519, 526 (1983).

14      When the legal sufficiency of a complaint's allegations is

15 tested by a motion under Fed. R. Civ. P. 12(b)(6), review is

16 limited to the complaint. Lee v. City of Los Angeles, 250 F.3d 668,

17 688 (9th Cir. 2001). As a general rule, "a district court may not

18 consider any material beyond the pleadings in ruling on a Fed. R.

19 Civ. P. 12(b)(6) motion." Id. There are two exceptions to the

20 requirement that consideration of extrinsic evidence converts a

21 Fed. R. Civ. P. 12(b)(6) motion to a summary judgment motion: (1)

22 a court may consider material which is properly submitted as part

23 of the complaint on a motion to dismiss without converting the

24 motion to dismiss into a motion for summary judgment, even if the

25 documents are not physically attached to the complaint, so long as

26 the documents' authenticity is not contested and the plaintiff's

1  complaint necessarily relies on them; and (2) under Fed. R. Evid.
2  201, a court may take judicial notice of matters of public record.
3  Id. at 688-89. A court may take judicial notice of matters of
4  public record without converting a motion to dismiss into a motion
5  for summary judgment, but may not take judicial notice of a fact
6  that is subject to reasonable dispute. Id. at 689.

**III.**

**ANALYSIS**

9      Defendants contend that there are several reasons why
10 plaintiff's claim should be dismissed. Defendants make two main
11 arguments - namely, that plaintiff's claims are barred under the
12 Younger doctrine,[6] or, in the alternative, under the Heck
13 doctrine.[7] Mot. at 4, 6. Defendants also move to dismiss the case
14 on a number of other bases.[8] Plaintiff opposes defendants' motion
15 to dismiss. For the reasons provided herein, the instant action
16 must be stayed under Younger principles.
17 ////
18 ////

19 _____

20      [6] See Younger v. Harris, 401 U.S. 37 (1971).

21      [7] See Heck v. Humphrey, 512 U.S. 477 (1994).

22      [8] Defendants argue that if the court chooses not to dismiss
   plaintiff's claims based on either one of these two doctrines,
23 plaintiff nonetheless fails to state a claim upon which relief may
   be granted pursuant to Fed. R. Civ. P 12(b)(6). According to
24 defendants, plaintiff fails to state proper claim under 42 U.S.C.
   §§ 1983 or 1985 and that they are entitled to either absolute
25 immunity or qualified immunity. Id. at 12-15. Finally, defendants
   maintain that plaintiff fails to state a "Monell-type" claim
26 against the County of Solano.  Id. at 18.

1    A.    THE <u>YOUNGER</u> DOCTRINE

2    Defendants maintain that plaintiff's complaint should be

3    dismissed under <u>Younger</u>.  Mot. at 4.  Plaintiff does not dispute

4    that there are ongoing civil and criminal proceedings, nor that

5    these proceedings, "if legitimate, involve important state

6    interests."  Plaintiff, however, disputes defendants' contention

7    that the state proceedings provide him an adequate opportunity to

8    litigate his federal constitutional claims in the state civil

9    proceedings.  Opp'n at 5.[9]  In the alternative, plaintiff argues

10   that even if the <u>Younger</u> doctrine does apply, abstention is

11   inappropriate as "bad faith prosecution or harassment is present."

12   <u>Id</u>. at 6.  Below, I explain that the case must be stayed under

13   <u>Younger</u>.

14   In order for <u>Younger</u> to apply, a federal court action must

15   likely interfere with the state proceedings.  <u>Younger</u> and its

16   progeny "generally direct federal courts to abstain from granting

17   injunctive or declaratory relief that would interfere with pending

18   state judicial proceedings." <u>Hirsh v. Justices of the Supreme</u>

19   <u>Court</u>, 67 F.3d 708, 713 (9th Cir. 1995)(citing <u>Younger</u>, 401 U.S.

20   at 41); <u>Gilbertson v. Albright</u>, 381 F.3d 965, 970 (9th Cir. 2004).

