Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
BRYAN VERESCHAGIN (SBN 188608)
BRIAN BRAZIER (SBN 245004)
GONZALEZ & LEIGH LLP
Two Shaw Alley, Third Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOEL THOMAS TOLER

Plaintiffs,

vs.

DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLY, and DOES 1 through 10, inclusive,

Defendants.

Case No. CIV 06-0735 LKK DAD

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT PURSUANT TO F.R.C.P. § 12(B)(6)**

## I. Introduction

This case arises from the retaliation levied at plaintiff Tom Toler in response to an advertisement he published in the local Fairfield newspaper. The advertisement was critical of the Solano County District Attorney's office for his refusal to respond to threats that were being made against Mr. Toler's children. In response, the District Attorney and two district attorney investigators that he employed conspired to retaliate against Mr. Toler for exercising his first amendment rights and to dissuade him from further exercising those rights. Specifically, they sought a restraining order against Mr. Toler that materially affected his ability to perform his job. The restraining order was issued based on knowingly false statements made to the court, and the

Click Here & Upgrade Expanded Features Unlimited Pages PDF Complete

decision to pursue the order was a direct result of Mr. Toler's public criticism of the District Attorney's office. Subsequently, the same office prosecuted Mr. Toler for violating that order even though they knew its underlying factual basis to be fabricated. Not surprisingly, Mr. Toler was acquitted.

## II. Factual Background

### A. The children of Plaintiff Tom Toler are threatened with physical violence.

The plaintiff, Tom Toler, is a former police officer and is currently a licensed bail bondsman and licensed private investigator in Solano County.[1] In late March of 2005, Mr. Toler became aware that his children were being threatened with physical violence by a man that Mr. Toler knew to have a criminal history, including a history of sex crimes with a minor.[2] Armed with the knowledge of the threats against his children and the criminal history of the man who made the threats, Mr. Toler made a police report with the Fairfield Police Department on March 27, 2005.[3]

On April 7, 2005 Mr. Toler attempted to follow up with the District Attorney's Office regarding any investigation into the report he filed with the Police Department 11 days earlier.[4] After learning that the District Attorney had only received the report that day, and that the report remained unreviewed, Mr. Toler became concerned.[5] However, after speaking with William Godwin, investigator for the District Attorney's Office, Mr. Toler calmly provided Mr. Godwin with a statement regarding the threats to his children.[6]

### B. Mr. Toler, upset with the District Attorney's persistent inaction surrounding the threats to his children, publishes an article critical of the District Attorney.

---

1 Docket No. 30, First Amended Complaint ("Complaint"), ¶ 12.
2 Complaint, ¶ 13.
3 Id.
4 Complaint, ¶ 14.
5 Id.
6 Id.

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

On April 12, 2005, Mr. Toler submitted a paid article to a local newspaper, which criticized defendant Paulson and the Solano County District Attorney's office, and sought to air his discontent over the treatment he had received at the hands of the District Attorney's office and their inaction regarding the reported threats to Mr. Toler's children.[7]

**C. As a result of the criticism, The Office of the District Attorney retaliates.**

Later that day on April 12, five days after the Mr. Toler had inquired about the threats to his children, and only after Mr. Toler's article appeared in a local newspaper, D.A. investigator Brook Byerly, after speaking to District Attorney Paulson, prepared a report alleging that Mr. Toler had violated Penal Code § 76 on April 7, 2005 by making threats against a Public Officer/Public Office. The threat allegedly made by Mr. Toler was – "don't make me defend my children."[8]

Additionally, William Godwin, either at the direction of defendant Paulson or defendant Garza, was also asked to prepare a memorandum regarding Godwin's April 7, 2005 meeting with Mr. Toler, even though Godwin did not believe the incident necessitated preparation of a memorandum.[9]

**1. The District Attorney files for a temporary restraining order based on false information.**

On June 13, 2005 a local newspaper published a story reporting that Mr. Toler had filed a small claims action against defendant Paulson.[10] Two days later, the District Attorney filed for, and was granted, a "Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employee and Application for Temporary Restraining Order" pursuant to CCP §§ 527.8 and 527.9 in County of Solano et al. v. Toler (Case No. FCS026197) ("the petition"). The order was granted ex parte by Commissioner Alberta Chew.[11]

---

[7] Complaint, ¶ 15.
[8] Complaint, ¶ 16.
[9] Complaint, ¶ 17.
[10] Complaint, ¶ 18.
[11] Complaint, ¶ 19.

