MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
BRYAN VERESCHAGIN (SBN 188608)
BRIAN BRAZIER (SBN 245004)
MATT SPRINGMAN (SBN 252508)
GONZALEZ & LEIGH LLP
Two Shaw Alley, Third Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

Attorney for Plaintiff Joel Thomas Toler

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL THOMAS TOLER,<br><br>                Plaintiffs,<br><br>vs.<br><br>DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLY, and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No. CIV 06-0735 LKK DAD<br><br>**SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)** |

Pursuant to the Court's January 15, 2008 order, Plaintiff, Thomas Toler, submits the following supplemental briefing on the issues of witness immunity and municipal liability based on *Monell*. These arguments concern defendants' motion for judgment on the pleadings, and, given that this motion arises prior to any discovery being conducted and that this case is solely at the pleading stage, all of the allegations in plaintiff's first amended complaint must be accepted as true, as well as all reasonable inferences to be drawn therefrom. This supplemental briefing

fully incorporates plaintiff's previous opposition papers. Taken together, plaintiff has alleged sufficient facts to support causes of action as to all claims and all defendants.

I. ARGUMENT

A. Defendants' own sworn affidavit in support of a temporary restraining order against Mr. Toler instigated the present legal action, as such they are "complaining witnesses." Witness immunity is therefore inapplicable.

In 1871, at the time 42 USC section 1983 was first enacted to allow individuals to bring federal civil rights claims against persons acting impermissibly under color of state law, absolute immunity was a common law defense afforded to those persons performing functions necessary to the judicial process, including judges, prosecutors, trial witnesses, and jurors. As Congress did not explicitly abrogate the common law immunity when 42 USC section 1983 was enacted, the Supreme Court has held that those immunities provide a defense to 1983 actions, thus shielding individuals who perform a function that enjoyed absolute immunity at common law, including private witnesses who gave sworn testimony at trial, so called "witness immunity."[1]

However, the U.S. Supreme Court has carved out a clear, unequivocal exception to doctrine of "witness immunity" where the witness purported to invoke immunity is the "complaining witness." Here, this exception prevents defendants from relying on their own false and self-serving statements to avoid civil liability – a public policy exception implemented by the Supreme Court and universally followed.

In *Wyatt v. Cole*[2] a rancher brought a §1983 action against his partner, the partner's attorney, and government officials, challenging the constitutionality of the Mississippi replevin statute. At the time in Mississippi, the law provided that an individual could instigate a replevin action simply by posting a bond and declaring, under oath to a state Court, that the individual was entitled to the property. In *Wyatt*, the defendant, who was the source of the sworn

---

[1] *Briscoe v. Lahue,* 460 U.S. 325, 333-34 (1983).
[2] 504 U.S. 158, 163-166 (1992).

SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)
Case No. 06-0735

declaration in the original replevin action, sought immunity from suit based on his role in bringing and executing that replevin action against the plaintiff, specifically basing his purported immunity on the fact that his sworn statements were made before the Court.

The Supreme Court carved out a clear exception to the doctrine of witness immunity where the defendant seeking immunity was the original "complaining witness" –the defendant who originally made a sworn statement before the Court that he was entitled to the land. The Court stated clearly that immunity "[does] not extend to complaining witnesses who, like respondents, set the wheels of government in motion by instigating legal action."[3]

Similarly in *Gionis v. Javitch, Block & Rathbone*,[4] a law firm engaged in the practice of debt collection was denied the protection of witness immunity based on the same exception established in *Wyatt*. In *Gionis*, the target of a previous lawsuit, now the plaintiff, brought suit for violation of the Fair Debt Collection Practices Act based on an allegedly false affidavit attached to a previous lawsuit. Defendant, Javitch, sought witness immunity because the second lawsuit was based, in part, on the sworn declaration attached to the previous lawsuit.

As in *Wyatt*, the Court denied witness immunity, holding that "while 'testimony presented in the form of an affidavit may be protected under absolute witness immunity,' the immunity does not extend to 'complaining witnesses' – those who help instigate the process by swearing to tell the truth."[5]

Though the cases discussed above generally concern immunity of private witnesses, the Supreme Court has also extended the "complaining witness" exception to public officials. In *Malley v. Briggs* the Supreme Court held that "police officers *were not absolutely immune from suit for seeking an arrest warrant based on deficient probable cause*, stating that the police officer in question resembled a 'complaining witness,' and a complaining witness was liable at common law for making a complaint with malice."[6]

---

[3] *Id* at 164-65.
[4] 238 Fed.Appx. 24, 25-7 (2007).
[5] *Id* at 27 (quoting *Todd*, 434 F.3d at 439)(citation omitted).
[6] 475 U.S. 335, 340-41 (1986)(quoting Todd, 343 F.3d at 438)(emphasis added).

SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)
Case No. 06-0735

In *Kalina v. Fletcher* the Court again extended the "complaining witness" exception to a public official, this time a prosecutor, for making false statements of fact in an affidavit supporting an application for an arrest warrant, because the "petitioner performed the function of a complaining witness."[7]

The present facts fall squarely under the "complaining witness" exception to the witness immunity doctrine. Here, the false declaration of Al Garza, sought at the behest of Mr. Paulson, ensured the issuance of a temporary restraining order against Mr. Toler. Commissioner Chew relied exclusively on Mr. Garza's statements to support the issuance of the order, which formed the basis of the present proceedings under §1983 and §1985. Mr. Garza is therefore a "complaining witness" and cannot rely on his previous self-serving statements in a separate civil proceeding to shield himself from liability in this case.

