MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
BRYAN VERESCHAGIN (SBN 188608)
BRIAN BRAZIER (245004)
MATT SPRINGMAN (252508)
GONZALEZ & LEIGH LLP
Two Shaw Alley, Third Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOEL THOMAS TOLER

            Plaintiffs,

vs.

DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLY, and DOES 1 through 10, inclusive,

            Defendants.

Case No. CIV 06-0735 LKK DAD

**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL REQUESTED**

**INJUNCTIVE RELIEF REQUESTED**

**REQUEST FOR PUNITIVE DAMAGES**

## JURISDICTION AND VENUE

1. This is a civil suit brought under the Federal Civil Rights Act, 42 U.S.C. §§ 1983, 1985 and 1988 for violations of the United States Constitution. This Court has subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331.

2. This suit further seeks the imposition of punitive damages against all Defendants as appropriate under law.

3. Venue is proper in this Court because the facts supporting each of these causes of action arise out of conduct undertaken by Defendants in the County of Solano, State of

1 California.

2

## GENERAL ALLEGATIONS

4. Defendant David Paulson is the elected District Attorney of the County of Solano.

5. Defendant County of Solano is a governmental entity located in the State of California.

6. Defendant Al Garza is the Chief Investigator employed by the District Attorney's Office of Solano County.

7. Defendant Brook Byerly is the Supervising Investigator employed by the District Attorney's Office of Solano County.

8. Plaintiff is informed and believes, and thereon alleges, that each of the defendants named herein was, at all times relevant to this action, the agent, employee, representing partner, co-conspirator, or joint venturer of the remaining defendants and was acting within the course and scope and in furtherance of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

9. Plaintiff does not know the true names of defendants DOES 1 through 10, inclusive, and therefore sues them by those fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

10. The acts alleged in this complaint to have been done by defendants, were done by them as individuals, and as officials acting under color of the authority of the State of California, County of Solano, as well as under the authority of the District Attorney's Office for Solano County. And, in the case of Defendant Paulson, as official policymaker of the Solano County District Attorney's Office.

//
//

**SECOND AMENDED COMPLAINT**
Case No. 06-0735

## STATEMENT OF FACTS

11. Mr. Toler is a former police officer with no previous criminal record or history of threatening behavior.

12. Mr. Toler is currently a licensed bail bondsman and licensed private investigator with his principal place of business in Fairfield, County of Solano.

13. On March 27, 2005, Toler, after receiving threats of physical violence to his children from an individual he was investigating, and who he knew to have a history of violence and of sexual abuse with a minor, made a police report to the Fairfield Police Department ("the report").

14. On April 7, 2005, Mr. Toler went to the District Attorney's Office for the County of Solano to inquire what action was being taken on the report he filed. Toler learned that no action had been taken with regard to the report he filed, and, in fact, that no one in the office was even familiar with it.

15. Thereafter, William Godwin, investigator for the District Attorney's Office, took a statement from Toler regarding the threats made against Toler's children. Godwin also promised to follow up on the investigation regarding the threats.

16. On April 12, 2005, after realizing that the District Attorney had elected not to pursue Mr. Toler's report of threats, he submitted a paid article to a local newspaper, which was highly critical of the job performance of District Attorney Paulson and the Solano County District Attorney's office in general, and specifically sought to air his discontent over the treatment he had received at the hands of the District Attorney's office and their inaction regarding the reported threats to Mr. Toler's children.

17. Sometime after the critical article was published, Paulson communicated with some of his employees, including Garza, Byerly, and DOES, wherein he formulated his desire to retaliate against Toler for his criticism of the District Attorney's Office. What resulted was the fabrication of evidence in support of an affidavit for, and the pursuit of, a temporary restraining

order against Toler. Additionally, Paulson made the decision not to refer the matter to the Attorney General's Office.

18. Later that day on April 12, five days after Mr. Toler had inquired about the threats to his children, and only after Mr. Toler's article appeared in a local newspaper, Brook Byerly prepared a report alleging that Mr. Toler had violated Penal Code § 76 on April 7, 2005 by making threats against a Public Officer/Public Office. The alleged "threat" made by Mr. Toler was – "don't make me defend my children" – and insinuated the District Attorney's lack of action with regard to Toler's police report.

19. Mr. Byerly created the April 12 report only after speaking with, and at the direction of, District Attorney Paulson.

20. In his April 12, 2006 deposition, Paulson denied reading the critical article in his deposition testimony. However, the May 9, 2006 deposition testimony of Mr. Paulson's assistant, Marsha Johnson, revealed that Paulson was specifically aware of the article published by Mr. Toler, and that the two had, in fact, discussed the article.

