UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOEL THOMAS TOLER,

        Plaintiff,

   v.

DAVID PAULSON; COUNTY OF SOLANO;
AL GARZA; and BROOK BYERLEY,

        Defendants.
_____/

NO. CIV. S-06-735 LKK/DAD

O R D E R

Plaintiff Joel Thomas Toler has brought this action against defendants David Paulson, the District Attorney for the County of Solano, Al Garza, the Chief Investigator for the District Attorney's office, Brook Byerley, the Supervising Investigator for the District Attorney's Office, and the County of Solano. Plaintiff alleges that defendants retaliated against him in violation of his First Amendment rights after he took out a paid advertisement in a local newspaper criticizing the District Attorney's Office. The allegedly retaliatory conduct pertains to a temporary restraining order that was sought and obtained against

1

plaintiff, and the prosecution of an alleged violation of that order. Plaintiff also alleges that defendants violated his Fourth Amendment rights by obtaining a search warrant based on false information. Pending before the court is defendants' motion to dismiss. The court resolves the matter on the parties' papers, supplemental briefing, and after oral argument. For the reasons explained below, the motion to dismiss is granted in part and denied in part.

**I. Background**

Plaintiff Joel Thomas Toler is a former police office and current licensed bondsman and private investigator in Solano County. Second Am. Compl.[1] (SAC) ¶ 12. In late March of 2005, plaintiff allegedly became aware that his children were being threatened by a man with a criminal history, including a history of sex crimes with a minor. Id. ¶ 13. Plaintiff made a police report to the Fairfield Police Department regarding these threats on March 27, 2005. Id.

On April 7, 2005, plaintiff went to the Solano County District Attorney's Office to inquire what action was being taken on the report, which he had filed eleven days earlier. Id. ¶ 14. After learning that the District Attorney had only received the report

---

[1] After the hearing on the motion to dismiss, and in conjunction with his supplemental briefing, plaintiff filed a proposed Second Amended Complaint. The First and Second Amended Complaints are substantially similar; the primary difference is that there is now an allegation that defendant Paulson acted as an official policymaker for the Solano County District Attorney's Office. Second Am. Compl. ¶ 10.

2

that day, and that the report had not been reviewed, plaintiff became concerned. Id. Plaintiff spoke with one of the office's investigators, William Godwin, who took plaintiff's statement. Id. ¶ 15.

Five days later, on April 12, 2005, plaintiff submitted a paid article to a local newspaper, the Fairfield Daily Republic, seeking to air his discontent with defendant Paulson, the District Attorney for Solano County, and his office for their inaction regarding the threats that plaintiff had reported. Id. ¶ 16. Plaintiff alleges that sometime after the article was published, defendant Paulson formulated a desire to retaliate against Toler and communicated this desire to defendant Garza, the Chief Investigator for the District Attorney's Office, and Byerley, the Supervising Investigator for the District Attorney's office. Id. ¶ 17.

Later on the same day that the article was published, Byerley spoke with Paulson and then prepared a report alleging that plaintiff had violated section 76 of the California Penal Code (which prohibits threats against public officials) on April 7, 2005 when he first visited the office to inquire into the status of his police report. Id. ¶¶ 18-19. The threat that plaintiff allegedly made was -- "don't make me defend my children." Id. Additionally, the investigator with whom plaintiff had spoken during that visit, Godwin, was asked to prepare a memorandum at the request of either defendant Paulson or Garza regarding his meeting with plaintiff, even though Godwin did not believe one was necessary. Id. ¶ 22. There is no allegation that Byerley's report or Godwin's memorandum

were used in any subsequent proceeding, such as in connection with the temporary restraining order.

**A. Temporary Restraining Order**

Approximately two months later, on June 13, 2005, plaintiff again visited the District Attorney's office and, according to defendants, made a statement to the effect of bringing a machine gun to that office. Defs.' Request for Judicial Notice, Ex. A. (declaration submitted by defendant Garza in connection with workplace violence petition stating that plaintiff said "every time I have come to see you, you send Brook Byerely [sic] and he patted me down and treated me like I had an Uzi when I come up here, which maybe I should do."). That same day, a local newspaper had also published a story about a small claims action plaintiff had filed against defendant Paulson earlier that month. SAC ¶ 23.

Two days after plaintiff's visit, defendant Paulson allegedly directed County Counsel for Solano County to file for a "Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employee and Application for Temporary Restraining Order," which was granted. SAC ¶ 24. The temporary restraining order was obtained pursuant to section 527.8 of the California Code of Civil Procedure, which permits employers to seek such an order when there has been a credible threat of violence against one of its employees. Commissioner Alberta Chew granted the order ex parte. Id. ¶ 26.

