MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
BRYAN VERESCHAGIN (SBN 188608)
BRIAN BRAZIER (SBN 245004)
MATT SPRINGMAN (SBN 252508)
GONZALEZ & LEIGH, LLP
Two Shaw Alley, 3rd Floor
San Francisco, CA 94105
Telephone:  (415) 512-2000
Facsimile:  (415) 512-2001

Attorneys for Plaintiff
JOEL THOMAS TOLER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL THOMAS TOLER,<br><br>                    Plaintiff,<br><br>  vs.<br><br>DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLY, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | **Case No. CIV 06-0735 LKK DAD**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          November 3, 2008<br>Time:          10:00<br>Courtroom:  4<br>Judge:         Hon. Lawrence K. Karlton |

### I.    INTRODUCTION

Tom Toler brought this action after being falsely accused of making a violent threat in the Offices of the Solano County District Attorney's Office after urging the District Attorney to take action in a matter related to threats against his children.  This matter presents fundamental factual disputes that should be resolved by a jury:  First, whether Mr. Toler made any violent statements in the Office of the District Attorney, second, whether the District Attorney retaliated against Mr. Toler for exercising his free speech, and finally whether Defendant Garza made untruthful assertions in his declaration seeking a temporary restraining order against Mr. Toler.

Mr. Toler has no criminal record, and himself is a former peace officer, who was acquitted in the criminal prosecution related to the alleged violation of the TRO that was issued against him.  Mr. Toler denies ever making any violent threats, including any threats related to bringing an uzi into the office of the District Atorrney, and he believes that circumstantial evidence exists that shows Defendants retaliated against him for publishing an article critical of the District Attorney's Office. Mr. Toler believes these issues should be resolved by the trier of fact.

## II.     FACTUAL BACKGROUND

**A.  The Children of Plaintiff Tom Toler are the Subject of Death Threats.**

The plaintiff, Tom Toler, is a former peace officer and is currently a licensed bail bondsman and licensed private investigator in Solano County.[1]  On March 27, 2005, Mr. Toler received a phone call from Richard Oawster, wherein Oawster threatened to kill Mr. Toler's two children.  Oawster called the children by name and said, "you might as well get used to used to not having your kids here" and "that bitch and bastard son of yours is dead."[2]  Mr. Toler, who was outside working on his motor home at the time he received the call, knew that Oawster was watching him because before the call was over, Oawster remarked, "Enjoy working on your motor home."[3]  The March 27, 2008 threat followed two threatening and harassing phone calls made directly to Mr. Toler's son earlier in the year.[4]

Mr. Toler was familiar with Oawster through his private investigative work and knew Oawster to have a violent criminal history, including a documented history of sexually molesting his own daughter, kidnapping, and a long history of domestic violence with at least three

---

[1] Docket No. 30, First Amended Complaint ("Complaint"), ¶ 12.
[2] *See* Declaration of Matt Springman, Ex. A at 31:21- 34-4 [Excerpts from the deposition transcript of Tom Toler].
[3] *Id* at 32:4-6.
[4] *Id*. at 33:9-34:4.

different women.[5]  Mr. Toler was also aware that Oawster owned and carried firearms.[6]  Finally, Mr. Toler also suspected that Oawster previously came onto to his property and killed one of his dogs, and on another occasion flooded his home.[7]  Armed with the knowledge of the threats against his children and knowing the history of the man who made the threats, Mr. Toler contacted the Fairfield Police Department on March 27, 2005.[8]

Over the course of the next three months, Mr. Toler made a series of trips to the District Attorney's Office to inquire on the status of any review or investigation into the threats made against his children.  Over those several months, Mr. Toler came to learn that neither the Police Department, nor the District Attorney's Office made any significant attempt to review or investigate those threats.  Mr. Toler regarded the threats made against his children as serious and endeavored to impress this upon the District Attorney's Office.  However, Defendants' allegations that he made violent threats are absolutely false.  Indeed, by the accounts of several witnesses to Mr. Toler's visits, he is described, at worst, as irritated, upset, and indignant.

On April 7, 2005 Mr. Toler attempted to follow up with the District Attorney's Office regarding any investigation into the report he filed with the Police Department 11 days earlier.[9]  After learning that the District Attorney had only received the report that day, and that the report remained unreviewed, Mr. Toler became concerned.[10]  However, after speaking with William Godwin, investigator for the District Attorney's Office, Mr. Toler calmly provided Mr. Godwin with a statement regarding the threats to his children.[11]

### B. Mr. Toler, Upset with the District Attorney's Persistent Inaction Surrounding the Threats to His Children, Publishes an Article Critical of the District Attorney.

