1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   JOEL THOMAS TOLER,
                                         NO. CIV. S-06-735 LKK/DAD
12          Plaintiff,

13      v.                                    O R D E R

14   DAVID PAULSON; COUNTY OF SOLANO;
     AL GARZA; and BROOK BYERLEY,
15
            Defendants.
16   _____/

17       Plaintiff Joel Thomas Toler has brought this action against

18   defendants David Paulson, the District Attorney for the County of

19   Solano, Al Garza, the Chief Investigator for the District

20   Attorney's office, Brook Byerley, the Supervising Investigator for

21   the District Attorney's Office, and the County of Solano. Plaintiff

22   alleges that defendants retaliated against him in violation of his

23   First Amendment rights after he took out a paid advertisement in

24   a local newspaper criticizing the District Attorney's office. The

25   allegedly retaliatory conduct pertains to a temporary restraining

26   order that was sought and obtained against plaintiff, and the

                                    1

1  prosecution of an alleged violation of that order. Pending before

2  the court is defendants' motion for summary judgment. The court

3  resolves the matter on the parties' papers and after oral argument.

4  For the reasons explained below, the motion is granted in part and

5  denied in part.

6  **I. BACKGROUND AND FACTS**[1]

7  **A.    Facts**

8      On March 27, 2005, Plaintiff reported to the Fairfield police

9  that Mr. Richard Oawster made threats of physical violence against

10  Plaintiff's children. Defendants' Statement of Undisputed Facts

11  ("SUF") ¶ 1. Plaintiff was familiar with Mr. Oawster from his prior

12  private investigative work and knew Oawster to have a violent

13  criminal history. Declaration of Matt Springman in Support of

14  Plaintiff's Opposition to Defendants' Motion for Summary Judgment

15  ("Springman Decl.") Ex. A at 37:4-40:13 (Excerpts from the Depo.

16  of Tom Toler ("Toler Depo.")).  Plaintiff testified that Richard

17  Oawster threatened to kill his children, saying "[y]ou've caused

18  me to lose my kids. You're going to lose your kids. That bitch and

19  bastard son of yours is dead." Id. at 31:21-34:4.

20      On April 7, 2005, Plaintiff went to the Solano County District

21  Attorney's Office to inquire what action was being taken on the

22

23

24  ───────────────

25  [1] There are several evidentiary matters relevant to the facts
    tendered to the court. The court disposes of these in section I.C,

26  *infra*.

1   report regarding threats made against his children.[2] SUF ¶ 2.

2   Plaintiff discovered, through his discussion with Mr. Brook

3   Byerley, that the DA's Office had not received the Fairfield police

4   report. SUF ¶ 3.

5       Plaintiff inquired about the status of the investigation and

6   when no information was forthcoming asked Linda Jones, the

7   receptionist, to speak with a supervisor. SUF ¶ 6. Ms. Jones

8   described the Plaintiff's body language as "threatening" and noted

9   that he was loud and angry. Declaration of John R. Whitefleet in

10  Support of Defendants' Motion for Summary Judgment ("Whitefleet

11  Decl.") Ex. B at 7:13-14, 8:13-18, 11:10-16, 12:12-13:5 (excerpt

12  from Jones Depo.). Additionally, Ms. Jones stated that she couldn't

13  recall anyone else causing a disturbance similar to the disturbance

14  caused by plaintiff. Id. Plaintiff counters this with evidence that

15  Ms. Jones never heard Plaintiff make any specific threats or

16  threaten anyone at the DA's office.  Springman Decl. Ex. K at 9:5-

17  6, 12:9-11 (excerpt from the Jones Depo.). Additionally, Ms. Jones

18  could not recall any other occasions when Plaintiff caused a

19  disturbance at the DA's office. Id. at 10:21-12:2.

20      During that visit, Ms. Jones called both Marsha Johnson, the

21  Clerical Operations Manager for the DA's Office, and Warren Butler,

22

23      [2] Both parties agree that Plaintiff went to the DA's Office
    on April 7, 2005. However, plaintiff has presented evidence that
24  he first went there on either March 28 or March 29, 2005, at which
    time Plaintiff discovered that the DA's Office had not received the
25  Fairfield police report. Springman Decl., Ex. L (April 12th
    Memorandum prepared by Brook Byerley, documenting Mr. Toler's April
26  7, 2005 visit). These facts do not appear material to resolution
    of the motion.

the Senior Legal Procedures Clerk with the DA's Office, in response to Plaintiff's request to speak with a supervisor.   Whitefleet Decl. Ex. B at 7:8-17 (excerpt from the Jones Depo.); Ex. C at 12:9-15 (excerpt from Johnson Depo.). Ms. Johnson and Mr. Butler responded to Ms. Jones's request for a supervisor. SUF ¶¶ 9, 12. Ms. Johnson recalls that during her conversation with Plaintiff, Plaintiff stated "I guess I'll need to take matters into my own hands and I'll kill the person who's making threats against my children." Whitefleet Decl. Ex. C at 14:16-21, 27:24-27:2 (excerpt from Johnson Depo.). Ms. Johnson stated that Plaintiff was upset and his body language and tone made her feel uncomfortable, and threatened. SUF ¶ 11. Similarly, Mr. Butler described the Plaintiff as angry and upset. SUF ¶ 12. Plaintiff denies making the statement recalled by Ms. Johnson. Rather, plaintiff offers evidence that defendant Byerley recalled plaintiff saying "don't make me defend my kids." Springman Decl. Ex. L (April 12th Memorandum prepared by Brook Byerley, documenting Mr. Toler's April 7, 2005 visit).

