**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Terence J. Cassidy, SBN 099180
John R. Whitefleet, SBN 213301
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

ATTORNEYS for Defendants DAVID PAULSON, AL GARZA, and BROOK BYERLEY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL THOMAS TOLER,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLEY, and DOES 1 through 10, inclusive<br><br>    Defendants.<br>_____/ | Case No. CIV 06-0735 LKK DAD<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>TRIAL:   August 11, 2009<br>TIME:    10:30 a.m.<br>CTRM:    4 |

Defendants[1] DAVID PAULSON, AL GARZA, and BROOK BYERLEY, hereby submit the following Trial Brief.

## I.

## STATEMENT OF FACTS

On March 27, 2005, Plaintiff made a report of threats to his children to the Fairfield police. Starting in April 2005, Plaintiff claims to have gone to the office of the District Attorney numerous times in order to gain an audience with the District Attorney.

On April 7, 2005, Plaintiff appeared in the lobby to the office of the District Attorney, but the Fairfield report had not yet arrived or transferred. Plaintiff was loud, angry, and using

---

[1] Defendant COUNTY OF SOLANO was dismissed.

1
00678251.WPD         **DEFENDANTS' TRIAL BRIEF**

threatening body language, requiring the desk clerk Linda Jones to seek the assistance of Ms. Marsha Johnson, Clerical Operations Manager with the office of the District Attorney. Ms. Johnson believed Plaintiff was upset, and his body language and tone of voice was making her feel uncomfortable, and threatened. At some point, Plaintiff said that he would "have to kill the person who's making threats against my children." Warren Butler, Senior Procedures Clerk with the office of the District Attorney, observed the conversation between Plaintiff and Ms. Johnson, and found Plaintiff angry and upset. District Attorney investigator Mr. William Godwin was summoned. Mr. Godwin met with Toler and agreed to follow up with Mr. Toler's report. Following the investigation by Mr. Godwin, Deputy District Attorney John Daugherty determined the alleged threats to his children were deemed not actionable.

Plaintiff paid to publish an advertisement purportedly critical of the District Attorney on April 12, 2005. On June 8, 2005, Plaintiff filed a small claims action against Defendant PAULSON, seeking $26.75, for the gasoline purportedly expended in driving to the office of the District Attorney. Plaintiff admitted, however, that for many of his visits to the office of the District Attorney, he was already at the Solano County business center in connection with his bail bonds business, and would simply walk over the to government center directly across the street

On June 13, 2005, Plaintiff again appeared in the lobby of the office of the District Attorney wanting to make an appointment with Defendant PAULSON. Chief Investigator Al Garza met with Plaintiff. Plaintiff "made it real clear" that he thought GARZA was "useless as a public servant" and "had forgotten that he works for the people and wasn't some 'whore' for the District Attorney." Plaintiff stared at Garza in a hostile manner and stated, "Every time I have come to see you, you send Brook Byerely and he patted me down and treated me like I had an Uzi when I come up here, *which maybe I should do*."

Believing Plaintiff's conduct to be a credible threat of violence, the County of Solano immediately obtained a temporary restraining order in connection with a Workplace Violence Petition pursuant to California Civil Procedure section 527.8, on June 15, 2005. The restrictions in the TRO were subsequently modified by court order several times.

2

00678251.WPD                    **DEFENDANTS' TRIAL BRIEF**

Following the issuance of the TRO, Plaintiff continued to pay for advertisements critical of the office of the District Attorney. A subsequent search warrant obtained and executed by Solano County Deputy Sgt Brad DeWall found numerous firearms, including an automatic "Mac-10" weapon on the property of Plaintiff.

The TRO was ultimately resolved in an out-of-court Settlement, the terms of which included that Plaintiff would bear all attorney fees incurred in connection with the defense of the TRO.

## II.

## ADMISSIONS/STIPULATIONS NOT RECITED IN THE PRETRIAL ORDER

Defendants are not aware of any further admissions or stipulations not otherwise recited in the PreTrial Conference Order[Final] dated February 19, 2009. Defendants' Motions in Limine regarding anticipated evidentiary issues have been separately filed.

## III.

## SUMMARY OF LAW

**A.   First Amendment Retaliation**

In order to demonstrate a First Amendment retaliation claim, a plaintiff must provide evidence showing that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994)). In that regard, a plaintiff must demonstrate that defendants "intended to interfere with [plaintiffs'] First Amendment rights." Mendocino Environmental Center v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994)  In addition to evidence that the defendant knew of the protected speech, Plaintiff must establish (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech, or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual. See Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751-52 (9th Cir. 2001).

