MATT GONZALEZ (SBN 188608)
MATT SPRINGMAN (SBN 252508)
GONZALEZ & LEIGH, LLP
Two Shaw Alley, 3rd Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

Attorneys for Plaintiffs
JOEL THOMAS TOLER

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL THOMAS TOLER, | Case No. CIV 06-0735 LKK DAD |
| Plaintiff, | **PLAINTIFF'S TRIAL BRIEF** |
| vs. | Date: August 11, 2009 |
| DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLEY, and DOES 1 through 10, inclusive, | Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: Honorable Lawrence K. Karlton |
| Defendants. | |

I.      STATEMENT OF FACTS

      A.      **The Children of Plaintiff Tom Toler are the Subject of Death Threats.**

      The plaintiff, Tom Toler, is a former peace officer and is currently a licensed bail bondsman and licensed private investigator in Solano County.[1]  On March 27, 2005, Mr. Toler received a phone call from Richard Oawster, during which Oawster threatened to kill Mr. Toler's two children.  Oawster called the children by name and said, "you might as well get used to not having your kids here" and "that bitch and bastard son of yours is dead."[2]  Mr. Toler, who was outside working on his motor home at the time he received the call, knew that Oawster was watching him because before the call was over, Oawster remarked, "Enjoy working on your motor home."[3]  The March 27, 2005 threat followed two threatening and harassing phone calls made directly to Mr. Toler's son earlier in the year.[4]

      Mr. Toler was familiar with Oawster through his private investigative work and knew Oawster to have a violent criminal history, including a documented history of sexually molesting his own daughter, kidnapping, and a long history of domestic violence with at least three different women.[5]  Mr. Toler was also aware that Oawster owned and carried firearms.[6]  Finally, Mr. Toler also suspected that Oawster previously came onto to his property and killed one of his dogs, and on another occasion flooded his home.[7]  Armed with the knowledge of the threats against his children and knowing the history of the man who made the threats, Mr. Toler contacted the Fairfield Police Department on March 27, 2005.[8]

      Over the course of the next three months, Mr. Toler made a series of trips to the District Attorney's Office to inquire on the status of any review or investigation into the threats made against his children.  Over those several months, Mr. Toler came to learn that neither the Police

---

[1] Docket No. 30, First Amended Complaint ("Complaint"), ¶ 12.
[2] Docket No. 61 [Declaration of Matt Springman In Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment], Ex. A at 31:21- 34-4.
[3] *Id* at 32:4-6.
[4] *Id*. at 33:9-34:4.
[5] *Id*. at 37:1 – 44:23; Complaint, ¶ 13.
[6] *Id* at 34:5-25, 151:22-152:8.
[7] *Id*. at 67:2-69:12.
[8] *Id*.

**PLAINTIFF'S TRIAL BRIEF**
**Case No. CIV 06-0735 LKK DAD**

1  Department, nor the District Attorney's Office made any significant attempt to review or

2  investigate those threats.  Mr. Toler regarded the threats made against his children as serious and

3  endeavored to impress this upon the District Attorney's Office.  However, Defendants'

4  allegations that he made violent threats are absolutely false.  Indeed, by the accounts of several

5  witnesses to Mr. Toler's visits, he is described, at worst, as irritated, upset, and indignant.

6        On April 7, 2005 Mr. Toler attempted to follow up with the District Attorney's Office

7  regarding any investigation into the report he filed with the Police Department 11 days earlier.[9]

8  After learning that the District Attorney had only received the report that day, and that the report

9  remained un-reviewed, Mr. Toler became concerned.[10]  However, after speaking with William

10  Godwin, investigator for the District Attorney's Office, Mr. Toler calmly provided Mr. Godwin

11  with a statement regarding the threats to his children.[11]

12      **B.**    **Mr. Toler, Upset with the District Attorney's Persistent Inaction**
13                 **Surrounding the Threats to His Children, Publishes an Article Critical of the**
               **District Attorney.**

14        On April 12, 2005, Mr. Toler submitted a paid article to a local newspaper, which

15  criticized defendant Paulson and the Solano County District Attorney's office, and sought to air

16  his discontent over the treatment he had received at the hands of the District Attorney's office

17  and their inaction regarding the reported threats to his children.[12]

