MATT GONZALEZ (SBN 188608)
MATTHEW R. SCHULTZ (SBN 220641)
MATT SPRINGMAN (SBN 252508)
GONZALEZ & LEIGH, LLP
Two Shaw Alley, 3rd Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

Attorneys for Plaintiffs
JOEL THOMAS TOLER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL THOMAS TOLER,<br><br>         Plaintiff,<br><br>    vs.<br><br>DAVID PAULSON, COUNTY OF SOLANO, AL GARZA, BROOK BYERLEY, and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No. CIV 06-0735 LKK DAD<br><br>**AMENDED MOTION IN LIMINE NO. 4** |

**I.   INTRODUCTION**

Plaintiffs respectfully submit this motion *in limine* concerning the following instruction:

Plaintiff must also establish that the defendants lacked probable cause to seek initiation of the TRO against him. He may establish that by proving by a preponderance of the evidence that a reasonable and prudent person would not believe that plaintiff posed a credible threat of violence against employees of the district attorney's office.

Plaintiffs respectfully submit that the instruction should be excluded, or, at a minimum, modified, for the following reasons.

**II.   ARGUMENT**

A.     *Hartman v. Moore,* **547 U.S. 250 (2006) is Inapplicable To Plaintiff's Claims.**

*Hartman v. Moore,* 547 U.S. 250 (2006) addressed claims against both a prosecutor (a U.S. Attorney) and several Postal Inspectors for retaliatory prosecution.  The Inspectors, in an effort to retaliate against the plaintiff for his well-publicized criticism of the Postal Service, provided "very limited evidence" to the U.S. attorney, who then initiated a prosecution which was later dismissed for a "complete lack of direct evidence."  547 U.S. at 254.  The U.S. attorney admitted that his decision to prosecute was not motivated by the "limited" evidence, but, rather, because he wanted to attract the interest of a law firm looking for a "tough lawyer."  547 U.S. at 264.

The *Hartman* Court noted the "causal gap" between the "retaliatory animus" of the Postal Inspectors and the decision of the U.S. attorney to prosecute.  547 U.S. at 263-4.  It also noted that the "presumption that a prosecutor has legitimate grounds for the action he takes is not one we likely discard" *Id.*  Its solution was to require the plaintiff to show the absence of probable cause for the prosecutor's decision to press the underlying criminal charges.  *Id.*

Here, the instant case is different:  Plaintiff does not allege claims against both the defendants and County Counsel; rather, Plaintiff alleges that defendants, in violation of their duties and responsibilities as district attorneys, *submitted false statements* concerning Plaintiff to the County Counsel who, based on these false statements, sought the TRO.  The two defendants and the two links in the "causal chain" at issue in *Hartman*, have both been reduced to one.  This is a claim for retaliation—not a claim for retaliatory prosecution.

The fact that defendants caused harm to Plaintiff by resort to a false declaration in support for a request for a TRO does not shield them from liability in any way.  In *Saleh v. City of New York*, No. 06 CIV. 1007, 2007 WL 4437167 (S.D.N.Y.  Dec. 17, 2007), the plaintiff brought claims against two police officers for retaliation, on the grounds that the officers had contacted the Bureau of Immigration and Customs Enforcement ("ICE") in retaliation for his filing complaints against them.  The officers had acted outside their official duties *and violated*

*them* by reporting him to ICE.[1]  The court held that *Hartman* did not apply because the plaintiff did not name ICE as a defendant, nor allege that his removal proceedings were motivated by retaliation, but had instead restricted his claim to one for retaliation against the officers:

> By its terms, the holding in *Hartman* applies only to retaliatory prosecution claims. *Id.* at 265. Saleh, however, has not filed a claim for retaliatory prosecution; indeed, he has not even filed a claim for "retaliatory removal," which would perhaps present a closer question of whether *Hartman* governed this case. Saleh contends instead that the defendants reported his immigration status to ICE to punish him for filing a grievance against Officer Hickman. *Thus, Saleh does not allege that he has been prosecuted in retaliation for his CCRB report; he alleges only that defendants lodged a retaliatory report against him with ICE.* His claim, therefore, does not entail a retaliatory prosecution or any similar proceeding and for that reason, does not fall squarely within the scope of *Hartman*

2007 WL 4437167, at *5 (emphasis added).

*Saleh* is directly on point and a useful guide as to how to apply *Hartman* in this case. Here, as in *Saleh,* Plaintiff's claim against defendants rests on the fact that the defendants violated their duties.  In *Saleh,* the officers violated the laws governing their conduct as public servants; here, the defendants created a misleading and/or false affidavit and submitted it to the County Counsel.  As in *Saleh,* Plaintiff is not claiming "retaliatory arrest,"—Plaintiff is claiming a "retaliatory report" that was in itself wrongful and motivated by a desire to punish Plaintiff for First Amendment activity.  As in *Saleh,* defendants' false statements *provide an independent wrongful* basis for the Plaintiffs' claims against them.  Plaintiff must merely establish a causal connection between his protected speech and the alleged adverse action—defendants' false reports.  *See* 2007 WL 4437167, at *5-6 ("Saleh bases his retaliation claim on defendants' alleged report to ICE, and therefore must establish a causal connection between his protected speech--filing the CCRB complaint against Hickman--and the alleged adverse action--defendants' report of his immigration status to ICE.").