21   The state proceedings can be criminal or civil in nature.  <u>See</u>

22   <u>Younger</u>, 401 U.S. at 41; <u>M&A Gabaee v. Cmty. Redevelopment Agency</u>

23   <u>of L.A.</u>, 419 F.3d 1036, 1039 (9th Cir. 2005).  There is a

24   presumption that when a federal court's actions may interfere with

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26   [9]  Plaintiff did not attempt to make this argument during the
     July 24th, 2006 hearing on defendants' motion to dismiss.

9

1  pending state court proceedings, the federal court should abstain

2  from adjudicating the matter.  See Pennzoil Co. v. Texaco, Inc.,

3  481 U.S. 1, 11 (1987)(stating "[i]t is a basic doctrine of equity

4  jurisprudence that courts of equity should not act – and

5  particularly should not act to restrain a criminal

6  prosecution--when the moving party has an adequate remedy at law");

7  Juidice v. Vail, 430 U.S. 327 (1977)(stating "[t]he vital

8  consideration behind the Younger doctrine of nonintervention lays

9  in the notion of 'comity,'" that is, a proper respect for state

10 functions).  In the case at bar, there is no doubt that any relief

11 provided by this court would interfere with the state court

12 proceedings.  In order to prevail on his retaliation claim,

13 plaintiff must show that these proceedings were instituted

14 illegitimately and that the TRO was issued without probable cause.

15 Further, the court must make factual findings which may interfere

16 with findings that the state court will make in the two pending

17 trials.  Clearly, then, Younger would apply to the instant case

18 because any relief provided by this court would directly impact the

19 pending state proceedings.

20     After determining that a federal court action would likely

21 interfere with state proceedings, the court must apply a three-

22 prong test.  Younger principles apply in an action pursuant to 42

23 U.S.C. § 1983 in which a federal plaintiff brings a constitutional

24 challenge to a state proceeding when: (1) that proceeding is

25 ongoing; (2) the state proceeding is of a judicial nature,

26 implicating important state interests; and (3) the federal

1   plaintiff is not barred from litigating his federal constitutional

2   issues in that proceedings. <u>Gilbertson v. Albright</u>, 381 F.3d 965,

3   984 (9th Cir. 2004). "Absent extraordinary circumstances,

4   abstention in favor of state judicial proceedings is required" if

5   those three requirements are met. <u>Hirsh</u>, 67 F.3d at 713.

6       Even when <u>Younger</u> is implicated, however, the court is not

7   "obliged to refrain from intervention where it finds that the state

8   proceeding is motivated by a desire to harass or is conducted in

9   bad faith, or where the challenged statute is flagrantly and

10  patently violative of express constitutional prohibitions in every

11  clause, sentence and paragraph, and in whatever manner and against

12  whomever an effort might be made to apply it." <u>Gilbertson</u>, 381

13  F.3d at 983.  Bad faith "generally means that a prosecution has

14  been brought without a reasonable expectation of obtaining a valid

15  conviction." <u>Baffert v. Cal. Horse Racing Bd.</u>, 332 F.3d 613, 621

16  (9th Cir. 2003)(citation omitted); <u>Kugler v. Helfant</u>, 421 U.S. 117

17  (1975).

18      The court turns to the facts of the case at bar, the three-

19  prong test derived from <u>Younger</u>, and the bad faith exception

20  invoked by plaintiff.

21      **1.   <u>Whether There are Ongoing State Proceedings</u>**

22      Proceedings are deemed ongoing for purposes of <u>Younger</u>

23  abstention until state appellate review is completed. <u>Gilbertson</u>,

24  381 F.3d at 970.  Defendants maintain, and plaintiff does not deny,

25  that there are ongoing state criminal and civil proceedings,

26  regarding plaintiff's alleged violations of Cal. Penal Code § 166

1  and Cal. Civ. Proc. Code § 527.8, respectively.  Mot. at 4; Opp'n

2  at 5.  The Workplace Violence Petition is scheduled for trial on

3  September 14, 2006, and the criminal proceedings are scheduled to

4  be tried on October 27, 2006.  These proceedings have not undergone

5  state appellate review, and therefore, must be considered ongoing.