3
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT PURSUANT TO F.R.C.P. § 12(B)(6)
Case No. 06-0735



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

However, the affidavit of defendant Garza relied on by Commissioner Chew contained at least two statements that defendants knew to be false:

**(1)** That Mr. Toler threatened to bring an "Uzi" to the District Attorney's Office on June 13, 2005, and that

**(2)** That Defendant Garza was an expert on workplace violence.[12]

**2. The petition seeks to publicly embarrass Mr. Toler**

The petition also sought to publicly embarrass Mr. Toler and prevent him from performing his work as a bail bondsman and private investigator by prohibiting Mr. Toler from coming within 500 yards of 675 Texas Street, a place known as Government Center, a government building to which Mr. Toler needed access in order to perform his work. Indeed, the modified order issued three weeks later (reducing the distance to 100 yards), though it purported to create a mechanism that would allow Mr. Toler to conduct lawful business, unreasonably prohibited him entering the Tax Collector's Office, the Building Department, and the Office of the County Supervisor – all offices that Mr. Toler necessarily visited regularly in his work as a bail bondsman.[13]

Additionally, the order required Mr. Toler to make an appointment through the county's counsel before entering the government building – thereby placing a significant burden on the Mr. Toler's ability to conduct his business.[14]

Both County Counsel and Commissioner Chew knew that Toler's place of business, Toler Bail Bonds, located at 709 Jefferson Street in Fairfield, was less than 100 yards away from 675 Texas Street – the building Mr. Toler was required to stay away from. Mr. Toler's place of business was, however, not exempted from the parameters of the stay-away order.[15]

---

[12] Complaint, ¶ 22.
[13] Complaint, ¶ 21.
[14] Complaint, ¶ 23.
[15] Complaint, ¶ 24.

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents

**D. The District Attorney files criminal charges against Mr. Toler for a violation of the order based on a chance encounter in a parking lot.**

On September 22, 2005, Toler was standing in the first level of a parking lot (maintained for the public) when defendant Paulson (who has his own space on the fourth level) approached him. Toler, who did not know it was Paulson until someone called out Paulson's name, made no threatening gestures or movements, but did extend his hand to shake Mr. Paulson's hand.[16]

Notwithstanding his knowledge that the encounter did not involve any conceivable violation of the TRO, Paulson sought criminal prosecution of Toler for violation of California Penal Code, § 166 and other charges.[17] After the trial, at which Mr. Paulson himself testified, Mr. Toler was not surprisingly acquitted of all charges on May 18, 2007.

On November 3, 2005, defendants sought to obtain a search warrant and have it served on Toler. The search warrant affidavit was (1) based on false and otherwise inadequate information; (2) lacked probable cause; and (3) was in violation of the Fourth Amendment of the United States Constitution.[18]

Throughout 2006, despite no threats of violence from Mr. Toler, indeed no contact with anyone from the District Attorney's office, and clearly contrary to the law governing the issuance of temporary restraining orders, the defendants continued to uphold and enforce the existing temporary restraining order against Mr. Toler. In fact, the defendants continued to pursue an extended three year injunction against Mr. Toler.[19]

On February 1, 2007, Mr. Toler sought modification of the order. The modified order, signed February 9, 2007, continued to require Mr. Toler to "stay at least twenty-five yards away

---

[16] Complaint, ¶ 25.
[17] Complaint, ¶ 26.