Additionally, neither of the two remaining defendants, Paulson or Byerly, can rely on Garza's statements to shield themselves from liability under the witness immunity doctrine. The reasons are twofold: (1) neither Paulson nor Byerly are "witnesses" in the context of the witness immunity doctrine where they neither provided statements in support of the TRO's issuance, nor provided any other testimony in support of issuance[8], and (2) even if Paulson and Byerly are considered "witnesses" pursuant to the doctrine of witness immunity doctrine, they are equally bound by the statements of Garza, i.e. they are "complaining witnesses." Because the facts of this case fall squarely within the complaining witness exception to the witness immunity doctrine, defendants cannot escape liability merely because some of the complained-of conduct occurred within the context of the legal system. The complaining witness exception was designed to prevent precisely the type of conduct that defendants engaged in and which underlies this lawsuit, and furthermore, the witness immunity exception itself exists to facilitate the free and honest flow of information within the judicial system and not to see those ends subverted.

---

[7] 522 U.S. 118, 131 (1997)
[8] *Gionis*, 238 Fed.Appx. at 27 (Holding that law firm is not entitled to witness immunity where the firm, themselves, did not provide the statement that instigated the lawsuit.)

SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)
Case No. 06-0735

**B. District Attorney Paulson acted with final policymaking authority in seeking a temporary restraining order against Mr. Toler, seeking prosecution of Mr. Toler, and in insuring that the full force of the TRO was exercised even absent the necessary, prerequisite violation. More than sufficient facts are pled to prove *Monell* liability.[9]**

    **i. Defendants' conspiracy to retaliate against Mr. Toler was only made possible through the non-prosecutorial, policy-making function available to Mr. Paulson by virtue of his office**

Actions by those with final decision-making authority in a municipality constitute official policy for purposes of §1983. For instance, in *Pembaur v. City of Cincinnati*, the Supreme Court held that municipal liability attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."

In this case District Attorney Paulson's conduct falls squarely within the standard. Here, Defendant Paulson chose deliberately, from a vast array of alternatives, to pursue a Temporary Restraining Order against Toler in retaliation for Mr. Toler's criticism of him and his office, and to additionally seek the most draconian enforcement measures of the restraining order, even in the absence of a violation of the order by Mr. Toler.

Mr. Paulson, as the chief official within the District Attorney's office, had the sole discretion to pursue and obtain the order without the input of, or deliberations with, other officials. Additionally, in pursuing the temporary restraining order, Mr. Paulson was acting in his discretion as the manager of the District Attorney's Office, not according to his official prosecutorial duties. Thus, in this case, Paulson was clearly performing the duties of a municipal policymaker, and cannot be categorized as a state official under *Weiner v. San Diego County*.[10]

---

[9] Mr. Toler has amended his complaint to allege that District Attorney Paulson acted with final policymaking authority in his retaliation against Mr. Toler.

[10] *Weiner v. San Diego County*, 210 F.3d 1025, 1028-1030 (9th Cir.)

SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)
Case No. 06-0735

The Tenth Circuit, in *Randle v. City of Aurora*, has also established additional guidelines for considering whether an official has final decision-making authority: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the officials decisions are final – i.e., are subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority."[11]

Here, defendants have presented no evidence that Paulson's decision to pursue a TRO against Toler was ever constrained by other municipal policies regarding the pursuit of a TRO, have presented no evidence to suggest that Paulson's decision underwent any review by officials with decision-making authority, nor have they presented evidence that Paulson's authority over his own office was constrained in any way by competing municipal policy.[12]

As such, Paulson's authority to seek and obtain a TRO against Toler was deliberate, final, and unconstrained in any way by other municipal officials or entities. Thus, Paulson, in the context of §1983 liability acted with final decision-making authority in his action to pursue the TRO.

### ii. Paulson, as District Attorney and Complainant, Seeks Prosecution of Mr. Toler for the Alleged Violation of a Baseless TRO, and Causes a Search to be Conducted of Mr. Toler's home, all as Retribution for Mr. Toler's Criticism of Paulson and his Office

More egregiously, Paulson's decision to prosecution Mr. Toler, based on a non-breach of a facially-invalid restraining order, one that only existed because of Mr. Paulson and his misuse of the system to retaliate against Mr. Toler, is the very definition of a *Monell* claim. He charged Mr. Toler with a criminal offence for walking through a parking lot where he was allowed to be. Based upon that "offense," he caused a search warrant to be executed against Mr. Toler at his home. Each of these acts depended upon Mr. Paulson's policy-making ability to influence the

---

[11] *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)
[12] Additionally, at this stage of the proceedings, prior to discovery and seeking dismissal on the pleadings alone, plaintiff has certainly pled sufficient facts to state a claim for *Monell* liability, an will be able to prove so conclusively at the summary judgment stage.

SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)
Case No. 06-0735

criminal justice system of Solano County. He acted as a policy-maker through his official position, but through totally unconstitutional means and motivated by his desire to silence the criticisms of Tom Toler.

DATED: February 4, 2008

GONZALEZ & LEIGH, LLP

By:    /s/ Brian Brazier
      BRIAN BRAZIER

**SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)**
Case No. 06-0735