21. Ms. Johnson further testified that, during the discussion, she asked Mr. Paulson if she should respond to an email sent from an aide to one of the Board of Supervisors regarding the article. Mr. Paulson responded, "Don't worry about it. I've already taken care of it, you don't need to respond."

22. Investigator William Godwin, who was not part of the effort to retaliate against Mr. Toler, was asked, either at the direction of defendant Garza or defendant Paulson, to prepare a memorandum regarding Godwin's April 7, 2005 meeting with Mr. Toler. Godwin, however, did not believe the incident necessitated preparation of a memorandum. Nevertheless, Godwin did what he was instructed and the resulting report did not include any threats made by Toler.

23. In early June, 2005 Mr. Toler filed a small claims action against the defendant Paulson, and on June 13, 2005 a local newspaper published a story about it.

24. On June 15, 2005, Paulson directed County Counsel to file a "Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employee and

Application for Temporary Restraining Order" pursuant to CCP §§ 527.8 and 527.9 in County of Solano et al. v. Toler (Case No. FCS026197) ("the petition").

25. The petition was supported by a declaration from defendant Al Garza that contained two false statements: (1) That Toler threatened to bring an "uzi" to the District Attorney's Office, and (2) that Garza was an expert on workplace violence.

26. Aside from the false statements contained in Garza's declaration, the petition contained no other evidence supporting the issuance of a temporary restraining against Mr. Toler. The order was granted ex parte by Commissioner Alberta Chew. Thus, Commissioner Chew relied, exclusively, on the false statements of Garza when she issued the order.

27. The seeking of the petition was in retaliation for Toler's criticism of the District Attorney's office in their handling of the threats to his children.

28. The petition also sought to publicly embarrass Mr. Toler and undermine his work as a bail bondsman and private investigator by prohibiting Mr. Toler from coming within 500 yards of 675 Texas Street, a place known as Government Center, where Mr. Toler conducted a significant amount of his work. Defendants were aware of Toler's work address because of his previous professional contact with the office.

29. Indeed, the modified order issued three weeks later (reducing the distance to 100 yards), though it purported to create a mechanism that would allow Mr. Toler to conduct lawful business, unreasonably prohibited him from entering the Tax Collector's Office, the Building Department, and the Office of the County Supervisor – all offices that Mr. Toler accessed regularly as a bail bondsman.

30. Additionally, the order required Mr. Toler to make an appointment through plaintiffs' counsel before entering the government building – which thereby placed a significant burden on the conduct of Mr. Toler's business and prevented him from earning an income.

31. Although defendants knew that Toler's place of business, Toler Bail Bonds, located at 709 Jefferson Street in Fairfield, was less than 100 yards away from 675 Texas Street

– the building Mr. Toler was required to stay away from – his place of business was not exempted from the parameters of the stay-away order.

32. Toler subsequently hired legal counsel to challenge both the legality of the TRO's issuance, and its subsequent alleged breach.

33. On September 22, 2005, Toler was standing in the first level of a parking lot (maintained for the public) when defendant Paulson (who has his own space on the fourth level) approached him. Toler, who did not know it was Paulson until someone called out Paulson's name, made no threatening gestures or movements, but did extend his hand to introduce himself.

34. Despite the fact that the encounter was coincidental and did not involve any violation of the TRO, Paulson, without probable cause, sought criminal prosecution of Toler for violation of California Penal Code, § 166, and now sought to have the Attorney General prosecute the matter, all the while knowing the underlying basis for the TRO was false.

35. Only after it was clear to Mr. Paulson that Mr. Toler sought to challenge the legality of the TRO and its alleged breach, did Paulson refer the case to the Attorney General's Office for prosecution.

36. On November 3, 2005, Paulson sought and executed a search warrant pursuant to the facially invalid TRO.

37. Before the 2006 Solano County District Attorney election, Mr. Toler published a satirical "Help Wanted" advertisement seeking applications for the position of Yolo County District Attorney. The satire in the advertisement was mild and comic in tone and did not contain the type of pointed, personal criticism that appeared in the article of April of 2005. In fact, the article never personally criticized District Attorney Paulson, or even mentioned his name.

38. Toler, in the "Help Wanted" advertisement, though the District Attorney had done nothing to allay Toler's serious concerns over the job performance of the District Attorney's Office, and though Toler remained convinced that his earlier criticisms were warranted, specifically did not include the personal criticism that appeared in his earlier paid article.