The employees on whose behalf the petition was filed were identified as defendants Paulson, Garza, and Byerley. Defs.'

Request for Judicial Notice, Ex. B (petition). Plaintiff alleges that the declaration of defendant Garza submitted in support of the petition, and subsequently relied upon by Commissioner Chew in issuing the order, contained two false statements: first, that plaintiff threatened to bring an "Uzi" to the District Attorney's office and second, that defendant Garza was an expert on workplace violence. SAC ¶ 25.

Plaintiff also maintains that the petition sought to embarrass him publicly and to prevent him from performing his work as a bail bondsman and private investigator. Id. ¶ 28. The order prohibited plaintiff from coming within 500 yards of Government Center, a place to which plaintiff allegedly needed access in order to perform his work. Id. The petition for the temporary restraining order, however, stated that the order would not deprive Mr. Toler of access to his place of employment. Defs.' Request for Judicial Notice, Ex. B. It is unclear if the County was aware of where plaintiff was employed when filing the petition.

Three weeks after the order's issuance, a modified order was issued reducing the distance to 100 yards. SAC ¶ 29. Plaintiff maintains that this still unreasonably prohibited him from entering the Tax Collector's Office, the Building Department, and the Office of County Supervisor -- places that plaintiff alleges he necessarily frequented in his work as a bail bondsman. Id. In addition, plaintiff's place of business, Toler Bail Bonds, was located less than 100 yards from Government Center but was not

exempt from the parameters of the stay-away order.[2]  Id. ¶ 31.

**B. Prosecution for Alleged Violation of Restraining Order**

On September 22, 2005, plaintiff was standing in a parking lot (presumably connected in some way to Government Center) when defendant Paulson approached him. Id. ¶ 33. Plaintiff did not know it was Paulson until someone called out Paulson's name. Id. Plaintiff then extended his hand to shake Paulson's hand. Id. Because of this incident, Paul sought criminal prosecution of plaintiff for violation of the temporary restraining order. Id. ¶ 34. Toler was acquitted of all charges on May 18, 2007.

Before the 2006 Solano County District Attorney election, plaintiff published a second newspaper piece, this time in the form of a satirical "Help Wanted" advertisement. Id. ¶ 37. In the First Amended Complaint, plaintiff alleged that the advertisement "criticized the then current administration of the Solano County District Attorney's office." FAC ¶ 28. In the Second Amended Complaint, plaintiff now alleges that the advertisement "did not contain the type of pointed, personal criticism that appeared in the article of April of 2005" and in fact "never personally criticized District Attorney Paulson, or even mention his name."[3]

---

[2] On February 9, 2007, the order was modified again to reduce the distance to twenty-five yards. SAC ¶ 40. Plaintiff also agreed to contact Solano County Counsel before engaging in legitimate business at Government Center. Id. ¶ 41.

[3] Plaintiff retreated from the earlier allegation in response to one of defendants' arguments in the motion to dismiss. Defendant argued that because plaintiff was not, in fact, silenced by the allegedly retaliatory conduct given that he continued to publish newspaper articles, plaintiff cannot show First Amendment

6

SAC ¶ 37.

## II. Standard

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 1964-65.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. Id.[4] "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 1965, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

---

injury. The retreat was unnecessary. As explained below, defendant's argument misconstrues the correct standard for a First Amendment retaliation claim.

[4] Of course, under the previous interpretation of the rules, such information was obtained through discovery.

7

ed. 2004).[5]

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. Analysis

Plaintiff alleges that defendants retaliated against him for his April 2005 newspaper article criticizing the District Attorney. He asserts two related claims under 42 U.S.C. §§ 1983 & 1985(3), retaliation for exercise of his First Amendment rights and conspiracy to retaliate. Defendants move to dismiss on the grounds that (1) defendants Paulson, Garza, and Byerley (the individual defendants) are entitled to various types of immunity, (2) plaintiff cannot prove the elements of a First Amendment

---

[5] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

8

retaliation claim, (3) the Fourth Amendment claim lacks sufficient factual detail, (4) the conspiracy claim lacks sufficient factual detail and is uncognizable with respect to § 1985(3), and (5) there is no basis for municipal liability.

Because different immunities apply to the individual defendants at different times, the court separately examines their liabilities with respect to seeking the temporary restraining order, prosecuting the alleged violation of that order, and obtaining the search warrant. The court then addresses whether plaintiff has stated a claim against Solano County.