On April 12, 2005, Mr. Toler submitted a paid article to a local newspaper, which

---

[5] *Id*. at 37:1 – 44:23; Complaint, ¶ 13.
[6] *Id* at 34:5-25, 151:22-152:8.
[7] *Id*. at 67:2-69:12.
[8] *Id*.
[9] Complaint, ¶ 14.
[10] *Id*.
[11] *Id*.

3
**PLAINTIFF'S OPPOSTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
Case No. CIV 06-0735 LKK DAD

criticized defendant Paulson and the Solano County District Attorney's office, and sought to air his discontent over the treatment he had received at the hands of the District Attorney's office and their inaction regarding the reported threats to his children.[12]

**C. On the Date the Article was Published and Five Days After Mr. Toler's Purported Threatening Behavior, Garza and Paulson Direct Their Staff (Byerely, Godwin) to Prepare Reports on Mr. Toler's Previous Visits. Inspector Godwin Makes Clear that the Report Was Ordered Specifically in Response to Mr. Toler's Critical Article.**

Later that day on April 12, five days after the Mr. Toler had inquired about the threats to his children, and only after Mr. Toler's article appeared in a local newspaper, D.A. investigator Brook Byerly, after speaking to District Attorney Paulson, prepared a report alleging that Mr. Toler had violated Penal Code § 76 on April 7, 2005 by making threats against a Public Officer/Public Office. The threat allegedly made by Mr. Toler was – "don't make me defend my children."[13]

Additionally, William Godwin, either at the direction of defendant Paulson or defendant Garza, was also ordered to prepare a memorandum regarding Godwin's April 7, 2005 meeting with Mr. Toler, even though Godwin did not believe the incident necessitated preparation of a memorandum.[14] In fact, Godwin testified that he had a productive conversation with Mr. Toler and that they parted on a friendly note.[15] The report was prepared specifically in response to the published article by Mr. Toler, and was conspicuously titled "Response to Daily Republic Article Submitted by Tom Toler."[16]

**D. Marsha Johnson, Paulson's Personal Secretary, Makes Clear that Paulson Knew of the Critical Article, Intended to Respond, and Had Discussed Toler's Article with Al Garza**

---

[12] Complaint, ¶ 15.
[13] Complaint, ¶ 16.
[14] Complaint, ¶ 17.
[15] *See* Declaration of Matt Springman, Ex. D at 12:23 -13:5, 20:1-25 [Excerpts from the deposition transcript of William Godwin (rough)].
[16] *See* Declaration of Matt Springman, Ex. C [Godwin Memorandum]; *See* Declaration of Matt Springman, Ex. D at 18:8-21-1 [Excerpts from the deposition transcript of William Godwin (rough)].

As part of April 14, 2005 (Subject Heading: "RE: Today's Newspaper") email discussion (which Plaintiff only has one page of due to Defendants failure to respond to any document requests), Marsha Johnson describes Mr. Toler's April 7, 2005 visit to the Office.  In so doing, Ms. Johnson begins, "Al: I didn't know Dave has (sic) already responded to this."[17]  In fact, Garza noted under oath that he and Paulson were already discussing Mr. Toler's article privately.[18]

Additionally, in Ms. Johnson's deposition testimony, she testifies that shortly after the article appeared she raised the issue with Mr. Paulson directly in response to an inquiry from a member of the County Board of Supervisors.  In response to Ms Johnson Mr. Paulson responded, "Don't worry about it.  I've already taken care of it. You don't need to respond"[19] (Defendants' failure to provide responses to Plaintiff's discovery requests has left Plaintiff without any of these fundamental communications)

### 1. Two Days After Mr. Toler Files a Small Claims Action Against David Paulson, Defendants Petition for a Temporary Restraining Order Based on False Information.

On June 13, 2005 a local newspaper published a story reporting that Mr. Toler had filed a small claims action against defendant Paulson.[20] The small claims action was related to the inaction of the District Attorney's Office in investigating the threats made to Mr. Toler's children. Two days later, the District Attorney filed for, and was granted, a "Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employee and Application for Temporary Restraining Order" pursuant to CCP §§ 527.8 and 527.9 in County of Solano et al. v. Toler (Case No. FCS026197) ("the petition").  The order was granted ex parte by

---

[17] *See* Declaration of Matt Springman, Ex. E [Johnson Email].