Following Ms. Jones's first call to Ms. Johnson and Mr. Butler, Ms. Jones made a second call to defendant Byerley, the DA's Supervising Investigator, to come to the lobby to speak with plaintiff. Id. On the way to the lobby Defendant Byerley asked Mr. William Godwin, an investigator with the DA's Office, to accompany him. Id.; SUF ¶ 13. When they reached the lobby, Mr. Godwin found plaintiff to be "visibly upset" with a red face and speaking at a high volume. SUF ¶ 14. However, Mr. Godwin was able to calm plaintiff down and listened to plaintiff's complaint.   Springman

1  Decl. Ex. C (April 12, 2005, Investigative Report prepared by Mr.

2  Godwin). Furthermore, Mr. Godwin and plaintiff had a productive

3  conversation regarding the investigation and they parted on a

4  friendly note.  Id., see also Id. at Ex. D at 13:3-5 (Excerpts from

5  the Godwin Depo.). Based on subsequent conversations, Mr. Godwin

6  characterized plaintiff's discussions regarding Richard Oawster,

7  Al Garza, and Brook Byerley as "vociferous, loud and heated" which

8  "at times bordered on the edge of violence." Whitefleet Decl. Ex.

9  E at 47:15-48:18 (excerpt of Godwin Depo.) However, plaintiff has

10  tendered evidence that Mr. Godwin never felt threatened or

11  intimidated by him.  Springman Decl. Ex. D at 15:3-13 (excerpts

12  from the Godwin Depo.).

13      On April 12, 2005, after approximately seven attempts to

14  secure a meeting with defendant Paulson, plaintiff paid to have an

15  article published in the Daily Republic, a local paper, criticizing

16  the DA's Office's failure to respond to plaintiff's inquiries. SUF

17  ¶ 16. Following the advertisement, plaintiff continued to attempt

18  to secure a meeting with defendant Paulson.  SUF ¶ 17. Plaintiff

19  has presented evidence which indicates that Defendant Paulson knew

20  of the April 12, 2005 article and discussed it with Ms. Johnson.

21  Springman Decl. Ex. B at 19:3-20:25 (excerpts from the Johnson

22  Depo.); see also id., Ex. E (April 14, 2005 email from Ms. Johnson

23  to Defendant Garza regarding the newspaper article). Furthermore,

24  there is evidence that in response to the April 12, 2005

25  advertisement, Mr. Goodwin was instructed, by either defendant

26  Paulson or defendant Garza, to prepare a report of Plaintiff's

1   April 7, 2005 visit to the DA's office. Id., Ex. D at 19:8-21:1

2   (Godwin Depo. (rough)); see also Id., Ex. C (April 12, 2005,

3   Investigative Report prepared by Mr. Godwin, entitled "Response to

4   Daily Republic Article by Tom Toler.").

5       Over the next several months, plaintiff continued to contact

6   the DA's Office, leaving "a dozen messages or so" with the DA's

7   office staff in an attempt to secure a meeting with Defendant

8   Paulson. SUF ¶ 4; Spring Decl. Ex. A at 56:8-25, 58:5-12, 60:16-

9   61:6, 64:4-67:1. He also visited the office a total of eighteen

10  times. SUF ¶ 5.

11      On June 8, 2005, plaintiff filed a small claims action against

12  Paulson. SUF ¶ 18. In the small claims action, plaintiff sought

13  damages in the amount of $26.75, for the gasoline expended in

14  driving to the DA's Office. SUF ¶ 19. Plaintiff has testified that

15  he filed the small claims action against Paulson in an attempt to

16  get the DA's attention. Whitefleet Decl. Ex. A at 64:8-21 (Excerpt

17  of Toler Depo.). Plaintiff's small claims action was unsuccessful

18  because most of plaintiff's visits to the DA's Office occurred when

19  plaintiff was already at the Solano County business center in

20  connection with his business, after which he would walk over to the

21  government center across the street. SUF ¶ 20.

22      On June 13, 2005, plaintiff visited the DA's Office and spoke

23  with defendant Garza. SUF ¶ 21. Garza has declared that during the

24  meeting plaintiff said "[e]very time I come see you, you send Brook

25  Byerley, and he patted me down and treated me like I had an Uzi

26  when I come up here, which maybe I should do." Request for Judicial

6

Notice, Ex. A (Declaration of Al Garza in Support of a Petition for TRO). Defendant Garza understood plaintiff's statement to be a threat. SUF ¶ 24.

On June 15, 2005, the County of Solano filed a Workplace Violence Petition ("WVP") and Temporary Restraining Order ("TRO") against the Plaintiff, offering Garza's declaration as support. SUF ¶ 25 (Request for Judicial Notice, Ex. B-C). It is plaintiff's position that defendant Garza lied in his declaration when he stated that plaintiff had made the statement to the effect that he should come to the DA's Office with an Uzi, and also when Garza described himself as an expert on workplace violence. In response to defendant Garza's assertion that he is an expert in workplace violence and threat assessment, plaintiff has tendered evidence that Mr. Garza admitted in his deposition that he was not an expert in either workplace violence or threat assessment. Springman Decl. Ex. F at 57:1-59:14 (excerpts from the deposition of Al Garza (rough)).

Regarding Mr. Garza's recollection of the meeting with Plaintiff, plaintiff has tendered evidence that he "made it real clear to [Garza] that [he] thought [Garza] was useless as a public servant; [Garza] was inexperienced as an investigator or any type of law enforcement officer; that [Garza] had forgotten that he works for the people and he wasn't some whore" for the District Attorney. Whitefleet Decl. Ex A at 87:8-88:5, 133:2-22, 140:19-141:24 (excerpt of Toler Depo.). With respect to the use of the term "Uzi," plaintiff has tendered evidence that he actually said

7

"Al, your performance is on the level of that of a meter maid. . . the only difference between you and the meter maid is that if you brought an Uzi in the courthouse, nobody would care.  If the meter maid brought it into the courthouse, you would throw him in jail." SUF ¶ 23. Furthermore, on or about June 15, 2005, Mr. Godwin received a voicemail from plaintiff, in which plaintiff stated, "you and Byerley couldn't get fired even if you came into this building with an Uzi." SUF ¶ 27.