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

00678251.WPD

3

**DEFENDANTS' TRIAL BRIEF**

A plaintiff must also demonstrate the lack of probable cause to initiate the adverse proceedings against him.[2] See e.g. Hartman v. Moore, 547 U.S. 250 (2006) (reversing the denial of qualified immunity to investigators on First Amendment retaliation claim where plaintiff criticized certain business decisions advocated by the Postal Service); See also Moore v. Hartman, 241 F.R.D. 59, 64 (D.D.C. 2007) (describing the standard as establishing that a reasonable and prudent man would not suspect that the plaintiff had committed the offense) citing Ornelas v. United States, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (rejecting a First Amendment retaliation claim where plaintiff was critical of officers' performance, and after the officers sought and obtained grand jury indictment leading to plaintiff's arrest, noting that the Hartman rule "sweeps broadly.") and Williams v. City of Carl Junction, 480 F.3d 871, 877 (8th Cir. 2007) (dismissing First Amendment retaliation claim against a city mayor arising from twenty-six traffic citations because plaintiff failed to establish even an arguable absence of probable cause.)

In that regard, Defendants submit that the probable cause by a magistrate is presumed accurate. See Franks v. Delaware, 438 U.S. 154, 171 (1978) (warrant presumed valid). A court reviewing the sufficiency of the affidavits must give the magistrate's determination "'great deference.'" United States v. Leon, 468 U.S. 897, 914 (1984). See also Illinois v. Gates, 462 U.S. 213, 237, n.10 (1983) (magistrate's probable cause determination need only have "substantial basis" for concluding probable cause exists). Thus, where probable cause existed, plaintiff is precluded from relitigating the matter, and/or is collaterally estopped to argue probable cause did not exist. See, e.g., Peet v. City of Detroit, 502 F.3d 557, 566 (6th Cir. Mich. 2007). Here, Plaintiff claims the declaration of Al Garza contained a false statement about his qualifying as an expert. In accordance with the above authorities, Plaintiff must establish that the magistrate would not have found probable cause to issue the

---

[2] This Court has already noted that "[i]n order to prevail on his retaliation claim, plaintiff must show that these proceedings were instituted illegitimately and that the TRO was issued without probable cause." (See Docket Entry No. 18; Order filed July 27, 2006 p. 10:12-14).

1  TRO absent this allegedly false statement about being an expert in order to overcome the
2  presumption of probable cause as determined by the issuing magistrate.

3      A person who has been stalked, threatened, or otherwise seriously harassed may
4  petition a court to enjoin such conduct. Cal. Code Civ. Proc. § 527.6; Grant v. Clampitt 56
5  Cal.App.4th 586, 591-592 (1997). The Workplace Violence Safety Act at issue here, section
6  527.8, "was enacted to allow employers to seek protections comparable to those offered
7  under section 527.6 to enjoin workplace threats or acts of violence against employees."
8  Robinzine v. Vicory 143 Cal.App.4th 1416, 1423 (2006) (finding that workplace violence
9  petitions ("WVP") under California Code of Civil Procedure section 527.8 may not provide
10 a basis for retaliation and/or malicious prosecution actions). California Code of Civil
11 Procedure section 527.8 enables employers to seek the same remedy for its employees as
12 section 527.6 provides for natural persons. Scripps Health v. Marin 72 Cal.App.4th 324,
13 333-334 (1999). For purposes of California Code of Civil Procedure section 527.8, probable
14 cause to seek a WVP requires an employee to have suffered unlawful violence or a credible
15 threat of violence, and that great or irreparable harm would result to an employee. See Cal.
16 Code Civ. Proc. § 527.8(e). "Credible threat of violence" is a knowing and willful statement
17 or course of conduct that would place a reasonable person in fear for his or her safety, or the
18 safety of his or her immediate family, and that serves no legitimate purpose. Cal. Code Civ.
19 Proc. § 527.8(b)(2).