18      **C.**    **On the Date the Article was Published and Five Days After Mr. Toler's**
19                 **Purported Threatening Behavior, Garza and Paulson Direct Their Staff**
20                 **(Byerley, Godwin) to Prepare Reports on Mr. Toler's Previous Visits.**
               **Inspector Godwin Makes Clear that the Report Was Ordered Specifically in**
21                 **Response to Mr. Toler's Critical Article.**

22        Later that day on April 12, five days after the Mr. Toler had inquired about the threats to

23  his children, and only after Mr. Toler's article appeared in a local newspaper, D.A. investigator

24  Brook Byerley, after speaking to District Attorney Paulson, prepared a report alleging that Mr.

25  Toler had violated Penal Code § 76 on April 7, 2005 by making threats against a Public

---

[9] Complaint, ¶ 14.
[10] *Id.*
[11] *Id.*
[12] Complaint, ¶ 15.

1  Officer/Public Office.  The threat allegedly made by Mr. Toler was – "don't make me defend my

2  children."[13]

3        Additionally, William Godwin, either at the direction of defendant Paulson or defendant

4  Garza, was also ordered to prepare a memorandum regarding Godwin's April 7, 2005 meeting

5  with Mr. Toler, even though Godwin did not believe the incident necessitated preparation of a

6  memorandum.[14] In fact, Godwin testified that he had a productive conversation with Mr. Toler

7  and that they parted on a friendly note.[15]  The report was prepared specifically in response to the

8  published article by Mr. Toler, and was conspicuously titled "Response to Daily Republic Article

9  Submitted by Tom Toler."[16]

10  
11  
    **D.**     **Marsha Johnson, Paulson's Personal Secretary, Makes Clear that Paulson Knew of the Critical Article, Intended to Respond, and Had Discussed Toler's Article with Al Garza**

12        As part of April 14, 2005 (Subject Heading: "RE: Today's Newspaper") email discussion

13  Marsha Johnson describes Mr. Toler's April 7, 2005 visit to the Office.  In so doing, Ms.

14  Johnson begins, "Al: I didn't know Dave has (sic) already responded to this."[17]  In fact, Garza

15  noted under oath that he and Paulson were already discussing Mr. Toler's article privately.[18]

16        Additionally, in Ms. Johnson's deposition testimony, she testifies that shortly after the

17  article appeared she raised the issue with Mr. Paulson directly in response to an inquiry from a

18  member of the County Board of Supervisors.  In response to Ms Johnson Mr. Paulson responded,

19  "Don't worry about it.  I've already taken care of it.  You don't need to respond"[19]

20  / /

21  / /

22  / /

23  / /

24  

---

25  [13] Complaint, ¶ 16.
   [14] Complaint, ¶ 17.

26  [15] Docket No. 61, Ex. D at 12:23 -13:5, 20:1-25.
   [16] Docket No. 61, Ex. C, Ex. D at 18:8-21-1.

27  [17] Docket No. 61, Ex. E
   [18] Docket No. 61, Ex F at 27:7-9

28  [19] Docket No. 61, Ex. B at 19:3-20:23.

**PLAINTIFF'S TRIAL BRIEF**
**Case No. CIV 06-0735 LKK DAD**

E.   **Two Days After Mr. Toler Files a Small Claims Action Against David Paulson, Defendants Petition for a Temporary Restraining Order Based on False Information.**

On June 13, 2005 a local newspaper published a story reporting that Mr. Toler had filed a small claims action against defendant Paulson.[20]  The small claims action was related to the inaction of the District Attorney's Office in investigating the threats made to Mr. Toler's children.  Two days later, the District Attorney filed for, and was granted, a "Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employee and Application for Temporary Restraining Order" pursuant to CCP §§ 527.8 and 527.9 in *County of Solano, et al. v. Toler* (Case No. FCS026197) ("the petition").  The order was granted ex parte by Commissioner Alberta Chew.[21]

However, the affidavit of defendant Garza relied on by Commissioner Chew contained at least two statements that defendants knew to be false:  (1) that Mr. Toler threatened to bring an "Uzi" to the District Attorney's Office on June 13, 2005; and that (2) that Garza was an expert on workplace violence. [22]

F.   **The District Attorney Files Criminal Charges Against Mr. Toler for a Violation of the Order Based on a Chance Encounter in a Parking Lot.**

On September 22, 2005, Toler was standing in the first level of a parking lot (maintained for the public) when defendant Paulson (who has his own space on the fourth level) approached him.