---

[1] The court noted that Section 3-02(b) of Title 43 of the Rules of the City of New York ("RCNY") states: "Each agency shall designate one or more officers or employees who shall be responsible for receiving reports from such agency's line workers on aliens suspected of criminal activity and for determining, on a case by case basis, what action, if any, to take on such reports. *No such determination shall be made by any line worker, nor shall any line worker transmit information respecting any alien directly to federal immigration authorities.*" 2007 WL 4437167, at *8 (emphasis added).

In fact, *Hartman* is even more applicable here than in *Saleh*. The *Hartman* court imposed a "probable cause" requirement in order to close the "causal gap" between the "retaliatory animus" of the reporting party and the prosecution's decision to prosecute. 547 U.S. at 263. The alleged false statements here render that "causal gap" nugatory: the falsity provides independent proof of causation, and nullifies the concern in *Hartman* over "discarding" the presumption that a prosecutor acted properly. 547 U.S. at 263. More fundamentally, cases involving false statements to a prosecutor destroy the efficacy of the "probable cause" test imposed in *Hartman*. How is "probable cause" to prosecute to be determined if the facts provided to the prosecutor were false? The test for whether probable cause existed under *Hartman* is an objective one. *See* 547 U.S. at 263 (imposing "probable cause" requirement in order to avoid "the factual difficulty of divining the influence of an investigator or other law enforcement officer upon the prosecutor's mind"). Where false statements are submitted to a prosecutor, the probable cause determination will be based on facts different then those necessarily understood by the prosecutor at the time, thereby undermining—if not destroying—the "no probable cause" requirement's role as a test for whether the prosecutor would have gone forward with the charges absent the retaliatory reporting from the third party. *See id.* at 263.

At bottom, the "probable cause" requirement is not a "one size fits all" test for retaliation claims that involve government officials. *Salah* demonstrates this. The facts of this case demonstrate this as well. A prosecutor that receives false statements and acts on them is different from a prosecutor who receives "very limited evidence," brings claims that are dismissed for a "complete lack of direct evidence," and admits that he prosecuted because he wanted to attract the interest of a law firm looking for a "tough lawyer." 547 U.S. at 254-64. This case is not *Hartman,* and the requirements of *Hartman* should not be applied.

### B. If A "Probable Cause" Requirement Is Still Imposed, The Current Instruction Should Be Modified In Several Ways.

Even if *Hartman* did apply, the instruction is improper for a number of important and independent reasons which necessitate its modification.

*First,* as it is currently worded, the instruction requires Plaintiff to establish "that *the*

3

*defendants* lacked probable cause to seek initiation of the TRO against him." The problem is that *Hartman* imposed a "probable cause" requirement on *the decision to initiate the prosecution*, not the decision of the Postal Inspectors to call for a prosecution by the U.S. attorney. The instruction should be modified to omit all reference to whether "the defendants" had probable cause to "seek initiation" of the TRO because they did not file a request for a TRO with the court—County Counsel did.

*Second,* reference to whether defendants—or County Counsel for that matter—had "probable cause" to "seek initiation" of the TRO is inappropriate for an additional reason. County Counsel were acting based on what Plaintiff alleges were false statements submitted by defendants. As the instruction is currently written, it is unclear whether the determination of "probable cause" is based on what a "reasonable person" would think if they were looking at defendants' false statements or if they knew what had actually happened as determined by the jury. *See* BAJI 7.33 Probable Cause for Criminal/Civil Prosecution, Comment ("In a malicious prosecution action against an attorney, the test for "probable cause" is an objective one."). To clear up this important ambiguity, the instruction should be modified to simply state that probable cause for the TRO must exist, leaving out any point of reference other than the jury's.

*Third,* the alleged falsity of the defendants' statements to County Counsel and the Court amplifies the possibly prejudicial effect of the words "probable cause," County Counsel's decision to request the TRO, and the court's decision to grant it—all of which are known to the jury. If the jury is called upon to determine whether "probable cause" existed, the jury may still be confused as to whether they are limited to the County Counsel and the court's reliance on the statements in the defendants' declaration, and may also be unduly prejudiced by the fact that both the County Counsel and the court were persuaded that a TRO was appropriate.[2] Therefore,

---

[2] This is another reason why, as set forth in Plaintiff's previous motion in limine, the Court should be making the determination as to what facts constitute probable cause, not the jury. *See, e.g.,* BAJI 7.33 Probable Cause for Criminal/Civil Prosecution, Comment ("Whether there was probable cause for the criminal prosecution is a question of law. When the facts are admitted or not controverted the question is to be determined by the court alone. When the facts are controverted or the evidence is conflicting, the jury must be instructed as to what facts, if established, constitute probable cause. Only the question of the existence of such facts should be submitted to the jury.").

two additional sentences should be added to address these issues.

### C. If A "Probable Cause" Requirement Is Still Imposed, This Proposed Instruction Is Appropriate.

Plaintiff must also establish lack of probable cause for the TRO issued against him. Plaintiff may establish this by proving, by a preponderance of all the evidence available to you, that a reasonable and prudent person with the relevant facts would not believe that the plaintiff posed a credible threat of violence against employees of the district attorney's office.

The fact that the TRO was issued based on the defendants' declaration is not evidence that probable cause existed and should not be considered when making this determination.

DATED: August 18, 2009          GONZALEZ & LEIGH, LLP


                                By: */s/ Matthew R. Schultz*
                                    MATTHEW R. SCHULTZ
                                    Attorney for Plaintiff
                                    JOEL THOMAS TOLER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Amended Motion in limine No. 4**
**Case No. CIV 06-0735 LKK DAD**