6  See Gilbertson, 381 F.3d at 970.

7      **2.   Whether the State Proceedings Implicate Important State**
       **Interests**
8

9      Defendants maintain that the state proceedings in question

10  implicate important state interests.  Defs.' Mot. at 5.  They argue

11  that the civil Workplace Violence Petition proceedings afford the

12  "County the opportunity and ability to protect itself and its staff

13  from potential threats of violence in the workplace."  Id.  Thus,

14  defendants argue that it is "axiomatic that the County, in

15  exercising its right under the laws of the State of California to

16  petition for relief under the law, clearly implicates important

17  state rights."  Defendants also argue that the State's interest in

18  prosecuting crimes is "unquestionably an important state interest

19  in which the federal court should not interfere."  Id.  Plaintiff

20  does not dispute that "the proceedings, if legitimate, involve

21  important state interests."  Opp'n at 5.  Defendants' point is

22  well-taken.

23      Federal courts have recognized that states have an important

24  interest in enforcing orders and judgments of their judicial

25  systems. See Texaco, 481 U.S. 1, 14 (1987)(holding that a state

26  court's ability to enforce its orders is an important interest);

1   see also Juidice, 430 U.S. at 334-37 (holding that "the principles

2   of abstention under which a federal court must refrain from

3   interference in certain state court proceedings for reasons of

4   federalism and comity apply to a case in which the state's contempt

5   process is involved"). "Younger principles apply to civil

6   proceedings implicating important state interests." M&A Gabaee, 419

7   F.3d at 1039.

8        State courts also have an important interest in not having

9   federal courts unnecessarily interfere with pending criminal

10  proceedings. See Wiener v. County of San Diego, 23 F.3d 263, 267

11  (9th Cir. 1994)(stating "[i]nterests of comity and federalism

12  counsel federal courts to abstain from jurisdiction whenever

13  federal claims have been or could be presented in ongoing state

14  judicial proceedings that concern important state interests); Cf.

15  California Diversified Promotions, Inc. v. Musick, 505 F.2d 278,

16  282 (9th Cir. 1974)(suggesting that abstention is unnecessary in

17  circumstances where prospective declaratory or injunctive relief

18  would not interfere with pending prosecutions).  Additionally, a

19  state's ability to prosecute crimes and protect its citizens is

20  clearly an important state interest. See Younger, 401 U.S. at

21  43-49.  In sum, the proceedings at issue are of a judicial nature

22  and implicate important state interests.

23       **3.   Whether the State Proceedings Afford Federal
              Plaintiff an Adequate Opportunity to Litigate
24            Federal Claims**

25       The burden rests on a federal plaintiff to show that he is

26  barred from raising his federal claims in the state court action.

1  <u>Texaco</u>, 481 U.S. at 13; <u>Wiener</u>, 23 F.3d at 267.  Federal plaintiffs

2  "need be accorded only an opportunity to fairly pursue their

3  constitutional claims in the ongoing state proceedings, and their

4  failure to avail themselves of such opportunities does not mean

5  that the state procedures were inadequate."  <u>Juidice</u>, 430 U.S. at

6  338.  Federal courts are not allowed to presume that state courts

7  are incapable of properly adjudicating federal constitutional

8  claims, and "when a litigant has not attempted to present his

9  federal claims in related state court proceedings, a federal court

10 should assume that state procedures will afford an adequate remedy,

11 in the absence of unambiguous authority to the contrary."  <u>Texaco</u>,

12 481 U.S. at 15.  "It is the policy of the state [of California]

13 that contempt citations not be taken lightly, especially criminal

14 contempt.  An alleged contemnor is entitled to the full panoply of

15 substantive and due process rights in adjudicating even civil

16 contempt."  <u>People v. Kalnoki</u>, 7 Cal.App.4th Supp. 8

17 (Cal.App.Super.Ct. 1992)(citation omitted).