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



from the defendants, their residences, vehicles, and their place of work, which is the Solano County Government Center, 675 Texas Street, Fairfield, CA" – again, the very building and area where Mr. Toler conducts much of his business.[20]

In exchange for these modifications, Mr. Toler accepted the onerous condition that he contact county counsel before engaging in legitimate business at the Government Center, by "requiring him to advise Plaintiff's counsel at the Solano County Counsel Office twenty-four (24) hours prior to entering."[21]

Finally, on August 21, 2007, over two years after the initial petition, the office of the City Counsel, along with David Paulson, Al Garza, Brook Byerly, and Tom Toler entered into a settlement agreement lifting the Temporary Restraining Order and Petition for Injunction. The settlement agreement does not reach the present action currently before this Court.[22]

## III. Fed. R. Civ. P. 12(B)(6) Motions Are Disfavored

In ruling on a motion to dismiss, the Court is required to accept as true all material allegations in the complaint and all doubts are to be resolved in favor of plaintiffs.[23] "Review is limited to the contents of the complaint. All allegations of material fact are taken as true and construed in light most favorable to the nonmoving party."[24]

"To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven."[25] "A suit should not be dismissed if it is possible to

---

Continued from the previous page

[18] Complaint, ¶ 27.
[19] Complaint, ¶ 29.
[20] Complaint, ¶ 30.
[21] Complaint, ¶ 31.
[22] Complaint, ¶ 32.
[23] Blake v. Dierdorff, 856 F.2nd 1365, 1368 (9th Cir. 1988).
[24] *Howard v. America Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).
[25] *Wool v. Tandem Computers*, 818 F.2d 1433, 1439 (9th Cir. 1987); See also, *Conley v. Gibson*, 355 U.S.
Continued on the next page



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

hypothesize facts, consistent with the complaint, that would make out a claim."[26] In light of these principals, "the motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted,"[27] and should issue only in "extraordinary" cases.[28] Here, the facts alleged in the complaint clearly state a claim for conspiracy to deprive Mr. Toler of his constitutional rights and retaliation for exercising his first amendment rights.

## IV. Each of the Individual Defendants Acted in Different Capacities at Different Stages of the Proceedings

In conspiring to violate Mr. Toler's rights and in retaliating against him for exercising his rights, each of the defendants acted in dual capacities, both as private citizens and as state actors. The case law is abundantly clear that, when assessing governmental immunities and the status of state actors, the test for immunities is not what job title is held be the defendant, but rather the functional category into which the actions fit.[29]

Defendants Paulson, Byerly, and Garza acted in different capacities at different stages of the events giving rise to this complaint. When Mr. Toler first published the advertisement criticizing the District Attorney's office, the defendants hatched a scheme to retaliate against Mr. Toler for exercising his right to free speech. Initially, the three determined to file knowingly false declarations in support of a restraining order against Mr. Toler, the terms of which they knew would adversely and materially effect Mr. Toler's livelihood. When they sought the restraining order, they did so outside their capacity as members of the district attorney's office. The statute under which the restraining order was issued applies to all employers in the state of

Continued from the previous page

41, 45-46 (1957) (a claim should not be dismissed under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

[26] *Hearn v. R.J. Reynolds*, 279 F. Supp. 2d 1096, 1101 (D AZ 2003).

[27] *Gilligan v. Jamco Development Corporation*, 108 F.3d 246, 249 (9th Cir. 1997).

[28] United States v. Redwood City, 640 F. 2d 963, 966 (9th Cir 1981).

[29] *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985), citing *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983).

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

California, and the decision of the three individual defendants to invoke its application has nothing whatsoever to do with their prosecutorial functions or duties. They were simply employers and employees with their place of business in the state of California.

**V. A petition for a temporary restraining order is a civil matter, not a criminal prosecution, and is well outside the official charging duties of a district attorney. Prosecutorial immunity is therefore inapplicable**

Prosecutorial immunity is a well-established doctrine granted to prosecutors acting in their official capacity. The doctrine, however, is applied narrowly, and only in cases where a prosecutor is operating pursuant to his prescribed prosecutorial duty. Filing a petition for a temporary restraining order under CCP § 527.8 neither institutes a criminal proceeding nor qualifies as a prosecutorial function. The official duties of any district attorney's office involve the charging of crimes and the prosecution of those individuals who allegedly committed those crimes. Here, the initiation of the proceedings that gave rise to this complaint did not involve any crime. Rather, this case involves the initiation of a civil proceeding by the defendants based on false information.[30] In this capacity, Paulson stands in the same shoes as any individual seeking a restraining order in a civil proceeding. The District Attorney's official duty to prosecute crimes bears no association to their peripheral decision to pursue a private civil remedy against Mr. Toler.