39. Throughout 2006, despite no threats of violence from Toler, and clearly contrary to the law governing the issuance of temporary restraining orders, the defendants continued to uphold and enforce the existing temporary restraining order against Toler. In fact, the defendants continued to pursue an extended three year injunction against Toler.

40. On February 1, 2007, Mr. Toler sought modification of the order. The modified order, signed February 9, 2007, continued to require Mr. Toler to "stay at least twenty-five yards away from the defendants, their residences, vehicles, and their place of work, which is the Solano County Government Center, 675 Texas Street, Fairfield, CA" – again, the very building and area where Toler conducted much of his business.

41. In exchange for these modifications, Mr. Toler accepted the onerous condition that he contact county counsel before engaging in legitimate business at the Government Center, by "requiring him to advise Plaintiff's counsel at the Solano County Counsel Office twenty-four(24) hours prior to entering."

42. Finally, on August 21, 2007, the office of the City Counsel, along with David Paulson, Al Garza, Brook Byerly, and Toler entered into a settlement agreement wherein the TRO was lifted and all matters relating to the Temporary Restraining Order and Petition for Injunction were resolved. The settlement agreement does not reach the present action currently before this Court.

**First Cause of Action**
**Violation of the 1st, 4th and, 14th Amendments – 42 USC §1983, including Monell liability**

43. Plaintiff incorporates by reference the preceding allegations.

44. The actions of defendants, as alleged above, was in retaliation for Toler's exercise of his civil right in publishing advertisements critical of the District Attorney's Office, and sought to "chill" any future exercise of Toler's First Amendment rights.

45. The actions of the defendants were intentional and directed pursuant to the final decision-making authority of the District Attorney.

46. At all relevant times, the individual defendants acted under the color of law.

47. The acts of defendants were the cause of the deprivation of plaintiff's rights as protected by the Constitution and the laws of the United States.

48. As a result of defendants' actions, plaintiff has suffered fear, anxiety, emotional distress, and loss of dignity and pride, and other damages in an amount to be determined at trial. Plaintiff has also suffered loss and damage to his business as a proximate result of defendant's lawful actions.

49. Plaintiff has found it necessary to retain private counsel to vindicate his rights under the law. Plaintiff therefore seeks an award of attorney's fees pursuant to 42 USC § 1988.

50. At all times mentioned herein, the defendants, and each of them, were engaged in an oppressive course of conduct, intentionally, maliciously, willfully, and with full knowledge that such conduct was in derogation of the law and the civil rights of plaintiff.

51. Wherefore plaintiff, Mr. Toler, prays for judgment against defendants as set forth hereafter.

## Second Cause of Action
### Conspiracy to Deprive a Constitutional Right – 42 USC §1983 and 42 USC §1985(3)

52. Plaintiff incorporates by reference the preceding allegations.

53. Defendants entered into an agreement to deprive Mr. Toler of his First Amendment rights. As a result of Mr. Toler's publication of advertisements critical of the District Attorney and the office of the District Attorney, the defendants jointly took the step of fabricating evidence in support of a petition and application for a temporary restraining order against Mr. Toler in retaliation for the exercise of his First Amendment rights. Defendants' actions were designed to "chill" the First Amendment rights of Mr. Toler through harassment and intimidation.

54. As a result of defendants' actions, Mr. Toler's First Amendment rights have in fact been "chilled" through the harassment and intimidation by the defendants. Additionally, Mr. Toler has suffered fear, anxiety, emotional distress, and loss of dignity and pride, and other damages in an amount to be determined at trial. Plaintiff has also suffered loss and damage to his business as a proximate result of defendant's lawful actions.

55. At all times mentioned herein, the defendants, and each of them, were collectively engaged in an oppressive course of conduct, intentionally, maliciously, willfully, and with full knowledge that such conduct was in derogation of the law and the civil rights of plaintiff.

56. Wherefore Plaintiff, Tom Toler, prays for judgment against defendants as set forth hereafter.

## JURY TRIAL

57. Plaintiff hereby demands a jury trial in this matter.

## PRAYER

58. For compensatory damages;

59. For exemplary and punitive damages;

60. For a preliminary and permanent injunction to be issued preventing defendants from further depriving plaintiff of his rights under the United States Constitution and the laws of the United States;

61. For declaratory relief as to the parties respective rights and duties;

62. For attorney's fees under 42 USC § 1988;

63. For costs of suit; and

64. For such other and further relief as may be ordered by the Court.

1 | DATED: February 4, 2008        GONZALEZ & LEIGH, LLP

                                                     By:      /s/ Matt Gonzalez
                                                                 MATT GONZALEZ

**SECOND AMENDED COMPLAINT**
Case No. 06-0735