**A. Defendants Paulson, Garza, and Byerley**

   **1. Temporary Restraining Order**

With regard to the individual defendants' actions in seeking and obtaining the temporary restraining order, defendants argue that they are entitled to witness and qualified immunity.

   **a. Witness Immunity**

Witnesses are immune from civil liability under § 1983 based on their testimony in judicial proceedings. Briscoe v. LaHue, 460 U.S. 325, 337 (1983). This immunity extends to sworn statements made to the court. Burns v. County of King, 883 F.2d 819, 822 (9th Cir. 1989). Here, defendants argue that they are entitled to witness immunity for statements made in support of the petition for the temporary restraining order.[6]

---

[6] Defendants also argue that they are entitled to witness immunity for testimony provided in the criminal action against plaintiff (as distinct from their conduct in seeking and obtaining the temporary restraining order). It does not appear that any of

9

1    "Complaining witnesses," however, are not entitled to witness
2 immunity. <u>Malley v. Briggs</u>, 475 U.S. 335, 340 (1986).  In general,
3 a complaining witness is one "who . . . sets the wheels of
4 government in motion by instigating a legal action." <u>Wyatt v.
5 Cole</u>, 504 U.S. 158, 164-65 (1992).  In the criminal context, a
6 complaining witness is one who submits a malicious complaint
7 without probable cause that subsequently leads to an arrest. <u>Id.</u>
8 (noting that, at common law, complaining witness did not enjoy
9 absolute immunity); <u>Paine v. City of Lompoc</u>, 265 F.3d 975, 981 n.2
10 (9th Cir. 2001) ("Absolute witness immunity does not extend to
11 'complaining witnesses,' those individuals whose allegations serve
12 to bring about a prosecution.").

13   Courts have similarly refused to extend witness immunity to
14 those who wrongfully initiate civil legal proceedings. <u>E.g.</u>, <u>Todd
15 v. Weltman, Weinberg & Reis Co.</u>, 434 F.3d 432, 447 (6th Cir. 2006)
16 (party acted a complaining witness when providing false information
17 to initiate garnishment proceeding); <u>Gionis v. Javitch, Block &
18 Rathbone, LLP</u>, 238 Fed. Appx. 24, 27 (6th Cir. 2007) (witness who
19 submitted affidavit that was attached to a civil complaint acted
20 as complaining witness).  In addition, the concern about not
21 shielding complaining witnesses with immunity is particularly
22 pronounced when the proceedings at issue are ex parte (which, as
23 here, is the case with most temporary restraining orders). <u>See
24 Cruz v. Kauai County</u>, 279 F.3d 1064, 1069 (9th Cir. 2002).

---

26 plaintiff's claims are predicated upon such testimony.
Accordingly, this issue appears moot.

10

In this case, the only defendant who might arguably be entitled to witness immunity is defendant Garza for submitting a declaration in support of the temporary restraining order. Defendant Garza argues that he is not a complaining witness because he was not the one who requested the temporary restraining order; instead, he notes that Solano County is the named plaintiff in that action. This distinction is unavailing. In the criminal context, for instance, it is the government rather than the complaining witness who brings suit, but that distinction does not entitle the complaining witness to witness immunity. Similarly, here, while defendant Garza may not have been the named plaintiff, he is alleged to have participated in obtaining the temporary restraining order. Accordingly, the court finds that defendant Garza is not entitled to witness immunity for his declaration made in support of the temporary restraining order.

**b. Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In analyzing claims involving qualified immunity, courts engage in a two-part test. First, the court must determine if, in the light most favorable to party asserting injury, the official's conduct violated a constitutional right, and if so, whether that right was clearly established.

1  Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  Second, if there
2  were substantial grounds for the official to have concluded that
3  he or she had legitimate justification under the law for acting as
4  he or she did, plaintiff is not entitled to damages.
5       Here, as an initial matter, defendants argue that they acted
6  upon a reasonable and credible threat of violence in seeking the
7  temporary restraining order.  But that irons over a fairly
8  significant dispute between the parties: whether the threat was
9  made, as defendants argue, or fabricated, as plaintiff alleges.
10 "Pre-trial dismissal on qualified immunity grounds is inappropriate
11 if the plaintiff establishes that material issues of fact exist."
12 McSherry v. City of Long Beach, 423 F.3d 1015, 1022 (9th Cir.
13 2005).  Certainly, on a motion to dismiss, where the court must
14 accept plaintiff's factual allegations as true, dismissal would be
15 even more inappropriate.
16      Defendants also argue that plaintiff cannot show that his
17 constitutional rights were violated, or that these rights were
18 clearly established at the time of injury in 2005.  In Deveraux v.
19 Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001), the Ninth Circuit
20 addressed whether "there is a clearly established constitutional
21 due process right not to be subjected to criminal charges on the
22 basis of false evidence that was deliberately fabricated by the
23 government."  The court found that there was such a right, noting
24 that "[p]erhaps because the proposition is virtually self-evident,
25 we are not aware of any prior cases that have expressly recognized
26 this specific right, but that does not mean that there is no such

1  right." Id. at 1075.