[18] *See* Declaration of Matt Springman, Ex F at 27:7-9 [Excerpts from the deposition of Al Garza (rough)].

[19] *See* Declaration of Matt Springman, Ex. B at 19:3-20:23 [Excerpts from the deposition transcript of Marsha Johnson].

[20] Complaint, ¶ 18.

Commissioner Alberta Chew.[21]

However, the affidavit of defendant Garza relied on by Commissioner Chew contained at least two statements that defendants knew to be false:

**(1)**  That Mr. Toler threatened to bring an "Uzi" to the District Attorney's Office on June 13, 2005, and that

**(2)**  That Defendant Garza was an expert on workplace violence.[22]

(Indeed, Mr. Garza admits that he is not an expert in workplace violence or threat assessment and has never been certified as such an expert)[23]

### 2.  The Petition Seeks to Publicly Embarrass Mr. Toler

The petition also sought to publicly embarrass Mr. Toler and prevent him from performing his work as a bail bondsman and private investigator by prohibiting Mr. Toler from coming within 500 yards of 675 Texas Street, a place known as Government Center, a government building to which Mr. Toler needed access in order to perform his work.  Indeed, the modified order issued three weeks later (reducing the distance to 100 yards), though it purported to create a mechanism that would allow Mr. Toler to conduct lawful business, unreasonably prohibited him entering the Tax Collector's Office, the Building Department, and the Office of the County Supervisor – all offices that Mr. Toler necessarily visited regularly in his work as a bail bondsman.[24]

Additionally, the order required Mr. Toler to make an appointment through the county's counsel before entering the government building – thereby placing a significant burden on Mr. Toler's ability to conduct his business.[25]

Both County Counsel and Commissioner Chew knew that Toler's place of business, Toler Bail Bonds, located at 709 Jefferson Street in Fairfield, was less than 100 yards away from

---

[21] Complaint, ¶ 19.
[22] Complaint, ¶ 22.
[23] *See* Declaration of Matt Springman, Ex F at 57:1-59:14 [Excerpts from the deposition of Al Garza (rough)].
[24] Complaint, ¶ 21.
[25] Complaint, ¶ 23.

675 Texas Street – the building Mr. Toler was required to stay away from. Mr. Toler's place of business was, however, not exempted from the parameters of the stay-away order.[26]

### E. The District Attorney Files Criminal Charges Against Mr. Toler for a Violation of the Order Based on a Chance Encounter in a Parking Lot.

On September 22, 2005, Toler was standing in the first level of a parking lot (maintained for the public) when defendant Paulson (who has his own space on the fourth level) approached him.

Notwithstanding his knowledge that the chance encounter did not involve a purposeful violation of the TRO, Paulson sought criminal prosecution of Toler for violation of California Penal Code, § 166 and other charges.[27] At trial on the purported violation, at which Mr. Paulson was a key witness, Mr. Toler was acquitted of all charges.

On November 3, 2005, defendants sought to obtain a search warrant and have it served on Toler. The search warrant affidavit was (1) based on false and otherwise inadequate information; (2) lacked probable cause; and (3) was in violation of the Fourth Amendment of the United States Constitution.[28]

Throughout 2006, despite no threats of violence from Mr. Toler, indeed no contact with anyone from the District Attorney's office, and clearly contrary to the law governing the issuance of temporary restraining orders, the defendants continued to uphold and enforce the existing temporary restraining order against Mr. Toler. In fact, the defendants continued to pursue an extended three year injunction against Mr. Toler.[29]

On February 1, 2007, Mr. Toler sought modification of the order. The modified order, signed February 9, 2007, continued to require Mr. Toler to "stay at least twenty-five yards away from the defendants, their residences, vehicles, and their place of work, which is the Solano County Government Center, 675 Texas Street, Fairfield, CA" – again, the very building and area

---

[26] Complaint, ¶ 24.
[27] Complaint, ¶ 26.
[28] Complaint, ¶ 27.
[29] Complaint, ¶ 29.