Defendants have tendered evidence in the form of an expert report from Jared Zwickey, who is assertedly an expert on law enforcement matters. Declaration of Jared Zwickey In Support of Defendants' Motion for Summary Judgment ("Zwickey Decl.") Ex. A. He reviewed the depositions of Garza, Paulson, Johnson, Godwin, Jones and Butler and the exhibits thereto, including the declaration Garza offered in support of the TRO application. Id. Based on this, he concluded that "it was reasonable [for defendants] to petition the Superior Court . . . to seek injunctive relief against the plaintiff for possible workplace violence" and that a reasonable officer in Graza's position would have concluded that seeking the TRO was "reasonable and necessary." Id.

On June 15, 2005, Solano County Superior Court Commissioner Alberta Chew issued a TRO against plaintiff. SUF ¶ 26. Following the issuance of the WVP and TRO, plaintiff continued to run advertisements critical of the DA's Office. SUF ¶ 28. On April 6, 2006, plaintiff ran a second advertisement entitled "Elect Tom Toler for Solano District Attorney, if he was running." SUF ¶ 29.

1  In this advertisement, plaintiff accused the DA's Office of

2  misusing public funds regarding a program to recover stolen cars,

3  and requested an accounting for the funds. SUF ¶ 30.

4  **B.   Procedural History**

5      Plaintiff filed his complaint in this court in April 2006.

6  Pending at the time were criminal charges against plaintiff for

7  violation of the TRO and a trial on the Workplace Violence

8  Petition. For this reason, on July 27, 2006, the court stayed the

9  case. The stay was lifted on October 17, 2007. Defendants then

10  moved to dismiss. By order on March 14, 2008, the court denied the

11  motion in part and granted it in part.

12  **C.   Evidentiary Issues**

13      Each party has raised several evidentiary issues relevant to

14  disposition of the motion. First, defendants request the court take

15  judicial notice of court files relating to prior litigation,

16  including: (1) the Declaration of Al Garza in Support of

17  Application for Injunctive Relief Against Workplace Violence; (2)

18  the Workplace Violence Petition ("WVP") filed June 15, 2006; and

19  (3) the Temporary Restraining Order issued on June 15, 2006. The

20  temporary restraining order names plaintiff Toler as the defendant

21  and is for the benefit of David Paulson, Al Garza, and Brook

22  Byerly, all of whom are defendants in this case. Defendants have

23  provided copies of all three documents in support of their Motion

24  for Summary Judgment.

25      A court may take judicial notice of a fact not subject to

26  reasonable dispute, either because the fact is generally known

1   within the territorial jurisdiction of the trial court or because

2   the fact is capable of accurate and ready determination from

3   sources whose accuracy cannot reasonably questioned. Fed. R. Evid.

4   201(b). A court shall take judicial notice of a judicially

5   noticeable fact "if requested by a party and supplied with the

6   necessary information." Fed. R. Evid. 210(d).

7       Here, the Declaration of Al Garza, the Workplace Violence

8   Petition and the TRO are matters of public record. As such, the

9   court is able to accurately and readily determine their contents.

10  Defendants have complied with Federal Rule of Evidence 201(d) by

11  requesting judicial notice and supplying the court with a copy of

12  all three documents.

13      Second, plaintiff has objected to and moved to strike the

14  declaration of Jared Zwickey offered in support of defendants'

15  motion for summary judgment. Mr. Zwickey is offered as an expert

16  on law enforcement practices and has declared that based on review

17  of several items of evidence, including depositions of several

18  members of County of Solano staff, he has concluded that defendants

19  acted reasonably in seeking a Temporary Retraining Order and there

20  was sufficient reason for the TRO to issue. Plaintiff raises

21  several concerns about the basis of Mr. Zwickey's opinion. These

22  objections, however, appear to go to the weight that the opinion

23  is given, and not its admissibility. Accordingly, plaintiff's

24  motion is DENIED.

25      Third, defendant objects to the exhibits to plaintiff's

26  declaration of Matt Springman, as they are portions of depositions

10

that are not certified by the court reporter. Although evidence must be admissible in order to be considered at the summary judgment stage, the defect in the exhibits is plainly of the type that would be remedied at trial. Moreover, the Local Rules require that any party relying on a portion of a deposition lodge with the court the entire deposition. See Local Rule 5-133(j). The court anticipates that the plaintiff's failure to do so was an oversight that will be remedied expeditiously,[3] which will render moot defendants' objection.

Fourth, plaintiff raises defendants' failure to timely comply with four requests for production of documents, two interrogatories, and two requests for admissions. Plaintiff seeks discovery sanctions in the form of monetary sanctions, a prohibition on permitting defendants to offer evidence of these matters at trial, and/or deeming various facts admitted. These sanctions are permissible under Rule 37(c), although the court disfavors the latter two sanctions, as they preclude decision on the merits. Moreover, plaintiff did not move to compel production of this evidence and defendants have acknowledged their noncompliance and promise prompt compliance. Finally, given the disposition of the instant motion for summary judgment, evidence being precluded or deemed admitted is not necessary for resolution of the motion. For these reasons, the court declines to sanction

---

[3]The court presumes the same regarding defendants' comparable failure to lodge the depositions which were excerpted as exhibits to the Declaration of John Whitefleet filed on October 1, 2008.

1  defendants. Defendants shall provide plaintiff with the evidence

2  at issue within ten days of the date of this order and so certify,

3  or show cause as to why sanctions should not issue.

4      Finally, each party objects to various other pieces of

5  evidence offered in support of their respective memoranda. Some of

6  the evidence to which the parties object is irrelevant to the

7  court's analysis of the summary judgment motion. To the extent that

8  the evidence is relevant, the objections are OVERRULED.

9                          **II. STANDARD**

10     Summary judgment is appropriate when there exists no genuine

11  issue as to any material fact. Such circumstances entitle the

12  moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

13  <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970);

14  <u>Secor Ltd. v. Cetus Corp.</u>, 51 F.3d 848, 853 (9th Cir. 1995). Under

15  summary judgment practice, the moving party

16          always bears the initial responsibility of informing the
         district court of the basis for its motion, and
17          identifying those portions of "the pleadings,
         depositions, answers to interrogatories, and admissions
18          on file, together with the affidavits, if any," which it
         believes demonstrate the absence of a genuine issue of
19          material fact.