20     The primary issues in this case are whether there was probable cause to obtain the
21 TRO and whether the TRO was motivated by Plaintiff's stated threat about an Uzi, or the
22 purportedly critical advertisement published two months prior. Defendant Byerley was not
23 involved in the decision to obtain the TRO. Defendants Paulson and Garza contend they did
24 not intend to interfere with Plaintiffs' free speech rights, but were acting to protect
25 themselves and employees in light of Plaintiff's aggressive conduct and threatening
26 statement.
27 ///
28 ///

PORTER|SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

5
00678251.WPD          **DEFENDANTS' TRIAL BRIEF**

**B.    Defendants would have taken the same course of action regardless of Plaintiff's purportedly critical advertisement**

Defendants "can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 750 (9th Cir. 2001), quoting Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 675, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996). Here, two months passed between Plaintiff's exercise of free speech, i.e. the critical advertisement on April 12, 2005, and his July 13, 2005 visit during which he referenced an "Uzi" to a law enforcement officer; two days following, a TRO was obtained.

**C.    Witness Immunity**

A witness who allegedly falsely testifies has long been afforded absolute witness immunity (Briscoe v. LaHue, 460 U.S. 325, 330-32 (1983)) (absolute witness immunity for testimony at criminal proceedings). An exception to immunity exists as to "complaining witness," defined as one a private party who initiates prosecution against another See e.g. Burns v. Reed, 500 U.S. 478, 501 (1991) (noting definition); See also Kulas v. Flores, 255 F.3d 780, 783 (9th Cir. 2001) ("A complaining witness is a person 'who actively instigated or encouraged the prosecution of the plaintiff.'") Plaintiff bases his claim, in part, on sworn testimony submitted in support of the TRO obtained by the County of Solano. To the extent Defendants are not complaining witnesses, absolute immunity applies.

**D.    Qualified Immunity**

Defendants alleged they were acting in their official capacities at all times relevant to this action, and any alleged actions were made in good faith, without malice, or were performed with a reasonable belief that their actions were authorized by and in accord with existing law and authority. Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993); Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

Qualified immunity applies to any damages claim for actions taken by government employees in their official capacities, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Marshall v. Gates, 812 F.Supp. 1050 (C.D. Cal. 1993).

The Court must make three inquiries to determine whether the defense of qualified immunity is available to the Defendants. First, the Court must identify the right he allegedly violated. Second, the Court must determine whether the law governing his conduct is clearly enough established to alert a reasonable officer to its constitutional parameters. Third, the Court must consider whether, under the law, a reasonable officer could have believed his conduct was lawful. Reynolds v. County of San Diego, 84 F.2d 1162, 1166-1167 (9th Cir. 1996), citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Hunter v. Bryant, 502 U.S. 224, 226 (1991); DeNieva v. Reyes, 966 F.2d 480, 484-85 (9th Cir. 1992); and Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993).

It is not enough that the Plaintiff alleges that his constitutional rights were violated. This allegation is insufficient under Heflin v. Stewart County, Tenn., 958 F.2d 709 (8th Cir. 1992). For a right to have been "clearly established" something more than a general constitutional right such as due process must have been recognized. Thus, the right must be established in a "more particularized... sense." Anderson, 483 U.S. at 640. This means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." Id.; Danese v. Asman, 875 F.2d 1239, 1242 (6th Cir. 1989). It is not necessary that the "very action in question has previously been held unlawful." Rather the unlawfulness of the action must be apparent to the official "in light of the pre-existing law." Id. Heflin at 717 [Emphasis added].

The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." It is not enough to put a reasonable officer on notice that her conduct is unlawful. A right that an officer is alleged to have violated must have been "clearly established in a more particularized, and hence more relevant sense." Thus, "[t]he relevant, dispositive inquiry in determined whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen (2004) 125 S.Ct. 596. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine

PORTER|SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

1  how the relevant legal doctrine, here excessive force, will apply to the factual situation the
2  officer confronts. An officer might correctly perceive all of the relevant facts but have a
3  mistaken understanding as to whether a particular amount of force is legal in those
4  circumstances. If the officer's mistake as to what the law requires is reasonable, however, the
5  officer is entitled to the immunity defense." Saucier v. Katz 533 U.S. 194, 202-5 (2001).
6      Defendants contend there is no clearly established law indicating that it would be
7  improper for Defendants to obtain a TRO under the circumstances in this case, where
8  Defendants were acting to protect themselves and employees in light of Plaintiff's aggressive
9  conduct and threatening statement about an UZI made two months after the protected speech.