Notwithstanding his knowledge that the chance encounter did not involve a purposeful violation of the TRO, Paulson sought criminal prosecution of Toler for violation of California Penal Code, § 166 and other charges.[23]  At trial on the purported violation, at which Mr. Paulson was a key witness, Mr. Toler was acquitted of all charges.

On November 3, 2005, defendants sought to obtain a search warrant and have it served on Toler.  The search warrant affidavit was (1) based on false and otherwise inadequate

[20] Complaint, ¶ 18.
[21] Complaint, ¶ 19.
[22] Complaint, ¶ 22.
[23] Complaint, ¶ 26.

1    information; (2) lacked probable cause; and (3) was in violation of the Fourth Amendment of the

2    United States Constitution.[24]

3         Throughout 2006, despite no threats of violence from Mr. Toler, indeed no contact with

4    anyone from the District Attorney's office, and clearly contrary to the law governing the

5    issuance of temporary restraining orders, the defendants continued to uphold and enforce the

6    existing temporary restraining order against Mr. Toler.  In fact, the defendants continued to

7    pursue an extended three year injunction against Mr. Toler.[25]

8         On February 1, 2007, Mr. Toler sought modification of the order.  The modified order,

9    signed February 9, 2007, continued to require Mr. Toler to "stay at least twenty-five yards away

10   from the defendants, their residences, vehicles, and their place of work, which is the Solano

11   County Government Center, 675 Texas Street, Fairfield, CA"—again, the very building and area

12   where Mr. Toler conducts much of his business.[26]

13        In exchange for these modifications, Mr. Toler accepted the onerous condition that he

14   contact County Counsel before engaging in legitimate business at the Government Center, by

15   "requiring him to advise Plaintiff's counsel at the Solano County Counsel Office twenty-four

16   hours prior to entering."[27]

17        Finally, on August 21, 2007, over two years after the initial petition, the office of the

18   County Counsel, along with David Paulson, Al Garza, Brook Byerley, and Tom Toler entered

19   into a settlement agreement lifting the Temporary Restraining Order and Petition for Injunction.

20   The settlement agreement does not reach the present action currently before this Court.[28]

21   **II.     FURTHER ADMISSIONS AND STIPULATIONS**

22        At this time, there are no further admissions or stipulations not contained in the Final Pre-

23   trial Conference Order.

24

25

---

26   [24] Complaint, ¶ 27.
     [25] Complaint, ¶ 29.

27   [26] Complaint, ¶ 30.
     [27] Complaint, ¶ 31.

28   [28] Complaint, ¶ 32.

1  III.    **SUMMARY OF POINTS OF LAW**

2              1.      **Retaliation for Exercise of First Amendment Rights**

3       To establish a First Amendment retaliation claim, a plaintiff must prove that he was

4  engaged in constitutionally protected speech, that the defendant's actions "would have chilled or

5  silenced a person of ordinary firmness from future First Amendment activities", and that the

6  government would not have taken the retaliatory action but for the purpose of silencing the

7  plaintiff's speech. *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300

8  (9th Cir. 1999); *Hartman v. Moore*, 547 U.S. 250.

9       This case is, largely, about whether Mr. Toler threatened to bring an "uzi" into the

10  District Attorney's Office; and whether, if the jury finds that Mr. Toler did not make such a

11  threat, whether the TRO sought by the defendants was a pretext for retaliating against Mr. Toler

12  for his exercise of his First Amendment rights.

13       Mr. Toler maintains that he never threatened to bring an "uzi" into the Solano County

14  District Attorney's Office (or made any other violent threat), and that the only reasonable

15  explanation for defendants' allegations against were as a pretext for retaliating against Mr. Toler

16  for his criticism of the Defendants and their Office.

17              2.      **Conspiracy Under 42 U.S.C. § 1983**

18       To prove a conspiracy under § 1983, a plaintiff must show that the defendants "by some

19  concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming

20  another which results in damage." *Gilbrook v. City of Westminster*, 177 F.3d 839,856 (9th

21  Cir.1999) (quoting *Vieux v. East Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir.1990)).

22  There must be evidence of an agreement or "meeting of the minds" in order for defendants to be

23  liable for conspiracy. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-

24  41 (9th Cir. 1989).

25       It clear from the testimony of Marsha Johnson and Al Garza that Paulson was in

26  communication with his investigators almost immediately after the article was published.