18      Defendants maintain that in defending the criminal and civil

19 charges against him, plaintiff will have an adequate opportunity

20 to present his federal constitutional claims in the state court

21 proceedings.  Mot. at 6.  Specifically, defendants assert that

22 plaintiff faces no state constitutional or statutory bar from

23 arguing defendants' conduct violated his federal constitutional

24 rights.  <u>Id</u>.

25      Plaintiff contests the assertion that the state civil court

26 proceedings will provide him an adequate opportunity to litigate

14

1  his federal constitutional issues.  Opp'n at 5.  Plaintiff argues

2  that he will lack the opportunity to litigate "whether the Petition

3  was initiated in retaliation for his valid exercise of his First

4  Amendment Rights." Id. Plaintiff further states, "it does not

5  appear to be a defense that a restraining order was obtained in

6  retaliation for the exercise of constitutional rights." Id.

7       As explained below, the court must apply the Younger doctrine

8  because plaintiff has failed to meet his burden of showing that he

9  is barred from raising his federal claims in the state court

10 proceedings.  Texaco, 481 U.S. at 13; Wiener, 23 F.3d at 267.

### a.  Workplace Violence Petition/TRO Proceedings

12      Both parties fail to discuss whether a plaintiff may

13 adequately litigate his or her federal constitutional issues in a

14 § 527.8 Workplace Violence Petition/TRO proceeding.  Indeed, the

15 court has found a dearth of authority on this issue.  Only one case

16 appears to reach this issue at all, and based on this authority,

17 it is unclear whether the § 527.8 proceeding will provide Toler the

18 opportunity to litigate his federal claims.

19      In USS-Posco Industries v. Edwards, 111 Cal.App.4th 436 (Cal.

20 Ct. App. 2003), an appellate court examined defendant's argument

21 that the trial court failed to consider whether his § 527.8

22 petition was "motivated by a desire to retaliate against Edwards

23 for his prior complaints about racial discrimination in the UPI

24 workplace," thereby violating his First Amendment rights of free

25 speech.  Id. at 445.  The court in Edwards rejected this argument,

26 explaining that defendant "never presented this argument to the

trial court," and that the court was not required to take up the
issue "on its own initiative." Id.  The court also noted the
defendant failed to provide "direct evidence of a retaliatory
motive on [plaintiff's] part." Id.

The argument may perhaps be made that in dismissing the
argument on these grounds, the court implied that the defendant was
not barred from bringing a constitutional claim at the trial level
had he presented evidence that a retaliatory motive led to the
filing of the § 527.8 petition.  It is also fair to conclude,
however, that the appellate court never directly reached whether
a § 527.8 trial would allow plaintiff the opportunity to litigate
and vindicate constitutional claims.

Unfortunately, neither the court nor the parties have found
"unambiguous authority" stating that a defendant cannot litigate
constitutional arguments in the state civil proceedings at issue.
The High Court has instructed that "[a] federal court should assume
that state procedures will afford an adequate remedy, in the
absence of unambiguous authority to the contrary." Texaco, 481
U.S. at 15.  Further, because the burden rests on a federal
plaintiff to show that he is barred from raising his federal claims
in the § 527.8 action, id. at 13, and because plaintiff has failed
to meet this burden, the court must conclude that plaintiff will
have an opportunity to seek relief in the civil state proceedings.

**b. Section 166 Criminal Contempt Hearing**

Under California law, when a defendant is brought before the
court on charges of violating a contempt order, the court "must

16

hear any answer which the person arrested may make to the [charges]."  Cal Civ. Proc. Code § 1217;[10] <u>Dreher v. Superior Court of Riverside County</u>, 124 Cal.App. 469 (Cal.Ct.App. 1932).   In criminal contempt proceedings, California courts can hear constitutional challenges to the validity of TROs and injunctive orders, but only so long as the defendant is not asking the court to overturn, declare void, or enjoin the order of another court or department in the same court.[11]  <u>See</u> <u>People v. Gonzalez</u>, 12 Cal.4th 804, 822 (1996); <u>Hatch v. Superior Court</u>, 80 Cal.App.4th 170 (Cal.Ct.App. 2000)(citing <u>Gonzalez</u>, 12 Cal.4th at 8220); <u>Estrada v. Ramirez</u>, 71 Cal.App.4th 618, 622 (Cal.Ct.App. 1999)(citing same).