The defendants were acting in their capacity as individuals, not "public prosecutors," when they filed for the civil petition against Mr. Toler. The Court in *City of Los Angeles v. Animal Defense League* illustrates the difference. In that case, the City filed three petitions under § 527.8 intended to protect certain city employees from alleged threats of violence by local animal rights activists. The Court however, in analyzing the role of the City in seeking the restraining order, refused to characterize the City's role as that of a public prosecutor:

---

[30] *City of Los Angeles v. Animal Defense League*, 135 Cal.App.4th 606, 614,617 (2006)(Repeatedly referring to CCP 527.8 and its progeny as "*civil* harassment petitions.") citing *Diamond View Limited v. Herz*, 180 Cal.App.3d 612 (1986) and *Thomas v. Quintero*, 126 Cal.App. 635, 645 (2005).

8

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT PURSUANT TO F.R.C.P. § 12(B)(6)
Case No. 06-0735

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

> [T]he record does not support the assertion [that] these three workplace violence petitions were filed by the City, wholly or in part, in its capacity as "public prosecutor." Rather, the petitions were filed, as they must be under section 527.8, by the City as [the plaintiffs'] "employer," a term expressly defined by section 527.8 to include cities, counties and other governmental entities.[31]

The present facts are on all fours with the facts of *City of Los Angeles*. Here, the defendants were not acting according to their prosecutorial duty, i.e. proceeding with the prosecution of an alleged crime. Rather, they were acting pursuant to the provisions of § 527.8 which allows any employer, including government employers, to seek a civil remedy resulting from credible threats of workplace violence. As such, their actions were no different than an action taken by a private employer under § 527.8.

The District Attorney cannot hide behind prosecutorial immunity merely because they serve as prosecutors. The Supreme Court has consistently held that "immunity analysis rests on functional categories, not on the status of the defendant."[32] The Courts have recognized a clear difference between actions taken pursuant to a prosecutorial duty, and situations where a prosecutor acts as a private employer or citizen. This is a clear case of the latter. Therefore, prosecutorial immunity should not be available to shield the constitutional violations and the associated conspiracy.

## VI. Eleventh Amendment Immunity Does Not Apply

The Eleventh Amendment bars suit against states and arms of the state when acting in their official capacity. County district attorneys have been held to be acting as an arm of the state, and therefore protected by Eleventh Amendment immunity, but only when acting in the official capacity as a district attorney. When, however, their actions are outside the scope of their prosecutorial duties or obligations, the acts of a district attorney are not protected solely

---

[31] *City of Los Angeles v. Animal Defense League*, 135 Cal.App.4th 606, 614,619 (2006).
[32] *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985), citing *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983).



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

because the individual holds the position of district attorney. Where a district attorney is acting outside his prosecutorial or administrative function, he is no longer a state official entitled to the blanket protections of the Eleventh Amendment.[33] In this case, when the district attorney and the other individual defendants initiated the conspiracy to deprive plaintiff of his constitutional rights in retaliation for publishing the newspaper advertisement, they were not playing any role remotely associated with their function as state prosecutorial officials, and are thus not entitled to the protections of the Eleventh Amendment. Even as to the subsequent wrongful prosecution of plaintiff based upon the false statements made to justify the initial imposition of the restraining order, defendants' liability is not immunized simply by virtue of their role as state officials. As the Supreme Court has held, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."[34] The Eleventh Amendment simply does not bar a suit with facts such as those in this case.

**VII. Plaintiff's Complaint is not based on Testimony Given in a Judicial Proceeding and Witness Immunity is Inapplicable**

Defendants argue that they are immune from liability for conspiring to and violating plaintiff's constitutional rights on the grounds of witness immunity. Under this doctrine, witnesses are immune from liability for the content of their sworn testimony before a judicial or administrative body. The basis of plaintiff's complaint, however, is not the contents of the sworn testimony before the court. Rather, plaintiff complains that defendants conspired to deprive him of his constitutional rights and took steps to retaliate against him. The conspiracy and the retaliation are the illegal acts complained of, and defendants cannot escape their wrongdoing by a piecemeal application of immunities subsidiary to the broader illegal acts. The acts