2  Similarly, here, in light of Deveraux, the court finds that
3  there was a clearly established right not to be subjected to civil
4  proceedings based upon allegedly government-fabricated evidence.
5  Id. ("'Precedent directly on point is not necessary to demonstrate
6  that a right is clearly established. Rather, if the unlawfulness
7  is apparent in light of preexisting law, then the standard is met.
8  In addition, even if there is no closely analogous case law, a
9  right can be clearly established on the basis of common sense.").
10 Accordingly, the court finds that dismissal on qualified immunity
11 grounds is unwarranted at the present stage.

### c. First Amendment Retaliation

13 In order to state a claim for retaliation under the First
14 Amendment, plaintiff must allege that he or she engaged in
15 constitutionally protected speech, that the government's
16 retaliatory actions would have chilled a person of ordinary
17 firmness, and that the government would not have taken the
18 retaliatory action but for its impermissible purpose. See
19 Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th
20 Cir. 1999); Hartman v. Moore, 547 U.S. 250, 260 (2006).

21 Here, defendants first argue that plaintiff has not alleged
22 how his First Amendment rights were chilled. The relevant issue
23 here is whether a person of ordinary firmness would have been
24 chilled by defendants' actions. Even if the mere act of filing an
25 allegedly false petition would not be sufficiently injurious to
26 deter a person of ordinary firmness from speaking, certainly the

13

restriction of freedom of movement imposed by a temporary restraining order (issued as a result of the petition) would.

Defendants also argue that causation is lacking. First, they note that plaintiff continued to publish critical advertisements of the district attorney after the petition seeking a temporary restraining order was filed but prior to its resolution. Nevertheless, "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." Mendocino Envtl. Ctr., 192 F.3d at 1300. Second, they argue that there is no allegation that the defendants were aware of the article prior to the filing of the petition. The second amended complaint has now cured this deficiency. SAC ¶¶ 20-21.

Finally, defendants also argue that causation is lacking because Comissioner Chew must have found that there was a credible threat of violence by plaintiff; accordingly, if the threat was real, it would have precipitated the filing of the petition regardless of any additional impermissible motive. Defendants have not, however, explained why that finding should be binding in this proceeding. At the present stage, the court must accept plaintiff's factual allegations as true, including his allegation that he never made the "Uzi" comment. SAC ¶ 25. Accordingly, the court finds that plaintiff has adequately stated a claim for First Amendment retaliation with respect to the individual defendants' actions in seeking and obtaining the temporary restraining order.
////

14

**d. Conspiracy**

Finally, defendants argue that plaintiff has not pled sufficient facts to prove the existence of a conspiracy under § 1983 pertaining the petition. But plaintiff alleges that the individual defendants conspired together to obtain the temporary restraining order after learning of plaintiff's newspaper article. SAC ¶ 17. This sufficiently anchors the conspiracy claim in factual detail to withstand dismissal.

With respect to the § 1985(3) claim, however, the court agrees that dismissal is appropriate. To state a claim under 42 U.S.C. § 1985(3), plaintiff must allege that defendants acted from "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" in conspiring to deprive him of equal protection of the laws, or of equal privileges and immunities under the laws. Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). The Ninth Circuit has "extended [section 1985(3)] beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985) (internal quotation marks omitted). Plaintiff has not alleged that he is part of any class whatsoever, let alone that such a class warrants special assistance. Accordingly, the § 1985(3) claim is dismissed.

**2. Prosecution for Alleged Violation of Restraining Order**

With respect to the prosecution of the alleged violation of the restraining order, defendants argue that plaintiff's claims are

barred by, inter alia, prosecutorial immunity. A prosecutor's decision to prosecute is absolutely immune from civil suit for monetary damages. Imbler v. Pachtman, 424 U.S. 409, 427 (1976). Although defendants argue that "investigators, employed by a prosecutor . . . are entitled to the same degree of immunity as prosecutors," Gobel v. Maricopa County, 867 F.2d 1201, 1203 n.5 (9th Cir. 1989), the immunity only adheres to prosecutorial functions. See Cleavinger v. Saxner, 474 U.S. 193, 201 (1985) ("'[I]mmunity analysis rests on functional categories, not on the status of the defendant.'"); Hartman, 547 U.S. at 262 (noting that an "action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute" but "instead the defendant will be a non-prosecutor, an official, like an inspector").