1  where Mr. Toler conducts much of his business.[30]

2  In exchange for these modifications, Mr. Toler accepted the onerous condition that he
3  contact County Counsel before engaging in legitimate business at the Government Center, by
4  "requiring him to advise Plaintiff's counsel at the Solano County Counsel Office twenty-four
5  (24) hours prior to entering."[31]

6  Finally, on August 21, 2007, over two years after the initial petition, the office of the City
7  Counsel, along with David Paulson, Al Garza, Brook Byerly, and Tom Toler entered into a
8  settlement agreement lifting the Temporary Restraining Order and Petition for Injunction.  The
9  settlement agreement does not reach the present action currently before this Court.[32]

### III.    LEGAL STANDARD

As set forth by the Ninth Circuit, "[s]ummary judgment is proper only if no material facts are in dispute and one party is entitled to prevail as a matter of law."[33]  Similarly, because summary judgment is a "drastic device," one which denies a party his Seventh Amendment right to present his case to a jury, the moving party bears a "heavy burden" of establishing the absence of any triable issue of fact.[34]  When evaluating this heavy burden, the District Court construes the evidence—and all reasonable inferences from that evidence — in the light most favorable to the party opposing summary judgment.[35]  For purposes of this motion, the Court must accept the testimony and evidence presented by Mr. Toler as true, and once accepted, Defendants' motion for partial summary judgment must be denied.

### IV.    VIEWING THE FACTS IN THE LIGHT MOST FAVORABLE TO MR. TOLER, DEFENDANTS' HAD NO REASONABLE BASIS TO PURSUE A TRO AGAINST MR. TOLER.  THAT ISSUE SHOULD GO TO THE JURY.

#### A.    Defendants Cannot Show That Mr. Toler Made any Threat of Violence Against Any Employee of the Solano County District Attorney's Office.

---

[30] Complaint, ¶ 30.
[31] Complaint, ¶ 31.
[32] Complaint, ¶ 32.
[33] *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984); *citing* Fed. R. Civ. P. 56(c).
[34] *Nationwide Life Inc. v. Bankers Leasing*, 182 F. 3d 157, 160 (2nd Cir. 1999).
[35] *Matsushita Electric v. Zenith Radio*, 475 U.S. 574, 586-590 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The issuance of a TRO is a drastic measure and is permitted only in cases where an "employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace[.]"[36] Defendants attempt to craft a theory of a credible threat of violence by patching together a series of statements that indicate Mr. Toler was upset, irritated, vociferous, and frustrated by the conduct of the Solano County District Attorney's Office. Indeed, Mr. Toler does not deny that he was upset and frustrated. But the issuance of a TRO requires something much different – a credible threat of violence. And the facts here do not meet that standard.[37]

Defendants cannot provide a single instance where Mr. Toler made a violent threat against anyone at the Office of the Solano County District Attorney's Office. At the very best, Defendants can establish only that Mr. Toler was upset, irritated, vociferous and frustrated – behavior that falls short of the standard under § 527.8.

Defendants citation to *Levin v. United Air Lines*, 158 Cal.App.4th 1002 (2008) for the proposition that Mr. Toler's reference to an uzi qualifies as "perceived threat" (and thus actionable under §527.8, is also well off the mark. In *Levin*, the Plaintiff, while attempting to go through airport security, stated that she had a bomb in her bag.[38] And when questioned about her statement, she replied, "[y]es, I said I have a bomb."[39] The statement, according to the defendants was unqualified.

Here, the statement made by Toler to Garza – "the only difference between you and a meter maid is if you brought an uzi in the courthouse, nobody would care" – does not approach the type of overt, unqualified threat made in *Levin*. Indeed, there is no threat at all, much less the credible threat required under § 527.8.

---

[36] CA CODE CIV. PROC. §527.8

[37] *Scripps Health v. Marin*, 72 Cal.App.4th 324, 331 (to obtain an injunction under § 527.8, employer must establish by clear and convincing evidence not only that defendant engaged in unlawful violence or made credible threats of violence, but also that great or irreparable harm would result to an employee without issuance)

[38] 158 Cal.App.4th 1002, 1012.

[39] 158 Cal.App.4th 1002, 1013.

9
**PLAINTIFF'S OPPOSTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**Case No. CIV 06-0735 LKK DAD**

### B. Mr. Toler's Behavior cannot reasonably be described as stalking

Defendants attempt to characterize Mr. Toler's behavior as stalking or harassing is a complete distortion of the facts. Mr. Toler did make a series of visits to the District Attorney's Office over several months. Mr. Toler, however, was merely attempting to inquire on the status of an investigation (or lack thereof) into the harassment and threats of violence against his children – threats made by a man with a well-documented history of violence, sexual molestation, harassment, stalking, and erratic behavior. The District Attorney's Office had the sole authority and responsibility for investigating these threats. In fact, over the course of the several months that Mr. Toler was making inquiries into the status of the case, the District Attorney's Office did not appear to conduct any investigation, repeatedly told Mr. Toler that they had not yet received a police report, and from a review of the record were negligent in undertaking any review or investigation into credible threats of violence against Mr. Toler's children.