20  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed.

21  R. Civ. P. 56(c)).

22     If the moving party meets its initial responsibility, the

23  burden then shifts to the opposing party to establish the existence

24  of a genuine issue of material fact. <u>Matsushita Elec. Indus. Co.</u>

25  <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986); <u>see also</u> <u>First</u>

26  <u>Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89

1  (1968); <u>Secor Ltd.</u>, 51 F.3d at 853. In doing so, the opposing party

2  may not rely upon the denials of its pleadings, but must tender

3  evidence of specific facts in the form of affidavits and/or other

4  admissible materials in support of its contention that the dispute

5  exists.  Fed. R. Civ. P. 56(e); <u>see</u> <u>also</u> <u>First Nat'l Bank</u>, 391 U.S.

6  at 289. In evaluating the evidence, the court draws all reasonable

7  inferences from the facts before it in favor of the opposing party.

8  <u>Matsushita</u>, 475 U.S. at 587-88 (citing <u>United States v. Diebold,</u>

9  <u>Inc.</u>, 369 U.S. 654, 655 (1962) (<u>per</u> <u>curiam</u>)); <u>County of Tuolumme</u>

10  <u>v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001).

11  Nevertheless, it is the opposing party's obligation to produce a

12  factual predicate as a basis for such inferences. <u>See</u> <u>Richards v.</u>

13  <u>Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The

14  opposing party "must do more than simply show that there is some

15  metaphysical doubt as to the material facts . . . .  Where the

16  record taken as a whole could not lead a rational trier of fact to

17  find for the nonmoving party, there is no 'genuine issue for

18  trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

19  ### III. ANALYSIS

20      The plaintiff alleges two causes of action: liability of all

21  defendants for violation of his First and Fourteenth Amendment

22  rights under 42 U.S.C. § 1983 and liability of all defendants for

23  conspiracy to deprive him of a constitutional right under § 1983.[4]

24

25      [4]The court dismissed plaintiff's claims alleging violation of
    his Fourth Amendment rights and violation of 42 U.S.C. § 1985 in
26  its March 14, 2008 order.

13

1  Defendants move for summary judgment on both claims as to all
2  defendants. The court grants the motion in part and denies it in
3  part.

4  **A.   First Amendment Retaliation Under 42 U.S.C. § 1983**

5      In his first cause of action, plaintiff alleges that
6  defendants filed the Workplace Violence Petition against him as
7  retaliation for plaintiff's exercise of his First Amendment rights
8  in criticizing the DA's office. Defendants move for summary
9  judgment on the grounds that there is insufficient evidence by
10 which plaintiff can prove the elements of this cause of action and
11 that defendants Paulson and Byerly enjoy qualified immunity. The
12 court considers each argument in turn.

13     **1.   Validity of the Retaliation Claim**

14     "To sustain an action under § 1983, a plaintiff must show (1)
15 that the conduct complained of was committed by a person acting
16 under color of state law; and (2) that the conduct deprived the
17 plaintiff of a constitutional right." <u>Balistreri v. Pacifica Police</u>
18 <u>Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988).

19     To establish a First Amendment retaliation claim, a plaintiff
20 must prove that he was engaged in constitutionally protected
21 speech, that the defendant's actions "would have chilled or
22 silenced a person of ordinary firmness from future First Amendment
23 activities", and that the government would not have taken the
24 retaliatory action but for the purpose of silencing the plaintiff's
25 speech. <u>Mendocino Environmental Center v. Mendocino County</u>, 192
26 F.3d 1283, 1300 (9th Cir. 1999); <u>Hartman v. Moore</u>, 547 U.S. 250,

260 (2006). Defendants do not dispute that plaintiff was engaged in constitutionally protected speech when he placed advertisements in local newspapers or at any other time. Additionally, defendants' do not dispute that their actions, seeking the Workplace Violence Petition and TRO, would "chill[] or silence[] a person of ordinary firmness from future First Amendment activities." <u>See</u> Mot. for Summ. J. at 6-10 Rather, defendants contend that there is insufficient evidence that they took the relevant actions against plaintiff for the purpose of silencing his speech. Defendants rely on three arguments: (1) they had probable cause to seek the issuance of the WVP and TRO under California law; (2) there is no evidence that defendants' intended to violate Plaintiff's First Amendment rights; and (3) defendants' would have taken the same action regardless of Plaintiff's critical advertisements. None is persuasive.

> ### a.  Issuance of the TRO Pursuant to Cal. Code Civ. Proc. § 527.8

Defendants first contend that the evidence establishes as a matter of law that they had probable cause for a TRO to issue under California Code of Civil Procedure § 527.8.[5] Section 527.8(a)

---

[5]Defendants argue that <u>Robinzine v. Victory</u>, 143 Cal. App. 4th 1416, 1423 (2006) supports their position because in that case the court held that "workplace violence petitions...under California Code of Civil Procedure section 527.8 may not provide a basis for retaliation and/or malicious prosecution actions." Mot. for Summ. J. at 7. Even if that were an accurate characterization of the case, which it is not, it has no relevance to this case. The <u>Robinzine</u> court was confronted with a malicious prosecution action brought under state law. 143 Cal. App. 4th at 1422. The court made no holding related to a retaliation claim, let alone a retaliation

1 provides:

2          Any employer, whose employee has suffered unlawful
           violence or a credible threat of violence from any
3          individual, that can reasonably be construed to be
           carried out or to have been carried out at the
4          workplace, may seek a temporary restraining order and an
           injunction on behalf of the employee and, at the
5          discretion of the court, any number of other employees
           at the workplace, and, if appropriate, other employees
6          at other workplaces of the employer.