10 **E.   Damages**

11     Defendants contend Plaintiff cannot adequately demonstrate his entitlement to recover
12 damages. First, Plaintiff sought no medical or psychological care stemming from TRO. In
13 other words, there is no demonstrable proof of any physical or emotional distress injuries
14 attributable to the supposed chilling of his speech.
15     Second, Plaintiff's claim that he suffered business losses in connection with his bail
16 bond business is unsupported by the necessary documentary evidence, such as profit and loss
17 statements or tax returns, or expert testimony to establish income, expenses, and net profit.
18 Defendants have moved in limine to exclude any evidence of claimed business loss.
19     Third, Plaintiff's claim for expenses of attorney fees in connection with defense of the
20 TRO should be excluded. Defendants have moved in limine to exclude any evidence of
21 expenditure of attorney fees in connection with defense of the TRO as subject of a waiver
22 in Settlement obtained between Solano County and Plaintiff in the underlying TRO matter.
23     Fourth, Plaintiff's claims for expenses of attorney fees in connection with defense of
24 the prosecution of the criminal matter stemming from the violation of the TRO cannot be
25 sustained in that the court dismissed any action based on the criminal matter. Defendants
26 have moved in limine to exclude any evidence of expenditure of attorney fees in connection
27 with the defense of the prosecution of the criminal matter.
28 ///

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

00678251.WPD

8

**DEFENDANTS' TRIAL BRIEF**

**F.     Punitive Damages**

Punitive damages have been bifurcated from liability. While punitive damages may be recovered in actions brought under §1983, see McDaniel v. Carroll, 457 F.2d 968 (6th Cir. 1972), *cert. denied*, 409 U.S. 1106, 93 S.Ct. 897, in no way does the conduct of Defendants, as pled by Plaintiff herein, meet the standards required for imposition of such damages. In Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1971), the United States Supreme Court held that punitive damages may be awarded under §1983 only if the Plaintiff proves that the conduct of the defendant was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id. at 56; accord Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 707 (9th Cir. 1989). Conduct is malicious only if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Model Civ. Jury Instr. 9th Cir. 7.5 (2004). Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's rights. Id. The Ninth Circuit also has held that malicious, wanton, or oppressive acts are a proper basis for assessing punitive damages. Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).

**IV.**

**ANTICIPATED DISPUTES CONCERNING ADMISSIBILITY OF EVIDENCE**

**A.     Defendants moved in limine on the following issues:**

1.     Defendants request an order precluding any testimony, evidence, reference or questions relating to the criminal trial, People v. Toler, Solano County Superior Court Case No. FCR 227937, including its outcome.

2.     Defendants request an order precluding any testimony, evidence, reference or questions relating to purported evidence of lost of personal or business income arising from the alleged effect of the TRO for failure to produce supporting documents or have expert testimony to establish same.

3.     Defendants request an order precluding any testimony, evidence, reference or questions regarding payment of any attorney fees incurred in the defense of the criminal

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

00678251.WPD

9

**DEFENDANTS' TRIAL BRIEF**

1  matter <u>People v. Toler</u>, Solano County Superior Court Case No. FCR 227937, as this claim
2  has been dismissed.

3      4.    Defendants request an order precluding any testimony, evidence, reference or
4  questions regarding payment of any attorney fees incurred in the defense of the matter
5  <u>County of Solano v. Toler,</u> Solano County Superior Court Case No. FCS026197, as subject
6  to the Settlement.

7      5.    Defendants request an order precluding any testimony, evidence, reference or
8  questions regarding Defendants' seeking such advice, and the assertion of the privilege.

9      6.    Defendants request an order precluding any testimony, evidence, reference or
10 questions regarding these involvements in the campaigns for the Office of the District
11 Attorney.

12     7.    Defendants request an order precluding any testimony, evidence, reference or
13 questions regarding the Fairfield Police Report or its contents other than that Plaintiff made
14 a report regarding an alleged threat to the Fairfield Police.

## V.
## CONCLUSION

Based on the foregoing, Defendants respectfully submit Plaintiff will not be able to sustain his burden of proof at the time of trial and should take nothing by way of his Complaint.

Respectfully submitted,

DATED:   July 28, 2009

PORTER SCOTT
A Professional Corporation


By: /s/ John R. Whitefleet
    Terence J. Cassidy
    John R. Whitefleet
    Attorneys for Defendants

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

10
00678251.WPD      **DEFENDANTS' TRIAL BRIEF**