27  Indeed, it is likely that he ordered, either himself, or through Mr. Garza, his investigators

28

1   (including Byerley, who also created a report on April 12) to create reports on Mr. Toler

2   immediately after the article was published—reports that nobody thought it prudent to create

3   before publication of the articles.

4        Finally, it is clear from the deposition testimony of William Godwin, that he was ordered

5   by his superior (either Paulson or Byerley) to create a report—which he titled "Response to

6   Daily Republic Article Submitted by Tom Toler—of an incident, even though he did not think it

7   was necessary given his interaction with Mr. Toler.

8               **3.**     **Credible Threat of Violence Under CA Code Civ. Proc. § 527.8**

9        To obtain a temporary restraining order under CCP 527.8, the entity seeking the order

10   must show that "employee has suffered unlawful violence or a credible threat of violence from

11   any individual, that can reasonably be construed to be carried out or to have been carried out at

12   the workplace[.]" CCP §527.8. A "[c]redible threat of violence" is defined as "a knowing and

13   willful state or course of conduct that would place a reasonable person in fear for his or her

14   safety, or the safety of his or her immediate family, and that serves no legitimate purpose." CCP

15   § 527.8(b)(2).

16        Here, Mr. Toler alleges that Al Garza perjured himself in his declaration in support of the

17   TRO by asserting that Mr. Toler threatened to bring an "uzi" into the District Attorney's Office.

18   If a jury finds that Mr. Garza did, in fact, perjure himself in his declaration, they must also find

19   that Mr. Toler did not make a credible threat of violence.

20               **4.**     **Qualified Immunity**

21        On November 6, 2008 this Court denied Defendants' motion for summary judgment on

22   the issue of qualified immunity. Because qualified immunity is an issue to be resolved before

23   trial, the issue should not go to the jury in this matter. NINTH CIRCUIT MODEL CIVIL JURY

24   INSTRUCTIONS, Qualified Immunity 9.26

25   / /

26   / /

27   / /

28

**PLAINTIFF'S TRIAL BRIEF**
**Case No. CIV 06-0735 LKK DAD**

1          **5.     Damages**

2                  **a.     Nominal Damages**

3          While Mr. Toler will seek economic damages based on his loss of income and the cost to

4   defend himself against the TRO and the criminal prosecution of his alleged violation of the TRO,

5   nominal damages are also available to Mr. Toler if the jury finds in his favor, but actual damages

6   are not proven.

7          In the event that the jury finds in Mr. Toler's favor, but also finds that his economic

8   damages are not sufficiently proven, Mr. Toler will ask the jury for nominal damages.

9                  **b.     Punitive Damages**

10         The standard for punitive damages under § 1983 is the same as the standard for punitive

11  damages under common law tort cases: "malicious, wanton, or oppressive acts or omissions are

12  within the boundaries of traditional tort standards for assessing punitive damages and foster

13  'deterrence and punishment over and above that provided by compensatory awards.'"422 F.3d

14  800, 807 (9th Cir. 2005) (citing *Smith v. Wade,* 416 U.S. 30, 49(1983)).  Punitive damages are

15  also available when defendants' conduct involves "a reckless or callous indifference to the

16  constitutional rights of others'" and are available against governmental employees acting in their

17  individual capacities.  *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir.1993); *See Monell v.*

18  *New York City Dept. of Soc. Services,* 436 U.S. 658 (1978); *City of Newport,* 453 U.S. at 254.

19         Punitive damages are available to a plaintiff even when a jury awards him or her only

20  nominal damages. *Exxon Shipping Co. v. Baker,* 128 S.Ct. 2605, 2622 (2008).

21  **IV.    ANTICIPATED DISPUTES RE: ADMISSIBILITY OF EVIDENCE**

22         Mr. Toler moved to exclude evidence and testimony of the following:

23                 1.      The report of, and testimony from, defendants' expert, Jared Zwickey.

24                 2.      Plaintiff's prior and subsequent bad acts.

25  / /

26  / /

27  / /

28

8

**PLAINTIFF'S TRIAL BRIEF**
**Case No. CIV 06-0735 LKK DAD**

1         3.     The terms of the settlement agreement between the County and Mr. Toler

2        on the TRO at issue in this case.

3 DATED: August 10, 2009         GONZALEZ & LEIGH, LLP

4

5          By: */s/ Matt Springman*

            MATT SPRINGMAN

6             Attorney for Plaintiff

            JOEL THOMAS TOLER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S TRIAL BRIEF**
**Case No. CIV 06-0735 LKK DAD**