In <u>Gonzalez</u>, the city attorney for Los Angeles requested, and received, an injunction prohibiting gang members from engaging in certain activities.  The prosecutor then sought and obtained contempt convictions against one of the targets of the

////

---

[10]   Cal. Civ. Proc. Code § 1217 provides:

"When the person arrested has been brought up or appeared, the court or judge must proceed to investigate the charge, and must hear any answer which the person arrested may make to the same, and may examine witnesses for or against him, for which an adjournment may be had from time to time if necessary."

[11]   "A violation of Cal. Penal Code § 166 is a misdemeanor and it is to be prosecuted in the same manner as other misdemeanors rather than under the provisions for summary contempts."  <u>In re McKinney</u>, 70 Cal.2d 8, 13 (1968)(citation omitted).  Defendants charged under § 166 "have a state constitutional and statutory right to a jury trial." <u>Mitchell v. Superior Court</u>, 49 Cal.3d 1230 (1989).

injunction.[12]  Defendant collaterally challenged the order, arguing
that the order was vague and overbroad, and therefore
unconstitutional.  The question arose whether the appellate
division could entertain challenges to the validity of an
injunction.  The California Supreme Court answered the question in
the affirmative, holding that lower state courts had the authority
to consider defendant's challenge of the injunction on
constitutional grounds when he was charged in such contempt
proceedings.

In so holding, the California Supreme Court articulated that
"[a] court with jurisdiction over a cause has jurisdiction to
resolve all issues before it," and "[t]he validity of the order
defendant is charged with violating is such an issue, for . . .
California law defines misdemeanor contempt as, among other things,
disobedience of an order 'lawfully issued' by a court." Gonzalez,
12 Cal.4th at 820.  The court further stated that "in the contempt
proceeding, the contemner may, for the first time, collaterally
challenge the validity of the order he or she is charged with
violating." Id. at 819.  The court went on to explain that
"[u]nder settled California law, there can be no contempt of a void
injunctive order," and because California courts have long
recognized the propriety of collateral attacks on void orders, "it
seems evident that the trial court is a proper forum in which to
raise the issue of the validity of the injunction." Id. at 821.

---

[12]  The conviction was sought pursuant to Cal. Penal Code
§ 166.

An order is unlawful, and therefore unable to produce a valid judgment of contempt, when it is "in excess of the jurisdiction of the issuing court."  Id. at 823 (citation omitted).

Based on the language cited above, it might appear that plaintiff in the instant case will have an opportunity to litigate his federal claims in the state criminal proceeding.  In its opinion, however, the California Supreme Court also approvingly cited two of its previous decisions, which held that "neither the municipal court nor the appellate department of the superior court could dissolve or enjoin enforcement of [an] injunction [of another court]."  12 Cal.4th at 816 (citing Williams v. Superior Court, 14 Cal.2d 656 (1939) and Ford v. Superior Court, 188 Cal.App.3d 737 (1986)).  The court explicitly stated that "the authorities cited by the Court of Appeal certainly establish that neither the municipal court nor the appellate department of the superior court could dissolve or enjoin enforcement of the injunction." 12 Cal.4th at 816.  It appears the relief plaintiff seeks here would likely require the superior court to declare an order of another court in its department void.  Plaintiff's allegations that the Petition and TRO were brought in retaliation of his use of his First Amendment Rights are tantamount to asserting that the TRO was issued without probable cause.  This appears to be an argument that California courts cannot entertain in § 166 contempt proceedings.