---

[33] *del Campo v. Kennedy*, 491 F.Supp.2d 891 (N.D.Cal.2006)
[34] *Hafer v. Melo*, 502 U.S. 21, 31 (1991)

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

complained of in this case are ultimately not the contents of the testimony, but involve the fact that such testimony was given as a part of a broader effort to deprive him of and retaliate against him for exercising his right to free speech. Regardless of whether or not governmental immunity might otherwise attach to statements subsequently made by defendants in furtherance of the conspiracy, the conspiracy itself remains unlawful. Each of the cases cited by defendants on this point involves a suit where the basis of the complaint was the content, rather than the broader context, of the testimony. Here, plaintiff does not seek to impose liability on defendants for the content of their testimony or sworn declarations. Rather, liability stems from the fact that the testimony and declarations that served as the basis for imposing the restraining order were part of a conspiracy to retaliate against the plaintiff for exercising his constitutional rights. Witness immunity simply does not apply when the content of the testimony is not the ultimate basis of the complaint.

**VIII. Defendants are not Entitled to Qualified Immunity**

The Ninth Circuit has held that "acquiring known false statement from a witness for use in a prosecution" destroys the cloak of immunity.[35] If that is the case, surely officials cannot fabricate evidence themselves, use it as the basis for a prosecution, and then claim prosecutorial immunity on the grounds that they were simply engaged in a good faith execution of their job responsibilities.

The qualified immunity claimed by defendants is designed to protect officials from harassment in their official function, and is premised on the notion that other procedural safeguards exist to control unconstitutional conduct.[36] The procedural safeguards of the courts, however, are unavailable to restrain the unconstitutional, out-of-court conduct of prosecutors and other officials, which is precisely why the Supreme Court has found that immunity does not inure to such actions.[37] Here, defendants cannot cloak their illegal conspiracy to deprive plaintiff

---

[35] *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001).
[36] *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)
[37] *Burns*, 500 U.S. at 496.



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

of his free speech rights and retaliate against him for exercising them simply because some of their actions were conducted within the general context of their work. In fact, the fabricated evidence, fabricated by the same individuals and used to justify the restraining order that served as the basis for the later prosecution, destroys any notion that this was a good faith exercise of their job responsibilities.

Defendants are correct to point out that state officials are entitled to qualified immunity for decisions made in a good-faith exercise of their responsibilities. However, they are not entitled to immunity where, as here, they hatch a conspiracy in their individual capacities, and then use their official powers to effectuate that conspiracy through misuse of those powers. For public officials acting outside their official capacity to make a plan to chill an individual's exercise of free speech rights and then utilize their official powers to retaliate against the individual for exercising those rights is a far cry from a "good faith exercise of their responsibilities." As the Supreme Court has held, the wrongful out-of-court activities of a prosecutor that occur prior to the initiation of a prosecution are not entitled to either qualified or absolute immunity.[38] Furthermore, the Supreme Court has held that prosecutors are not entitled to immunity for fabricating evidence.[39]

**IX. Plaintiff's Allegations as to Each Claim and Each Defendant are Sufficient to Defeat Defendant's 12(b)(6) motion**

Defendants' arguments for immunity are further defeated by their role as witnesses as to the restraining order application and the subsequent criminal prosecution. As with their other arguments, their role in this case is not as simply civil servant performing their job duties. In addition to being the initiators of a conspiracy to deprive plaintiff of his rights and to retaliate against him for criticism of their office, they are also the material witnesses who provided the evidence underlying the chain of events that gave rise to the restraining order, the subsequent

---

38 *Burns v. Reed*, 500 U.S. 478, 496 (1991).
39 *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

criminal prosecution, and the basis of this civil lawsuit. As the Supreme Court has said, "[t]estifying about facts is the function of the witness, not of the lawyer. . . . Even when the person who makes the constitutionally required oath or affirmation is a lawyer, the only function that she performs in giving testimony is that of a witness."[40] This further defeats the defendants' claimed immunities.

Moreover, the probable cause upon which the initial restraining order was based stemmed from the perjured testimony of the initiators of the conspiracy, the defendants in this case. Plaintiff alleged in his complaint that the characterization of events by the defendants was completely divorced from the reality of events. Accepting as true the allegations of the plaintiff, as this court must, the fact that plaintiff has alleged that the course of events underlying the restraining order were fundamentally different from those alleged by the defendants at the very least creates a disputed issue of fact, which alone is sufficient to defeat defendants' motion to dismiss at this stage.