With respect to Paulson, absolute immunity applies.[7] Even if Paulson knew that the temporary restraining order was obtained by fabricated evidence, this would not change the analysis. The immunity is -- as its name implies -- absolute. See Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986) (no bad faith exception). The only question is whether Paulson was engaged in a prosecutorial function when he referred the case to the Attorney General's Office for prosecution. The court concludes that he was.

The complaint only appears to implicate District Attorney Paulson in plaintiff's prosecution, rather than investigators Garza

---

[7] Accordingly, the court does not address the alternate grounds for dismissal with respect to Paulson's role in plaintiff's prosecution (e.g., Eleventh Amendment immunity, absence of probable cause, etc.).

16

and Byerley. SAC ¶ 35 ("Paulson refer[ed] the case to the Attorney General's Office for prosecution."). Accordingly, the court need not reach the issue of whether the latter defendants were acting in an investigative or prosecutorial capacity, because, with respect to the relevant act at issue (prosecution), there is no factual allegation that they acted at all.

**C. Search Warrant**

Plaintiff also alleged in his First Amended Complaint that defendants sought to obtain a search warrant based upon an affidavit with "false and otherwise inadequate information," without "probable cause," and that such actions "violated the Fourth Amendment." FAC ¶ 27. The Second Amended Complaint now alleges even less: "Paulson sought and executed a search warrant pursuant to the facially invalid TRO." SAC ¶ 36. Aside from this lone and terse sentence, the complaint provides no other factual detail. Indeed, in his opposition to defendants' motion to dismiss, plaintiff does not even raise his Fourth Amendment claim. Accordingly, the court dismisses the claim.

**D. Solano County**

The final outstanding issue is whether plaintiff has stated a claim against Solano County (and, necessarily, liability for defendants Paulson, Garza, and Byerley in their official capacities as opposed to their personal capacities). Municipal liability may be established in one of three ways. See Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992). A plaintiff may prove that the actions in question were conducted pursuant to an official custom, policy, or practice; that the individual who committed the act was

17

an official with final policymaking authority; or that such an official ratified a subordinate's unconstitutional act. <u>Id.</u>; <u>accord</u> <u>Weiner v. San Diego County</u>, 210 F.3d 1025, 1028 (9th Cir. 2000).

Here, plaintiff now alleges that defendant Paulson acted as an official policymaker for the county. SAC ¶ 10. With respect to defendant Paulson's decision to refer plaintiff for criminal prosecution, this argument fails. <u>See</u> <u>Pitts v. County of Kern</u>, 17 Cal. 4th 340 (1998) (district attorneys are arms of the State of California rather than the county in their capacity as prosecutors). But with respect to defendant Paulson's decision to pursue the temporary restraining order, Paulson was not acting in his capacity as a prosecutor. <u>See</u> <u>City of Los Angeles v. Animal Defense League</u>, 135 Cal. App. 4th 606, 619 (2006) (holding that city did not act in its capacity as public prosecutor when filing workplace violence petitions).

The county argues that defendant Paulson is not vested with final decision-making authority to seek a workplace violence petition as an employer. The relevant factors for consideration in determining whether an official is a policymaker for the county include: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decision are final -- i.e., are they subject to any meaningful review; and (3) whether the policy decision . . . is within the realm of the official's grant of authority." <u>Randle v. City of Aurora</u>, 69 F.3d 441, 448 (10th Cir. 1995); <u>see also</u> <u>Lytle v. Carl</u>, 382 F.3d 978, 984 (9th Cir. 2004). Because at least some

of these factors potentially involve questions of fact, the court finds that dismissal is inappropriate.

Lastly, although plaintiff seeks "punitive damages against all Defendants," SAC ¶ 2, punitive damages are not available against the county, City of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981), and may therefore only be obtained, if at all, against defendants Paulson, Garza, and Byerley in their personal capacities.

### IV. Conclusion

For the reasons explained above, the motion to dismiss is granted in part and denied in part. Defendants shall file an answer to the Second Amended Complaint.

IT IS SO ORDERED.

DATED: March 14, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

19