In that context, to describe Mr. Toler's behavior as stalking, or harassing, when he was simply attempting to obtain information about an urgent and consequential set of circumstances, from the only entity with any authority to act on the threats, is simply an unreasonable characterization. Defendants cannot cite a single case where official visits to a government office to inquire on the status of a matter in which the visitor has a significant interest, can be construed as stalking or harassing. In fact, they cannot cite a case even remotely related. The only case defendants cite – *Grant v. Clampitt*, 56 Cal.App.4th 586 (1997) – is outside of the workplace context and deals with a complaint over a neighbor playing her radio too loud. This is not that case.

### C. Defendants pursued a TRO against Mr. Toler Based on a False Declaration

Mr. Toler alleges that Defendants petitioned for a TRO against him based on false information, namely that Mr. Toler threatened to bring an uzi into the Solano County District Attorney's Office and that Defendant Garza is an expert on workplace violence. Additionally, Plaintiff alleges that the Defendants sought the TRO in retaliation for criticism of the District

Attorney, David Paulson, and criticism of the Office's handling of the credible threat of violence against Mr. Toler's children.

Mr. Toler denies ever threatening or inferring that he would bring an uzi into the District Attorney's Office.  He also denies any behavior that could be described as threatening, or violent.  Indeed, numerous witnesses to Mr. Toler's demeanor in the office never mention threats of violence, and at most describe Mr. Toler as acting merely upset over the handling of the threats against his children.  Taking Mr. Toler's facts as true, Defendants' Petition for a TRO was without basis.

## V. PLAINTIFF CAN ESTABLISH A PRIMA FACIE CASE OF BOTH INTENT AND CONSPIRACY TO RETALIATE

### A. Retaliation, When Viewed in the Context of Mr. Toler's Article Criticizing the District Attorney's Office, Provides the Only Reasonable Basis for Defendants' Fabrication of a Violent Threat

To establish a claim for retaliation under the First Amendment, the plaintiff must establish that defendants conduct deterred or chilled the plaintiffs' political speech and such deterrence was a substantial or motivating factor in the defendants' conduct.  A plaintiff need not demonstrate that their speech was actually inhibited or suppressed, but rather, that defendants' acts would chill or silence a person of ordinary firmness from future First Amendment activities.  And, intent to inhibit speech, in the context of a First Amendment violation, can be demonstrated either through direct or circumstantial evidence.[40]  Finally, circumstantial evidence of intent is sufficient to survive a summary judgment motion.[41]

Here, Mr. Toler maintains that he never threatened to bring an uzi into the Solano County District Attorney's Office (or made any other violent threat).  If one treats Mr. Toler's version of events as true, as this Court must do, the only reasonable explanation for defendants' submission of a false declaration – namely, that Mr. Toler threatened to bring an uzi into the District

---

[40] *Mendocino Entvl. Ctr. V. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999).

[41] *See Magana v. Commonwealth of N. Mariana Islands,* 107 F.3d 1436, 1448 (9th Cir.1997)

Attorney's Office and that Mr. Garza is an expert on threat assessment (a fact that, by Garza's own words, is untrue) – is as a pretext for retaliating against Mr. Toler for his criticism of the Defendants and their Office.

Additionally, only two days after an article appeared in the local paper about Mr. Toler's small claims action against Mr. Paulson, Defendants sought a TRO against Mr. Toler.

The filing of a false declaration in support of TRO combined with restriction of Mr. Toler's freedom of movement imposed by the TRO easily meets the standard established by *Mendocino* to establish a circumstantial case of retaliation.

Whether or not Defendants retaliated against Mr. Toler is a matter for the jury.

### B. Defendants' Acted in Concert to Document Mr. Toler's Visits Only After He Published Articles Critical of the Office

*Mendocino* also establishes the standard to establish liability for a conspiracy under §1983.  To establish a conspiracy, a plaintiff must "demonstrate the existence of an 'an agreement or 'meeting of the minds' to violate constitutional rights.'"[42] However, "[s]uch an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."[43]

It clear from the testimony of Marsha Johnson and Al Garza that Paulson was in communication with his investigators almost immediately after the article was published. Indeed, it is likely that he ordered, either himself, or through Mr. Garza, his investigators (including Byereley, who also created a report on April 12)  to create reports on Mr. Toler immediately after the article was published – reports that nobody thought it prudent to create before publication of the articles.  Additionally, Mr. Garza's own testimony describes discussions with Mr. Paulson immediately after the article was published.