7 An employer includes federal, state, city, county, and district

8 agencies. Cal. Code Civ. Proc. § 527.8(d). "Credible threat of

9 violence" is defined as "a knowing and willful state or course of

10 conduct that would place a reasonable person in fear for his or her

11 safety, or the safety of his or her immediate family, and that

12 serves no legitimate purpose." Id. § 527.8(b)(2). A "course of

13 conduct" is defined as "a pattern of conduct composed of a series

14 of acts over a period of time, however short, evidencing a

15 continuity of purpose, including following or stalking an employee

16 to or from the place of work; entering the workplace, following an

17 employee during hours of employment, making telephone calls to an

18 employee; or sending correspondence to an employee by any means."

19 Id. § 527.8(b)(3).

20      Unlike § 527.6, which provides for TROs to protect persons

21 from harassment, section 527.8 does not encompass protection

22 against harassment. See City of Los Angeles v. Animal Def. League,

23 135 Cal. App. 4th 606, 615 (2006)("[§ 527.8] limits the acts that

24 may be sought to be enjoined by an employer to unlawful violence

25 ─────────────────────

claim under § 1983.

26

16

1  or a credible threat of violence. [An individual could still pursue

2  an injunction for harassment under Section 527.6]," quoting the

3  Sen. Com. on Judiciary, Analysis of Assem. Bill No. 68 (1993-1994

4  1st Ex. Sess.)).

5      The defendants' attempt to analogize this case to <u>Levin v.</u>

6  <u>United Air Lines, Inc.</u>, 158 Cal. App. 4th 1002 (2008) is

7  unpersuasive. There, the plaintiff had made a comment about having

8  a bomb in her luggage at the airport. <u>Levin</u>, 158 Cal. App. 4th at

9  1011. She was arrested for making a bomb threat although the

10  charges were later dropped. <u>Id.</u> She subsequently sued the airline

11  for, *inter alia*, false arrest. <u>Id.</u> at 1017. The court held that

12  plaintiff's sarcastic statements about having a bomb were

13  sufficient to give the officers probable cause to arrest her under

14  Penal Code § 148.1, which specifically criminalizes the false

15  reporting of bombs as a general intent crime. <u>Id.</u> at 1024-25. This

16  holding casts no light on the meaning of "credible threat of

17  violence" in the context of California Code of Civil Procedure §

18  527.8.

19      In the instant case, the issue is one of fact to be resolved

20  at trial.   Nevertheless, cases in which the court has issued a

21  workplace violence protection order under § 527.8 for either

22  unlawful violence or a credible threat of violence are informative.

23      In <u>City of Los Angeles v. Glair</u>, 153 Cal. App. 4th 813 (2007),

24  the lower court issued a preliminary injunction sought by the City

25  of Los Angeles against the defendant after he began questioning the

26  park's administrative assistants several times a day as to whether

17

1  the director was in her office at the park. When he was told she

2  was not there, he would become angry, to the point of hostility,

3  and inquire as to her whereabouts and when she would return. City

4  of Los Angeles, 153 Cal. App. 4th at 816-17. When he was told she

5  was there, he would leave without speaking to her. Id. At one point

6  defendant confronted the female director telling her she was a

7  "terrible director," "your community and staff hate you" and "I've

8  been watching... I know what you're doing." Id. at 816. The

9  director testified that as his anger escalated, she became fearful

10  for her safety. Id. The court granted a preliminary injunction

11  against the defendant under § 527.8, concluding that the evidence

12  demonstrated he had become "obsessed with" the director. Id. at

13  817; see also Pacific Maritime Ass'n v. Mead, 246 F. Supp. 2d 1087,

14  1089 (N.D. Cal. 2003) (TRO issued under § 527.8 against defendant

15  after he attacked a coworker); Franklin v. The Monadnock Co., 151

16  Cal. App. 4th 252 (2007) (finding a credible threat of violence

17  under § 527.8 where defendant threatened to kill four people and

18  later threatened one with a screwdriver); USS-Posco Industries v.

19  Edwards, 111 Cal. App. 4th 436 (2003) (credible threat of violence

20  sufficient to issue a preliminary injunction under § 527.8, where

21  defendant had made several separate statements to the effect that

22  he intended to shoot people at his place of employment).

23       Here, the defendants appear to argue that there was, as a

24  matter of law, probable cause for the TRO to issue against the

25  plaintiff and therefore that his retaliation claim must fail. They

26  rely on the evidence that plaintiff visited and called the DA's

1  office several times over the course of a few months and that he
2  knowingly filed a false small claims action to "get Defendant
3  Paulson's attention." Whitefleet Decl. Ex. A at 64:8-10. They also
4  direct the court to the evidence that plaintiff's behavior was loud
5  and threatening on one occasion that he visited the DA's office.
6  SUF ¶¶ 7-12. Finally, they rely on the evidence that plaintiff
7  "made a comment to defendant Garza which referenced an Uzi -- an
8  automatic weapon." Mot. for Summ. J. at 7, citing SUF ¶¶ 22-23, 27.

9      This simply does not suffice to show that as a matter of law
10 there was probable cause for the issuance of the TRO against the
11 plaintiff.  The characterization of these events is essential to
12 such a determination. For instance, a jury could credit defendants'
13 characterization, which suggests that plaintiff repeatedly called
14 and visited the DA's office in a pattern of escalating obsession
15 similar to that of <u>City of Los Angeles v. Glair</u>. On the other hand,
16 a reasonable jury could also find that plaintiff's characterization
17 is more apt, that he was merely following up on a police report
18 that was filed and inquiring about the status of the case. <u>See</u>
19 Springman Decl. Ex. A at 56:8-25, 58:5-12, 60:16-61;6, 64:4-67:1.
20 Resolution of this issue is a quintessential credibility
21 determination best left to a jury.

22     The same is true of the characterization of plaintiff's visit
23 to the DA's office in which he has been described as "loud and
24 upset" and "angry and upset." <u>See</u> SUF ¶¶ 7, 12. Although
25 plaintiff's behavior was characterized by one witness as
26 threatening, <u>see</u> SUF ¶ 11, another witness testified that plaintiff

later calmed down and became friendly, and that the witness did not feel threatened. Springman Decl. Ex. D at 13:3-5, 15:3-13. Again, a jury must resolve the conflicting accounts of this event.