Again, however, the authority located by this court is less than "unambiguous," and plaintiff, who has the burden to show that he is barred from raising his federal claims in § 166 criminal

1   trial, has failed to do so.  Texaco, 481 U.S. at 15 (noting that

2   the federal plaintiff bears the burden of showing that state

3   procedural law bars presentation of constitutional claims).

4   Plaintiff, in fact, fails to direct the court to any authority

5   supporting his position that he would not have the opportunity to

6   litigate his federal claims at his § 166 trial.  Because "[a]

7   federal court should assume that state procedures will afford an

8   adequate remedy, in the absence of unambiguous authority to the

9   contrary," Texaco, 481 U.S. at 15, the court must conclude that

10  plaintiff will have a fair opportunity to litigate his federal

11  claims in his § 166 trial.

12       I now turn to whether any exception applies to prevent the

13  application of Younger.

14       **4.  Whether There is a Bad-Faith Prosecution or Harassment**

15       Plaintiff claims that even if the court finds that he has some

16  ability to assert his constitutional claims, he believes that his

17  allegations, if true, "establish abstention is inappropriate as bad

18  faith prosecution or harassment is present."[13]  Opp'n at 6.

19       The bad faith exception does not apply "because plaintiff's

20  allegations fall far short of establishing bad faith of the sort

21  _____

22       [13]  The Supreme Court has held that bad-faith prosecution
    generally means the kind of "proven harassment or prosecutions
23  undertaken by state officials in bad faith without hope of
    obtaining a valid conviction and perhaps in other extraordinary
24  circumstances where irreparable injury can be shown."  Kugler, 421
    U.S. at 124.  The Ninth Circuit has stated that bad faith
25  "generally means that a prosecution has been brought without a
    reasonable expectation of obtaining a valid conviction." Baffert,
26  332 F.3d at 621.

1   sufficient to invoke that exception."[14]   See Partington v. Gedan,

2   961 F.2d 852, 861-862 (9th Cir. 1992)(citations omitted).   Careful

3   examination of plaintiff's complaint leads to the conclusion "there

4   was no allegation of repeated harassment by enforcement authorities

5   with no intention of securing a conclusive resolution by an

6   administrative tribunal or the courts . . . or of pecuniary bias

7   by the tribunal," allegations required to invoke the bad faith

8   exception.   Id.   Here, plaintiff merely alleges that defendants

9   filed a civil case that was based on "two false statements," that

10  criminal charges were brought in retaliation of his first amendment

11  rights, and that a search warrant was issued based on false

12  information.   Compl. at 4.   Plaintiff fails to allege repeated

13  harassment, or that defendants did not intend to secure some type

14  of "conclusive resolution" by the courts.   On the contrary,

15  plaintiff's allegations suggest that defendants had a reasonable

16  basis to seek the TRO, and that they had legitimate reasons for

17  bringing a contempt claim based on a violation of the TRO.

18      The court notes that the Supreme Court has rarely applied the

19  bad faith situation to situations in which abstention would

20  otherwise be proper.   See, e.g., Dombrowski v. Pfister, 380 U.S.

21  479, 482,(1965).[15]   The Supreme Court has denied the bad-faith

22  ──────────────

23      [14]   Plaintiff's counsel conceded during oral argument that he
    could not locate a single case in which a court allowed the bad-
24  faith exemption to prevent abstention.

25      [15]   In Dombrowski, the court held that "[a] complaint alleging
    that state officers invoked, and threatened to invoke, criminal
    process without any hope of ultimate success, but only to
26  discourage plaintiffs' civil rights activities" satisfied the bad-

exemption in numerous instances where plaintiff alleged many more

facts suggesting bad faith or harassment.  See Allee v. Medrano,

416 U.S. 802, 804 (1974)(rejecting bad faith claim based on

allegations of repeated police brutality against farm workers);

Juidice, 430 U.S. at 332 (rejecting bad faith claim based on

unreasonable use of state's contempt procedures to harass); Hicks

v. Miranda, 422 U.S. 332, 340 (1975)(rejecting bad faith claim

based on repeated seizures of an allegedly obscene movie); Moore

v. Sims, 442 U.S. 415, 432 (1979)(rejecting bad faith claim based

on impermissible bias by state judiciary).   Based on the facts

alleged by plaintiff, the court concludes that the bad-faith

exception does not apply.