Defendants also contend that plaintiff failed to allege a connection between his protected speech and the retaliation levied against him. This contention is patently absurd. There can be no reasonable argument that plaintiff's publication of the advertisement in the Fairfield paper constituted protected speech. The same day that the advertisement appeared and more than five days after the event that alleged formed the basis of the application for a restraining order, the district attorney's office suddenly decided that plaintiff's actions were dangerous. Paragraphs 15-19 of the complaint detail these allegations. Apparently, the actions of plaintiff were not sufficiently dangerous to take immediate action after the April 7 interaction. They only became sufficiently worrisome to the defendants when plaintiff criticized the district attorney's office in the local paper. Given the early stage of the proceedings, plaintiff has not had the opportunity to obtain evidence to detail the specific correspondence that formed the conspiracy, but for

---

[40] *Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997).

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

purposes of a 12(b)(6) motion, the motion should be denied if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim. Here, the time frame of defendants' actions as compared with plaintiff's alleged dangerous actions and his publication of the advertisement creates a strong presumption that the motivation for the defendants' subsequent action toward plaintiff was motivated not by any actual fear of violence, but by their fear and anger at the power of plaintiff's pen. Clearly, the allegations in the complaint are sufficient draw the inference that the retaliation and the suppression of plaintiff's speech stemmed from the publication of the advertisement.

Plaintiff also alleges a conspiracy in detailing the interactions between the defendants about which he is aware. A conspiracy, by its very nature, takes place behind closed doors. Plaintiff need not detail every interaction that formed the basis of the conspiracy, but need only allege a meeting of the minds to perform the underlying tort, the decision to retaliate against plaintiff for exercising his constitutional right. Plaintiff alleges in his complain that the three defendants formed the idea to seek the restraining order on the very day that plaintiff published the advertisement and five days after the interaction that alleged formed the basis for the restraining order. Construing the pleadings liberally and resolving all doubts in favor of plaintiff, as this court must, there is sufficient allegations to reasonably conclude that a meeting of the minds occurred between the defendants to retaliate against Mr. Toler.

The retaliatory actions of defendants against plaintiff also chilled future speech by forbidding him access to the center of government for Solano County. Through their contrived affidavits, which disallowed plaintiff from entering the Government Center, defendants prevented plaintiff from having access to his government to clear his name or to informally petition for redress of his grievances. Moreover, it prevented him from having access to elements of government necessary for him to perform his job. Each of these ramifications of the restraining order materially and adversely impacted plaintiff's first amendment rights and caused him damage, material, emotion, and constitutional.

**X. Conclusion**

14

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT PURSUANT TO F.R.C.P. § 12(B)(6)
Case No. 06-0735



Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

Defendants motion can prevail only if plaintiff is incapable of prevailing on the facts when looked at in the most favorable light possible to the plaintiff. Here, plaintiff's alleged facts are sufficient to meet the burden of establishing liability against all defendants as to both claims. Moreover, the immunities through which defendants seek to escape liability are premised upon a factual scenario that plaintiff strenuously rejects. The defendants were not simply county officials going about their job. They were three employees of the Solano County District Attorney's Office who were enraged that a citizen would criticize their performance in a public forum such as the local newspaper. In response, they collectively determined to punish plaintiff through misuse of the civil justice system and flagrant abuse of the power with which they were entrusted as members of the district attorney's office. Their prosecution of Mr. Toler, predicated upon a restraining order that only existed as a result of their conspiracy to invent a scenario that never occurred, is not the type of conduct that the immunities they raise were designed to protect against. The fact that the defendants had certain job titles cannot be used to insulate them from liability for the layers of deceit and misconduct they used to retaliate against Mr. Toler for exercising his constitutionally protected right to free speech.

DATED: December 28, 2007 GONZALEZ & LEIGH, LLP

By: ______/s/ Brian Brazier__________
BRIAN BRAZIER

PDF Complete
Click Here & Upgrade
Expanded Features
Unlimited Pages