---

[42] *Mendocino*, 192 F.3d at 1301 (*quoting United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)(en banc)).

[43] *Id.* (*quoting Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

Additionally, it is clear from the deposition testimony of William Godwin, that he was ordered by his superior (either Paulson or Byereley) to create a report of an incident, even though he did not think it was necessary.  And further evidence of the retaliatory nature of this turn of events was the title of the report: "Response to Daily Republic Article Submitted by Tom Toler." Indeed,

## VI. PAULSON AND BYERLEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Under the Supreme Court's decision in *Saucier v. Katz*,[44] qualified-immunity analysis is a two-part inquiry.  First, the Court must determine the "threshold question" of whether when viewed in a light most favorable to the opposing party, the facts alleged show that the state actors conduct violated a constitutional right of the injured party.[45]  If that condition is satisfied, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case," such that "it would be clear" to the moving party that their conduct was unlawful.[46]

The Ninth Circuit is unambiguous on this point, holding that "[t]he Supreme Court has explained that a right is clearly established if the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates [a constitutional right]."[47] Of course, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."[48]  As the Supreme Court recently noted in *Hope v. Pelzer*, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  The Court reflected that it has "expressly rejected a requirement

---

[44] *Saucier v. Katz*, 533 U.S. 194 (2001).

[45] *Id.* at 201.

[46] *Id.* at 201-02.

[47] *Ortega v. O'Connor*, 146 F.3d 1149, 1157 (9th Cir. 1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[48] *Id.*

13
**PLAINTIFF'S OPPOSTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**Case No. CIV 06-0735 LKK DAD**

1  that previous cases be 'fundamentally similar.'"[49]  Even prior to *Hope*, the Ninth Circuit adopted

2  the same rule, holding that "a law can be violated 'notwithstanding the absence of direct

3  precedent … [o]therwise, [state actors] would escape responsibility for the most egregious forms

4  of conduct simply because there was no case on all fours prohibiting that particular manifestation

5  of unconstitutional conduct.'"[50]

6      Here, Mr. Toler's showing meets the first prong of the *Saucier* test: whether "[t]aken in the

7  light most favorable to the party asserting the injury . . . the facts alleged show the [defendants]

8  conduct violated a constitutional right."[51]  So too, his presentation satisfies the second: "whether

9  the right was clearly established . . . in light of the specific context of the case," such that "it

10 would be clear to [the defendant] that his conduct was unlawful in the situation he confronted."[52]

11     Defendants cannot credibly argue that retaliation against a citizen for exercising their First

12 Amendment rights is not a clearly established constitutional violation.[53]  In *Carepartners v.*

13 *Lashway*, The Ninth Circuit recently affirmed that state action designed to chill political

14 constitutionally-protected expression is a well-established constitutional violation.  The Court

15 denied qualified immunity for federal employees for retaliating against licensed boarding home

16 operators for engaging in constitutionally protected speech.[54]

17     Assuming Plaintiff's allegations to be true – that he did not threaten to bring an uzi into

18 the Courthouse or make any other threat of violence – then, Defendant Garza's declaration,

19 submitted on behalf of Paulson and Byerley (both parties to the petition), was false, and

---

[49] *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) (same).

[50] *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002) (quoting *Deorle v. Rutherford,* 272 F. 3d 1272, 1274-75 (9th Cir. 2001).  Other circuits follow the same rule.  *See Holmes v. Kucynda*, 321 F.3d 1069, 1077-78 (11th Cir. 2003); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002); *Suboh v. District Attorney's Office*, 298 F.3d 81, 94 (1st Cir. 2002); *Turner v. Arkansas Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002).

[51] *Id.* at 201.

[52] *Id.* at 201-02.

[53] *Sorrano's Gasco, Inc., v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)("It is clear that action designed to retaliate against and chill political expression strikes at the heart of the First Amendment.")

[54] *Carepartners LLC v. Lashway*, ---F.3d ---, 2008 WL 43552597 (9th Cir.) at *10-11.

amounted to a pretextual to retaliate against Mr. Toler for criticizing the District Attorney and the Office of the District Attorney.