Finally, defendants' reliance on the fact that plaintiff "made a comment to defendant Garza which referenced an Uzi -- an automatic weapon," Mot. for Summ. J. at 7, glosses over the crux of plaintiff's allegations regarding this cause of action, which is that defendant Garza mischaracterized the nature of this Uzi comment in his declaration offered in support of the Workplace Violence Petition. Given that § 527.8 only provides for injunctive relief where there is a "credible threat of violence," Garza's declaration describing plaintiff's allegedly threatening statements are undoubtedly essential to the determination of whether there was probable cause to pursue the TRO. There is evidence that Garza's declaration in fact misrepresented plaintiff's more benign mention of an Uzi. See SUF ¶ 23; Plaintiff's response to SUF ¶ 24. Were a jury to credit plaintiff's description of events, the jury could reasonably find that there was no probable cause to seek or issue the injunction.

> **b.   Intent to Violate Plaintiff's First Amendment Rights**

Next, defendants argue that there is no evidence that they intended to violate plaintiff's First Amendment rights. The court disagrees.

Intent to inhibit speech can be demonstrated either through direct or circumstantial evidence. Mendocino Envtl. Ctr. v.

1  Mendocino County ("Mendocino II"), 192 F.3d 1283, 1300-1301 (9th

2  Cir. 1999); see also Magana v. Commonwealth of N. Mariana Islands,

3  107 F.3d 1436, 1448 (9th Cir. 1997) (circumstantial evidence of

4  intent is sufficient to survive summary judgment motion). In Hines

5  v. Gomez, 108 F.3d 265 (9th Cir. 1997), for example, there was

6  evidence that the plaintiff, who was an inmate, had a reputation

7  for "complaining" and "whining" and had utilized the prison

8  grievance system on many prior occasions. 108 F.3d at 268. One day,

9  the inmate threatened to file a grievance against a certain guard.

10 Id. Later that day, the guard wrote up the inmate for a

11 disciplinary violation, which the inmate claimed was falsified

12 because the guard wanted to deter his use of the grievance system.

13 Id. at 267-68. A jury agreed, finding that the disciplinary charge

14 had been false. Id. at 268. The Circuit court affirmed the trial

15 court's denial of the guard's motion for a new trial or for

16 judgment as a matter of law, holding that the circumstantial

17 evidence supported the jury's determination that the guard had

18 filed a false disciplinary report in retaliation for the

19 plaintiff's use of the grievance system. Id.

20     Here, there is similar circumstantial evidence that would

21 permit a reasonable jury to credit plaintiff's allegations. On

22 April 12, 2005, a local newspaper published an ad that plaintiff

23 had paid for, in which he criticized the DA's office. SUF ¶ 16.

24 There is evidence that defendant Paulson knew about the ad and was

25 concerned about it. Springman Decl. Ex. B at 19:3-20:25 (excerpts

26 from the Johnson Depo.). There is also evidence that defendants

1  Garza and Byerly were aware of the article. Id. Ex. E (April 14,

2  2005 email from Ms. Johnson to defendant Garza and copied to

3  defendant Bylerly, describing the plaintiff's April 7, 2005 visit

4  to the DA's office and titled "RE: Today's newspaper"); see also

5  Springman Decl. Ex. F at 27:7-9 (excerpts of Garza Depo.).

6  Furthermore, there is evidence that in response to the April 12,

7  2005 advertisement, Mr. Goodwin was instructed, by either defendant

8  Paulson or defendant Garza, to prepare a report of Plaintiff's

9  April 7, 2005 visit to the DA's office. Id. Ex. D at 19:8-21:1

10 (Godwin Depo. (rough)); see also Id. Ex. C (April 12, 2005,

11 Investigative Report prepared by Mr. Godwin, entitled "Response to

12 Daily Republic Article by Tom Toler."). In his memorandum, Mr.

13 Godwin described that on April 7, 2005, he and defendant Byerly had

14 conversed with the plaintiff at the DA's office about the

15 plaintiff's concerns. Id. Ex. C.

16      There is also evidence that on June 8, 2005, plaintiff filed

17 a small claims action against defendant Paulson and on June 13,

18 2005 plaintiff again went to the DA's office and spoke with

19 defendant Garza. SUF ¶¶ 18, 21. Two days later, the TRO was sought,

20 which included the declaration from defendant Garza regarding

21 plaintiff's threatening behavior. Request for Judicial Notice, Ex.

22 A-B.

23      A reasonable jury could conclude that this sequence of events

24 is sufficient circumstantial evidence that defendants filed the

25 Workplace Violence Petition with an intent to silence plaintiff's

26 speech. Based on the evidence tendered, a jury could reasonably

find that, like the defendant in <u>Hines</u>, the defendants here thought of plaintiff as a "complainer" and were specifically aggravated when plaintiff directed those complaints against their office in the public fora of the newspaper and the small claims court. This is particularly true given the court's determination that, as in <u>Hines</u>, a jury could reasonably find that the application for a TRO was based on a false report of plaintiff's threat. This suffices to defeat defendants' motion for summary judgment.

### c. Evidence that Defendants Would Have Taken Same Action Even in the Absence of the Protected Conduct

Finally, defendants assert that summary judgment is proper because there is evidence that they would have taken the same action absent the plaintiff's speech. They rely on the report of Jared Zwickey in support of this argument.

Preliminarily, the Zwickey report at best is only some evidence, but far from conclusive evidence, that defendants were reasonable in seeking the TRO.[6] The report makes clear that Mr. Zwickey only relied on defendants' evidence that plaintiff had acted agressively at the DA's office. <u>See</u> Zwickey Decl. Ex. A. However, as detailed above, plaintiff has tendered counter-evidence that calls into question the accuracy of this characterization.[7]

---

[6] The court makes no determination as to whether Zwickey will be permitted to testify at trial.

[7] Additionally, as plaintiff indicates in his objections to Mr. Zwickey's testimony, a jury may conclude that Mr. Zwickey's opinion is entitled to less weight for other reasons, including, for example, whether or not he possesses special expertise in workplace violence petitions.