**5.  Stay Versus Dismissal**

Plaintiff requests that this court stay rather than dismiss

the matter because he seeks damages.  Defendants take issue with

this request, arguing that "comity does not dictate a stay versus

---

faith exemption to the abstention doctrine.  The complaint alleged
very serious harassment and retaliation, including:  "threatened
state criminal prosecutions, where it is alleged that the measures
taken by the police and the prosecutor, together with repeated
announcements that the plaintiff organization is a subversive or
Communist-front organization whose members must register or be
prosecuted under state statutes, frightened off potential members
and contributors; seizures of documents and records paralyzed
operations and threatened exposure of the identity of adherents to
a locally unpopular cause; notwithstanding the quashing in the
state courts of a particular seizure, the continuing threat of
prosecution portends further arrests and seizures, some of which
may be upheld and all of which will cause the organization
inconvenience or worse; and threats were made to enforce statutory
provisions other than those under which indictments had been
brought, there being no immediate prospect of a final state
adjudication as to those other provisions." Dombrowski, 380 U.S.
at 488-89.

1  a dismissal."  Reply at 4.

2       Typically when abstention under <u>Younger</u> is appropriate, and

3  plaintiff seeks injunctive or declaratory relief, "a district court

4  cannot refuse to abstain, retain jurisdiction over the action, and

5  render a decision on the merits after the state proceedings have

6  ended.  Rather, Younger abstention requires dismissal of the

7  federal action." <u>Confederated Salish v. Simonich</u>, 29 F.3d 1398,

8  1402 (9th Cir. 1994).  Here, however, plaintiff seeks equitable

9  relief, attorney's fees, and monetary damages premised on the same

10 set of facts.  The Ninth Circuit has instructed that "federal

11 courts should not dismiss actions where damages are at issue;

12 rather, damages actions should be stayed until the state

13 proceedings are completed." <u>Gilbertson</u>, 381 F.3d at 968.  Damages

14 actions are "different from actions that seek only declaratory

15 relief in two important respects:  The relief is not discretionary,

16 and it may not be available in the state proceeding." <u>Canatella v.</u>

17 <u>State of California</u>, 404 F.3d 1106, 1112 (9th Cir. 2005).

18      The Circuit Court has also recently explained that "it makes

19 sense for the federal court to refrain from exercising jurisdiction

20 temporarily" because "[t]his allows the federal plaintiff an

21 opportunity to pursue constitutional challenges in the state

22 proceeding . . . while still preserving the federal plaintiff's

23 opportunity to pursue compensation in the forum of his choice."

24 <u>Gilbertson</u>, 381 F.3d at 981.  Furthermore, "[t]o stay, rather than

25 dismiss, does not constitute abnegation of judicial duty.  On the

26 contrary, it is a wise and productive discharge of it.  There is

1 only postponement of decision for its best fruition." <u>Id</u>.

2 (citation omitted).

3    Based on binding authority, the court concludes that a stay

4 in this action is appropriate so that "neither the federal

5 plaintiff's right to seek damages for constitutional violations nor

6 the state's interest in its own system is frustrated." <u>Id</u>.

7                                  **IV.**

8                            **CONCLUSION**

9    The matter is STAYED pending the conclusion of the

10 state civil and criminal proceedings.  The parties are directed to

11 notify the court within ten (10) days of the conclusion of the

12 state court proceedings, at which time a Status Conference will be

13 scheduled.

14    IT IS SO ORDERED.

15    DATED: July 26, 2006.

16                        _____
                          LAWRENCE K. KARLTON
17                        SENIOR JUDGE
                          UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25

26