As an initial matter, submitting a false declaration to a court of law is perjury, a clearly established violation of law – and one that both Paulson and Byerley tacitly authorized when they added their names to the petition. Quoting *Deveraux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) Court previously addressed this issue in its March 14 Order: "[T]here is a clearly established Constitutional Due Process right to not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the Government."

Moreover, Mr. Toler believes that Al Garza is not an expert in threat assessment or workplace violence, and despite Plaintiff's efforts to conduct discovery into this matter (by issuing Requests for Admissions, Interrogatories, and Requests for Documents on June 15, 2008), the Defendants continue to willfully disobey clearly established rules of discovery by failing to respond, at all, to those requests issued to all three Defendants.[55]

Next Plaintiff's allegations of conspiracy to engage in retaliation against Mr. Toler for exercising his First Amendment rights is sufficiently documented to deny qualified immunity to both Paulson and Byerley.  Again, it is clear that Paulson, along with his investigators, including Byerley, were in communication and agreed to prepare unnecessary reports (five days after Toler's visit) in response to Mr. Toler's published article, and not based on any violent threat. Plaintiff is not required to prove these allegations through direct evidence, circumstantial evidence will suffice.[56]

Defendants' invocation of immunity should be rejected.

---

[55] It is Plaintiff's position that those requests for Admission should be deemed admitted under Fed. R. Civ. P. 36(3)(a), including a request that Mr. Garza admit that he is not an expert in workplace violence. See supra, at VIII.

[56] *Mendocino*, 192 F.3d at 1301.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.    DAVID PAULSON HAD FINAL DECISION-MAKING AUTHORITY TO PURSUE THE TRO AND DID SO.  THUS, PLAINTIFF'S MONELL CLAIM SHOULD REMAIN**

It is indisputable that District Attorney Paulson is the chief-policy making official in the inside the Office of the District Attorney, and that he has a supervisory role over all the employees who work in his office, including the investigators who work directly under him.

In this case, it is clear that Mr. Paulson maintained communication with those employees who were interacted with Mr. Toler, and that was aware of Mr. Toler's published articles, and that he took a personal in interest responding to Mr. Toler's criticism.

As the chief-policy making official in the District Attorney's Office Mr. Paulson is ultimately responsible for pursuing a TRO on behalf of himself and his employees and has final decision-making authority to refer the alleged threat to County Counsel.  It is also clear that any subordinate officials, including investigators, do not have the authority to pursue TRO's on behalf of the office, or on behalf of other individual office employees.  As such, Mr. Paulson, in pursuing the TRO on behalf of himself, as well as Defendants Garza and Byerley, was setting office policy, and possessed the final decision-making authority to do so.  Given Mr. Paulson's policy-making status in the Office, Mr. Toler's *Monell* claims should remain.

**VIII.   DEFENDANTS ARE YET TO ISSUE RESPONSES TO A SIGNIFICANT MAJORITY OF PLAINTIFF'S DISCOVERY REQUESTS. DEFENDANTS FAILURE TO COMPLY WITH THE RULES OF DISCOVERY HAS DEPRIVED PLANTIFF OF POTENTIALLY CRUCIAL DOCUMENTS AND INFORMATION NEEDED TO PROPERLY RESPOND TO DEFENDANTS' MOTION. UNDER FED. R. CIV. P. 37(2)(A) AND 32(c)(1) THE COURT SHOULD ISSUE APPROPRIATE SANCTIONS**

On June 15, 2008 Mr. Toler ("Mr. Toler" or "Plaintiff") issued timely discovery requests to all of the Defendants' in this matter.  Responses to those requests were due, by stipulation of Mr. Toler, on August 28 2008. The issued discovery included Requests for Production of Documents to all defendants, Interrogatories to each non-entity defendant, and Requests for Admissions to each non-entity defendant.  To date Defendants have served responses only to Plaintiff's

Interrogatories and Requests for Admissions to Defendant Paulson, which amounts to responses to only 2 of 10 of Plaintiff's properly issued discovery requests.  The outstanding discovery responses request basic information and documents from the defendants that goes to the heart of the matter at issue: Whether the Defendants conspired to chill Mr. Toler's First Amendment rights?  The discovery requests to which Plaintiff has yet to receive responses appear below[57]:

1. Request for Production of Documents to Al Garza, Set One
2. Request for Production of Documents to Brook Byerley, Set One
3. Request for Production of Documents to David Paulson, Set One
4. Request for Production of Documents to County of Solano, Set One
5. Interrogatories to Al Garza, Set One
6. Interrogatories to Brook Byerley, Set One
7. Request for Admissions to Al Garza
8. Request for Admissions to Brook Byerley

Mr. Toler's leniency with the Defendants' non-compliance (which at the time of the hearing will be over two months) has been substantial.  However, given Defendants' present Motion, Mr. Toler's patience is at an end.  All attempts to meet and confer with Defendant's on this issue were ignored.  On September 19, 2008, at the deposition of Defendant Paulson, Mr. Toler's counsel attempted to meet and confer (on the record) regarding Defendants' missing responses.[58]  Defendant's counsel assured Mr. Toler that responses were forthcoming.  They were not.  Again on October 1, 2008 (the date Defendants filed their present Motion), Plaintiffs' counsel wrote to Defendants counsel, inquiring about the status of any discovery responses, and requesting those responses immediately.[59]  To date, Defendants offer no response

Additionally, Defendants remain non-responsive to Mr. Toler's request for dates to conduct the deposition of Defendant Al Garza, a central player in the issuance of the temporary restraining order on Mr. Toler.[60]

---

[57] *See* Declaration of Matt Springman, Ex. G [Plaintiff's Discovery Requests].

[58] *See* Declaration of Matt Springman, Ex. H. [Excerpt from Deposition Transcript of Paulson].

[59] *See* Declaration of Matt Springman, Ex. I. [October 1, 2008 Letter from Plaintiff to Defendant].

[60] *Id.*

1    Defendants' unjustified and willful noncompliance with the basic rules of discovery severely
2 prejudices Mr. Toler's ability to respond to Defendants' Motion.  Mr. Toler's discovery requests
3 are basic and fundamental to his underlying claims.  Without this basic information, Mr. Toler
4 cannot adequately respond to Defendants' Motion.  For instance, Plaintiff's discovery requests,
5 among many other things, seek fundamental information and documents related to
6 communications between defendants(specifically communications among Defendants that were
7 related to Plaintiff), statements allegedly made by Mr. Toler, any training in workplace violence
8 completed by Defendants, and policies and procedures related to handling workplace violence.[61]
9    Under Fed. R. Civ. P. 37(d), a Court, after finding that "a party, after being properly served
10 with interrogatories under Rule 33 or a request for inspection under Rule 34 fail[ed] to serve its
11 answers, objections, or written responses" may impose may impose any sanctions listed under
12 Rule 37(b)(2)(A)(ii) – which include prohibiting a non-compliant party from offering evidence in
13 support of their defenses – or any sanction the court believes is just.[62]  It is not necessary for the
14 party to have violated a discovery order before the Court can oppose sanctions under 37(d)(3).[63]
15 And the burden of showing substantial justification or special circumstances is on the non-
16 compliant party.[64]
17    In this case, Defendants' request that the Court sanction Defendants by not permitting them
18 to offer evidence in support of their defenses, or impose any other sanctions the Court believes
19 appropriate.[65]

---

[61] *See* Declaration of Matt Springman, Ex. J [Plaintiff's Discovery Requests].

[62] *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1339, 1343 (Holding that sanctions may be imposed even for negligent failures to provide discovery).

[63] *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1031 (5th Cir. 1990)

[64] Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).

[65] *Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 932 (1st Cir, 1991); *Carrol v. Acme Cleveland Corp.*, 955 F.2d 1107, 1115-16 (7th Cir. 1992);

### A.  Requests For Admissions Issued to Defendants Garza and Byerley Should be Deemed Admitted under Fed. R. Civ. P. 36(3)(a)

Under Fed. R. Civ. P. 36(3) failure to timely admit or deny properly issued Requests for Admissions results in those requests being deemed admitted.  Here Defendants failed to respond to Requests for Admission to Defendants Garza and Byerley.  Those requests should be deemed admitted under Fed. R. Civ. P. 36(3).

## IX.  CONCLUSION

Plaintiff respectfully asks this Court to deny Defendants' Motion for Summary Judgment in its entirety, and apply appropriate sanctions for Defendants' failure to respond, at all, to a significant majority of Plaintiffs' Discovery Requests.

DATED:  October 20, 2008                GONZALEZ & LEIGH, LLP


By: */s/ Matt Springman*
    MATT SPRINGMAN
    Attorney for Plaintiff
    JOEL THOMAS TOLE