1    Defendants cite to Keyser v. Sacramento City Unified Sch.

2    Dist., 265 F.3d 741 (9th Cir. 2001), for the proposition that "a

3    defendant can escape liability by showing that it would have taken

4    the same action even in the absence of the protected conduct." Mot.

5    for Summ. J. at 9-10. Reliance on that case is inappropriate.

6    Keyser dealt with a claim by public employees that their City

7    School District employer violated their First Amendment rights. Id.

8    at 745-46. The Ninth Circuit's rule for proving a § 1983

9    retaliation claim in the employment context is distinct from that

10   which is relevant here, where there is not an employment

11   relationship. Compare Alpha Energy Savers, Inc. v. Hansen, 381 F.3d

12   917 (9th Cir. 2004) (setting out a burden-shifting test for a

13   retaliation claim in an employment context) with Mendocino Envtl.

14   Ctr. v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994) (using

15   the three-part test described *supra* for a retaliation claim in a

16   non-employment context). This accords with the Supreme Court's

17   employment/non-employment distinction for First Amendment cases.

18   As the Court explained in Bd. of County Comm'rs v. Umbehr, 518 U.S.

19   668, 676 (1996), it has"consistently given greater deference to

20   government predictions of harm used to justify restriction of

21   employee speech than to predictions of harm used to justify

22   restrictions on the speech of the public at large." The court

23   distinction is based on "the government's interest in achieving its

24   goals as effectively and efficiently as possible is elevated from

25   a relatively subordinate interest when it acts as sovereign to a

26   significant one when it acts as employer." Id. (citations omitted).

24

1    Accordingly, defendants' assertion that they would have sought

2  the Workplace Violence Petition regardless of plaintiff's

3  participation in protected speech activity only raises a question

4  of fact - it does not resolve it.

5    **2.  Qualified Immunity**

6    Defendants Paulson and Byerly contend that they are entitled

7  to qualified immunity on plaintiff's first cause of action to the

8  extent that claim is based on alleged violations of plaintiff's

9  First Amendment rights. Defendants' argument is based on their

10  assertion that there is no evidence that Paulson and Byerly

11  violated plaintiff's rights. The assertion completely

12  misunderstands qualified immunity. The defendants' claim, if true,

13  is a defense on the merits.

14    The doctrine of qualified immunity provides that a government

15  official is immune from § 1983 liability for discretionary

16  functions, so long as the official's conduct "does not violate

17  clearly established statutory or constitutional rights of which a

18  reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S.

19  800, 818 (1982). Here the parties appear not to dispute that

20  defendants Paulson and Byerly were engaging in discretionary

21  functions.

22    The determination of whether or not a state official enjoys

23  qualified immunity proceeds in two parts. First, the court must

24  determine whether the facts show that the official's conduct

25  violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201

26  (2001). If so, the court undertakes the second step of the

analysis, which is whether the constitutional right was "clearly established" at the time of the violation. Id. A right is clearly established if a reasonable official would have understood that his actions violated that right. Id. at 202. The plaintiff bears the burden to show that the law regarding the Constitutional violation was settled at the time of the violation. Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994). This showing shifts the burden to the defendants to show that a reasonable official could have believed, in light of settled law, that his conduct did not violate the law. Id.

Here, there is circumstantial evidence from which a reasonable jury could conclude that Paulson and Bylerly violated plaintiff's First Amendment rights, although neither Paulson or Bylerly submitted declarations in support of the Workplace Violation Petition, it was sought by the County on their behalf. It requires, therefore, no great leap of logic for a reasonable jury to infer that Paulson and Bylerly knew that the petition was filed to purportedly protect them and that they at least permitted this to occur. See Matsushita, 475 U.S. at 587-88 (the court draws all reasonable inferences in favor of the non-moving party). Given that the jury could also conclude, as discussed supra, that plaintiff did not present a credible threat of violence but that defendants filed the Workplace Violence Petition with an intent to silence his speech, there is sufficient evidence from which a jury could conclude that defendants violated plaintiff's Constitutional rights. See Saucier, 533 U.S. at 201.

As the court explained in its March 14, 2008 order, which defendants apparently do not dispute, the rights that plaintiff alleges were violated were clearly established at the time of the injury:

> In <u>Deveraux v. Abbey</u>, 263 F.3d 1070, 1074-75 (9th Cir. 2001), the Ninth Circuit addressed whether "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." The court found that there was such a right, noting that "[p]erhaps because the proposition is virtually self-evident, we are not aware of any prior cases that have expressly recognized this specific right, but that does not mean that there is no such right." <u>Id.</u> at 1075. Similarly, here, in light of <u>Deveraux</u>, the court finds that there was a clearly established right not to be subjected to civil proceedings based upon allegedly government-fabricated evidence. <u>Id.</u> ("'Precedent directly on point is not necessary to demonstrate that a right is clearly established. Rather, if the unlawfulness is apparent in light of preexisting law, then the standard is met. In addition, even if there is no closely analogous case law, a right can be clearly established on the basis of common sense.").

Order, March 14, 2008, at 12-13. Accordingly, defendants' motion for summary judgment on the grounds of qualified immunity is denied.

**B.   Violation of the Fourteenth Amendment Under 42 U.S.C. § 1983**

Plaintiff appears to allege that defendants have violated his right to due process by depriving him of his right to free speech. However, an infringement of the right to free speech cannot provide the basis for a violation of due process.  The Supreme Court has held that "where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more

27

1  generalized notion of substantive due process,' must be the guide

2  for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273

3  (1994) (Rehnquist, C.J., for plurality) (quoting Graham v. Connor,

4  490 U.S. 386, 395 (1989)). Since the First Amendment provides

5  explicit protection for the right to free speech, which plaintiff

6  claims has been chilled, plaintiff may not additionally base a due

7  process claim on a violation of his right to free speech. Plaintiff

8  does not oppose this aspect of defendants' motion.

9       Accordingly, defendants' motion is granted to the extent that

10 plaintiff's first cause of action alleges violations of his due

11 process rights.

12 **C.   Claim for Conspiracy Under 42 U.S.C. § 1983**

13      Defendants argue that there is insufficient evidence from

14 which a jury could find in plaintiff's favor on his second cause

15 of action, for conspiracy to deprive him of his First Amendment

16 rights. The court disagrees.

17      To prove a conspiracy under § 1983, a plaintiff must show that

18 the defendants "by some concerted action, intend[ed] to accomplish

19 some unlawful objective for the purpose of harming another which

20 results in damage." Gilbrook v. City of Westminster, 177 F.3d 839,

21 856 (9th Cir.1999) (quoting Vieux v. East Bay Reg'l Park Dist., 906

22 F.2d 1330, 1343 (9th Cir.1990)). There must be evidence of an

23 agreement or "meeting of the minds" in order for defendants to be

24 liable for conspiracy. United Steelworkers of Am. v. Phelps Dodge

25 Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc). Evidence

26 of an agreement may be circumstantial. Mendocino II, 192 F.3d at

1301. It may include, for example, that the defendants took actions which they otherwise would not have, absent an agreement. Id. (citing Kunik v. Racine County, 946 F.2d 1574, 1580 (7th Cir. 1991). "Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached a understanding to achieve the conspiracy's objectives." Id. (citing Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979).

As described in section III.A, *supra*, there is evidence that the defendants communicated with one another about the April 12, 2005 article and that the defendants related the article to plaintiff's behavior on his April 7, 2005 visit to the DA's office. See Springman Decl. Ex. B at 19:3-20:25 (excerpts from the Johnson Depo.); Ex. D at 19:8-21:1 (Godwin Depo. (rough)); Ex. E (April 14, 2005 email from Ms. Johnson to defendant Garza and copied to defendant Bylerly, describing the plaintiff's April 7, 2005 visit to the DA's office and titled "RE: Today's newspaper"); Ex. F at 27:7-9 (excerpts of Garza Depo.). On June 8, 2005, plaintiff filed a small claims action against defendant Paulson and on June 13, 2005 plaintiff again went to the DA's office and spoke with defendant Garza. SUF ¶¶ 18, 21. Two days later, the TRO was sought, which included the declaration from defendant Garza regarding plaintiff's threatening behavior. Request for Judicial Notice, Ex. A-B. This sequence of events raises the reasonable inference that

1  defendants acted in concert to file, or permit to be filed on their
2  behalf, the Workplace Violence Petition, not because defendants
3  believed plaintiff represented a credible threat of violence, but
4  because they sought to silence his public criticisms of the DA's
5  office or to stem his multiple calls and visits to the office.
6  Given that this is a factual determination resting largely on
7  credibility, summary judgment is improper. <u>Mendocino II</u>, 192 F.3d
8  at 1301.

9  **D.   Liability of the County**

10     Finally, the County of Solano moves for summary judgment on
11  the grounds that there is insufficient evidence to give rise to
12  <u>Monell</u> liability. The court grants this motion.

13     Municipal liability may be established in one of three ways.
14  <u>See</u> <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346 (9th Cir. 1992). A
15  plaintiff may prove that the actions in question were conducted
16  pursuant to an official custom, policy, or practice; that the
17  individual who committed the act was an official with final
18  policymaking authority; or that such an official ratified a
19  subordinate's unconstitutional act. <u>Id.</u>; <u>accord</u> <u>Weiner v. San Diego</u>
20  <u>County</u>, 210 F.3d 1025, 1028 (9th Cir. 2000).

21     Here, plaintiff alleges that defendant Paulson acted as an
22  official policymaker for the county. SAC ¶ 10; Pl.'s Opp'n to
23  Defs.' Mot. for Summ. J. at 16. Under this theory, liability will
24  only lie where the decisionmaker "possesses final authority to
25  establish municipal policy with respect to the action ordered."
26  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 480, 482 (1986)

(plurality). This policy-making authority is defined by legislative action or by an delegation of authority from the person in whom the legislature or similar body has vested such authority, to another. Id. at 483. Finally, there will only be liability "where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives." Id.

The plaintiff asserts that "it is indisputable that District Attorney Paulson is the chief-policy making official in the . . . Office of the District Attorney" and as such "is ultimately responsible for pursuing a TRO on behalf of himself and his employees and has final decision-making authority to refer the alleged threat to the County Counsel." Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 16. Although it might be self-evident that Paulson has final prosecutorial authority over the criminal cases handled by his office, it is not similarly evident that he would have the same authority in making a decision to file a Workplace Violence Petition or pursue a TRO on behalf of himself and his employees. The Workplace Violence Petition was signed by Wendy Gomez Getty, "Assistant County Counsel." Request for Judicial Notice, Ex. B. It may be the case that she was the one with the ultimate authority to decide whether to file the petition. Plaintiff, therefore, has not met his burden to show that the County is liable via defendant Paulson's authority as a policy-maker.

### IV. CONCLUSION

For the reasons stated herein, the court orders as follows:

1.   Defendants' motion for summary judgment (Doc. No. 53) is

31

1   GRANTED as to plaintiff's first cause of action to the

2   extent that it alleges violations of plaintiff's due

3   process rights.

4   2.   Defendants' motion for summary judgment is GRANTED as to

5   the County of Solano. The County is DISMISSED as a

6   defendant.

7   3.   Defendants' motion for summary judgment is DENIED in all

8   other respects.

9   4.   Defendants SHALL provide plaintiff with the evidence

10   identified in section I.C within ten days of the date of

11   this order and so certify, or show cause as to why

12   sanctions should not issue.

13   5.   Plaintiff's motion to strike the declaration of Jared

14   Zwickey (Doc. No. 60) is DENIED.

15   IT IS SO ORDERED.

16   DATED: November 6, 2008.

17

18

19   LAWRENCE K. KARLTON
    SENIOR JUDGE
20   UNITED STATES DISTRICT COURT

21

22

23

24

25

26

32