1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF CALIFORNIA

3                        ---O0O---

4     BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

5

6   JOEL THOMAS TOLER,

7         Plaintiff,

8   Vs.                              CASE NO. CIV. S-06-0735 LKK

9   DAVID PAULSON, COUNTY
    OF SOLANO, AL GARZA,
10  BROOK BYERLEY, and DOES
    1 THROUGH 10, inclusive,
11

12        Defendants.

13  _____/

14

15

16

17                      ---o0o---

18

19               REPORTER'S TRANSCRIPT

20                 TRIAL PROCEEDINGS

21           WEDNESDAY, AUGUST 26TH, 2009

22

23                      ---o0o---

24

25  Reported by:              CATHERINE E.F. BODENE,
                              CSR. No. 6926

```
 1                           APPEARANCES

 2                            ---o0o---

 3

 4    For the Plaintiff:

 5             GONZALEZ & LEIGH, LLP
               Two Shaw Alley, 3rd Floor
 6             San Francisco, California  94105

 7             BY:  MATT GONZALEZ, Attorney At Law
               BY:  MATT SPRINGMAN, Attorney At Law
 8

 9

10

11    For the Defendants:

12              PORTER SCOTT
                350 University Avenue, Suite 200
13              Sacramento, California  95825

14              BY:  TERENCE J. CASSIDY, Attorney At Law

15

16

17

18

19

20

21

22

23

24

25                            ---o0o---
```

```
 1                        PROCEEDINGS INDEX

 2                           ---o0o---

 3

 4      PROCEEDINGS:                                      PAGE

 5

 6         Verdict                                          1

 7         Closing Arg. on Puntives by Mr. Gonzalez         6

 8         Closing Arg. on Puntives by Mr. Cassidy         14

 9         Final Clos. Arg. on Punitives by Mr. Gonzalez   22

10         Jury Instruction                                25

11         Deliberations                                   28

12         Jury Note                                       28

13         Further Deliberations                           31

14         Verdict                                         31

15

16

17

18                           ---o0o---

19

20

21

22

23

24

25
```

1

```
 1                    SACRAMENTO, CALIFORNIA

 2              WEDNESDAY, AUGUST 26, 2009, 1:31 p.m.

 3                         ---oOo---

 4          THE CLERK:  Please, remain seated.

 5          Court is now in session.

 6          THE COURT:  The jury has sent a note that they have

 7   reached a verdict.

 8          Madam Clerk, call the jury in.

 9          (Jury seated at 1:32 p.m.)

10          THE COURT:  Madam Foreperson, you've reached a

11   verdict?

12          JURY FOREMAN TIRDEL:  We have, Your Honor.

13          THE COURT:  Mr. Marshal, will you obtain the verdict

14   from the foreperson and hand it to the clerk.

15          (Verdict form handed to Court for review.)

16          THE COURT:  Madam Clerk, read the verdict of the

17   jury.

18          THE CLERK:  Ladies and Gentlemen of the Jury, please

19   listen to your verdict as it will stand recorded.

20          (READING:)

21          We, the jury, in the above-entitled case, find as

22   follows:

23          Question Number 1:

24          Do you find by a preponderance of the evidence that

25   any defendant retaliated against plaintiff, Joel Thomas
```

2

1  Toler, because of his exercise of his First Amendment rights?

2         As to Defendant Paulson:  Yes.

3         As to Defendant Garza:  Yes.

4         As to Defendant Byerley:  No.

5         Question Number 2:

6         Do you find by a preponderance of the evidence that

7  any defendant conspired to retaliate against plaintiff, Joel

8  Thomas Toler, because of his exercise of his First Amendment

9  rights?

10        Defendant Paulson:  No.

11        Defendant Garza:  No.

12        Defendant Byerley:  No.

13        Question Number 3:

14        What amount do you award as compensatory damages or

15  nominal damages?

16        90,000.

17        Question Number 4:

18        As to any amount awarded as compensatory or nominal

19  damages, what portion, if any, is compensation to plaintiff

20  for attorneys' fees?

21        72,000.

22        (READING CONCLUDED.)

23        Dated today's date and signed by the foreperson.

24        So say you all?

25        THE JURY:  Yes.

3

1          THE COURT:  Does any counsel desire the jury to be

2     polled?

3          MR. GONZALEZ:  No, Your Honor.

4          MR. CASSIDY:  Yes, Your Honor.

5          THE COURT:  Madam Clerk, poll the jury.

6          THE CLERK:  Ladies and Gentlemen of the Jury, please

7     answer "yes" or "no" to the following question:  Is the

8     verdict as read your verdict?

9          Janet Wehri?

10          JUROR WEHRI:  Yes.

11          THE CLERK:  Sandy Sham?

12          JUROR SHAM:  Yes.

13          THE CLERK:  Lisa Angell?

14          JUROR ANGELL:  Yes.

15          THE CLERK:  Jennifer Tirdel?

16          JUROR TIRDEL:  Yes.

17          THE CLERK:  Kelly Schamanski?

18          JUROR SCHAMANSKI:  Yes.

19          THE CLERK:  Brian Hoard?

20          JUROR HOARD:  Yes.

21          THE CLERK:  Larry Goveia?

22          JUROR GOVEIA:  Yes.

23          THE CLERK:  Lauren Westberry?

24          JUROR WESTBERRY:  Yes.

25          THE COURT:  So say they all.

4

 1          Madam Clerk, record the jury's verdict.

 2          Ladies and Gentlemen, your job isn't quite over yet.

 3   The next step in the process is the parties are going to

 4   argue to you whether or not you should award punitive

 5   damages.

 6          Who speaks for the plaintiff?

 7          MR. GONZALEZ:  I do, Your Honor.

 8          THE COURT:  You may proceed.

 9          MR. CASSIDY:  Your Honor, if I may?

10          THE COURT:  Yes.

11          MR. CASSIDY:  I understood there would be a brief --

12          THE COURT:  You want a short recess to pull yourself

13   together and think about what you want to say?

14          That doesn't seem to me unreasonable at all.

15          This is the way it goes.

16          Fifteen minutes, Ladies and Gentlemen.  Please,

17   remember the admonition the Court has heretofore given to

18   you.

19          (Jury retires to the jury room at 1:35 p.m.)

20          THE COURT:  Off the record.

21          (Discussion held off the record.)

22          (Off the record at 1:37 p.m.)

23          (On the record at 1:55 p.m.)

24          THE CLERK:  Please, remain seated.

25          Court is now in session.

5

1          THE COURT:  Record will reflect we're in open court,

2     counsel are present, the jury is not.

3          Yes, Mr. Cassidy.

4          MR. CASSIDY:  Thank you, Your Honor.

5          Briefly, on the second verdict form having to do with

6     punitive damages --

7          THE COURT:  Yes.

8          MR. CASSIDY:  It still would have Defendant Byerley

9     in that verdict form so we would request he be deleted.

10          THE COURT:  I will do that.

11          MR. CASSIDY:  And second, I noticed that at what

12     becomes Question Number 2 is only one line as opposed to

13     putting each individual.

14          As I understand it, punitive damages are joint and

15     several.  They should be separated per defendant.

16          THE COURT:  You're absolutely right.

17          For Paulson and then for Garza.

18          Madam Clerk, after you bring the jury in, you'll take

19     this verdict form in to Sally to correct as shown.

20          We're ready for the jury.

21              (Brief pause.)

22          (Jury seated at 1:59 p.m.)

23          THE COURT:  The next step in the process -- we're

24     getting to the end -- is for you to determine whether or not

25     to award punitive damages.

6

1          Because the plaintiff has the burden of proof, they

2     have the right to both open and close.

3          Mr. Gonzalez.

4          MR. GONZALEZ:   Thank you, Your Honor.

5          Let me begin by saying I know you've gone through a

6     long process, a difficult process perhaps, and I've seen this

7     before.  I've seen juries deliberate, and there is a process

8     that happens.

9          Obviously I've not participated in that as an

10    attorney trying cases, but I do recall once trying a case

11    where the evidence took less than two days of evidence and

12    the jury deliberated over a week to reach a verdict.  So I do

13    understand there is a process.

14         And I understand, that in a case such as this, the

15    attorneys come to the trial with a certain comfort level

16    around the facts that they're alleging to be true and a

17    comfort level with who they represent and what they're trying

18    to prove.

19         And I would imagine being a prospective juror or a

20    juror and to be thrown in a position, and then to, you know,

21    deliberate, and all of it to happen in a relatively short

22    amount of time, I can imagine that it is not an easy process.

23         Up to now the instructions that you received related

24    to damages in this case that were in the category of

25    compensatory damages.

7

1        These damages were meant to compensate Tom Toler for

2    what the defendants did to him.  And without spending a lot

3    of time on it, the plaintiffs, we presented very limited

4    specificity as related to compensatory damages.

5        We gave you a dollar amount as related to defending

6    the criminal action, and after that we left, I think, a fair

7    bit of discretion to you to decide whether or not what you

8    wanted to do in terms of compensation beyond that.  There was

9    references made to the impact on his business and other

10   references, but we left that by and large to you.

11       The first thing I want to say then to you is that

12   there are, in a case like this, that compensatory damages --

13   there are limits to compensatory damages.

14       What I mean isn't a limit in a dollar amount.  But if

15   you try to envision how you should treat an aggrieved party

16   who has suffered an injury you can imagine in a car accident

17   where one person proves a car accident occurred and it is

18   somebody else's fault, that the kind of damages you would

19   want to award are compensatory.  You are trying to make the

20   person that's been injured whole.

21       So if the fender got busted, let's fix the fender.

22   If you missed a day of work, let's give you what the day of

23   work is worth.  If there is pain and suffering, let's put a

24   dollar amount on it and try to make you whole.  Because it

25   was an accident, and although you've proven that somebody did

8

1   this, you know, that's how we're going to try and deal with

2   it.

3        We're now in a stage of this proceeding though that

4   contemplates what you do when the conduct isn't just an

5   accident, when it is malicious or oppressive or in reckless

6   disregard of the plaintiff's rights.

7        In other words, what if somebody purposely rams into

8   your car to cause you the injury?

9        What if somebody with a gross disregard for you does

10  something to cause that vehicle injury?

11       The law in effect is saying that maybe it is not

12  enough to do compensatory, now we have to say we've got to do

13  something about the malice or the oppression or that reckless

14  disregard of the plaintiff's rights.

15       And it is not something you're bound to do, but I

16  think that this case reasonably calls for it when you look at

17  the facts.

18       The instruction the Court is going to read is as

19  follows:

20           (READING:)

21               If you have found for the plaintiff, you may,

22           but are not required, to award punitive damages.

23           The purpose of punitive damages are not to

24           compensate the plaintiff, but to punish a defendant

25           and to deter a defendant and others from committing

9

1          similar acts in the future.  The plaintiff has the

2          burden of proving that punitive damages should be

3          awarded and the amount by a preponderance of the

4   evidence.

5          (READING CONCLUDED.)

6          Let me read that sentence again.

7          (READING:)

8              The plaintiff has the burden of proving that

9          punitive damages should be awarded and the amount by

10         a preponderance of the evidence.  You may award

11         punitive damages only if you find that a defendant's

12         conduct was malicious, oppressive or in reckless

13         disregard of the plaintiff's rights.  Conduct is

14         malicious if it is accompanied by ill-will or spite

15         or if it is for the purpose of injuring another.

16         Conduct is in reckless disregard of the plaintiff's

17         rights if, under the circumstances, it reflects

18         complete indifference to the plaintiff's safety and

19         rights under federal law.  An act or omission is

20         oppressive if the person who performs injures or

21         damages or otherwise violates the rights of the

22         plaintiff with unnecessary harshness or severity,

23         such as by the misuse or abuse of authority or power

24         or by the taking advantage of some weakness or

25         disability or misfortune of the plaintiff.

10

1          If you find that punitive damages are

2      appropriate, you must use reason in setting the

3      amount.  Punitive damages, if any, should be in an

4      amount sufficient to fulfill their purposes, but

5      should not reflect bias, prejudice or sympathy toward

6      any party.  In considering punitive damages, you may

7      consider the degree of reprehensibility of the

8      defendant's conduct and the relationship of any award

9      of punitive damages to any actual harm inflicted on

10     the plaintiff.

11          You may impose punitive damages against one or

12     more of the defendants and none others -- and not

13     others, and may award different amounts against

14     different defendants.  Punitive damages may be

15     awarded even if you award plaintiff only nominal and

16     not compensatory damages.

17     (READING CONCLUDED.)

18          Of course, here you've awarded compensatory damages,

19 but that's what the instruction says.

20          I want to talk about four things relatively short

21 that addresses the task before you.

22          First of all, let me say this was not a case of

23 denial.  This was not a case where the defendants lied only

24 and that's all they did, that they denied the truth of

25 something, which in and of itself could give rise to malice,

1  it could give rise to oppression, it could give rise to

2  reckless disregard of plaintiff's rights, Tom Toler's rights,

3  but they went beyond that.

4        In other words, they mischaracterized and fabricated

5  something.  And you've heard that testimony.  And while it

6  may not be something you particularly want to revisit, we're

7  talking about declarations, we're talking about e-mails,

8  we're talking about meetings, we're talking about whether or

9  not the paper was read.

10        And we know that it's one thing to lie, it's another

11  thing to allow evidence to be constructed against someone or

12  to stand aside while that's happening and to see that brought

13  to bear against somebody.

14        How do you calculate that kind of damage?

15        I also want to emphasize that in addition to it not

16  simply being a case about a denial, that there is the added

17  factor here that these two defendants acted under color of

18  state law.

19        They are a public official and a high-ranking

20  employee in that office.  They, in effect, acted to protect

21  themselves rather than others, which is in contradiction to

22  the very purpose of the office that Dave Paulson represents.

23        Their actions have discouraged how many others from

24  coming forward?  How many others have feared reprisal?

25        How many others have watched and seen what has

12

1    happened to Tom Toler in that community, everything related

2    to reputation.

3         Imagine what it is to have an office generating

4    declarations and coming after you and trying to criminally

5    prosecute you, in effect send you to jail, because of

6    something that offends you, because you're tired of dealing

7    with someone that is being critical of your office.

8         This is not a trivial matter.

9         The third thing I want to emphasize is that both

10   sides have the opportunity during this part of the proceeding

11   to put on evidence.  We have elected not to and so has the

12   other side.

13        But I want to emphasize here that there has been a

14   lack of remorse about what has taken place.  These were not

15   individuals who engaged in conduct and then stopped that

16   conduct, made an apology and tried to fix what they had done.

17        These are men that, in effect, took their positions

18   all the way into the courthouse, all the way to a chair under

19   oath, and in effect counted on you, as jurors, to let them go

20   because they figure they have all the advantages.

21        They come into this courtroom representing law

22   enforcement.  They come in here with a general sense that:

23   Well, we're the good guys.  Of course you're going to find in

24   their favor if you are given a chance to.

25        It is that lack of remorse and arrogance you have to

13

1   consider.  What does it take for a human being to withstand

2   this kind of attack on them personally, professionally,

3   reputation?

4        What does it mean for an individual to stand up to it

5   and say that I trust people that hear this evidence,

6   notwithstanding the fact that we all want to have a different

7   opinion of what law enforcement or in this case a single

8   District Attorney and his Chief Investigator are capable of

9   doing.

10        That's the decision that you have to make.  It's as I

11   said previously, it's not something you asked to do, it is

12   not something you volunteered for.  You didn't know what you

13   were getting yourself into.  But in your life, whether it is

14   difficult or not, you get opportunities to stand up for

15   something and to do the right thing.  And that's what we're

16   asking you to do.

17        We're not sitting around fabricating facts that we

18   can come in front of a jury just because we want to play out

19   historical scenarios or something.  This happened to a

20   person.  This happened to a human being.  And he's here

21   because he wants justice.

22        The final thing is what is the appropriate amount?

23        There's a long history in American jurisprudence for

24   the awarding of punitive damages, and it goes all the way

25   back into the common law.

14

1          You have to unequivocally discourage this behavior.

2     You have to punish for what has been done.  You have to let

3     others know that this conduct cannot be tolerated in a free

4     society.

5          You now can act to be a deterrent against what I

6     believe the evidence has shown to be oppressive and arbitrary

7     behavior.

8          These gentlemen did not have sympathy for Tom Toler.

9     They did not respect the law.  They did not respect the law

10    in the face of evidence.

11         In this democracy we must cause their actions to be

12    regretted.  We have to -- you have to award an amount that

13    causes them remorse and that causes them just like any other

14    human being that walks into this courtroom.  Right?

15         You heard the Court issue an instruction that the law

16    does not respect persons, it is not a respecter of titles.

17    You walk into this courtroom, a federal court room in the

18    United States of America to get justice, to present your

19    case.  And as a jury you have the difficult and unenviable

20    duty to give honor to that struggle for justice.

21         Thank you.

22         THE COURT:  Mr. Cassidy.

23         MR. CASSIDY:  Thank you, Your Honor.

24         Ladies and Gentlemen of the Jury, Your Honor,

25    Counsel:

15

1          I, once again, thank you for acting as jurors.  I do

2     so certainly humbly and recognizing and respecting that you

3     worked very hard to reach your decision.

4          And my clients respect your decision.  And you have

5     sent a message to them about your finding about what took

6     place here.  And that's a very important part that my clients

7     understand that they have now been held liable to Mr. Toler.

8          And I just want to add if there was anything that I

9     said or did during the course of the trial that somehow

10     affected that, I apologize.  And please excuse that and

11     please set that aside because I wouldn't want to influence

12     somehow that I acted improperly or said or did anything that

13     may have, you know, affected your decision in that regard.

14          Mr. Gonzalez has read you the instruction, and the

15     first determination, there are two questions you're going to

16     be asked, I talked about the verdict forms before, you saw

17     the verdict form, the first question you're going to be asked

18     is whether or not you find that either Mr. Paulson or

19     Mr. Garza acted maliciously or oppressively.

20          You'll be instructed on the law by the judge.  And

21     obviously you have found that they did not act reasonably in

22     the manner that I suggested, but -- and that is fully

23     respected in relation to your decision making.

24          Defendants submit that they did not act maliciously,

25     that they did try to do the right thing.  But they felt like

16

1    there would be some hearings, some determination made

2    throughout this process.

3         They did not just act on their own.  They consulted

4    with county counsel to try to make the right decision.  And

5    now that that has come full circle, I can only suggest to you

6    that they weren't trying in some manner to abuse their

7    authority or act oppressively towards Mr. Toler.  And it was

8    not out of malice or ill-will.

9         Mr. Gonzalez touched on the instruction, and there

10   are a couple of things that are important from that.

11        The award of punitive damages is optional.  And it is

12   not to award further compensatory damages to Mr. Toler.

13   You've already done that.

14        You have awarded damages to make him whole as you

15   deemed proper and used your reason in awarding those damages.

16   So it is not appropriate to increase the award of

17   compensatory damages under the guise of awarding punitive

18   damages.

19        Because it's optional, there are some considerations

20   that you can look at and decide.  And one of the foremost, I

21   think, considerations is is the verdict in this case just

22   punishment enough.

23        And by "just punishment" I mean have you sent a

24   message back to the District Attorney, to the Chief

25   Investigator, that you found that -- and they are law

17

1   enforcement officials.  I mean, they both are.  They

2   understand you have told them now that they violated the law

3   based on your finding.

4        That is a verdict that stands against them for the

5   rest of their careers.  And that is a very strong message

6   that our jury sends as a society.

7        The District Attorney's Office really does exist on

8   the jury system.  The jury system tells the District Attorney

9   sometimes whether a person has committed the crime or has not

10  committed the crime.

11       And your role in playing this has been recognized by

12  the District Attorney and the Chief Investigator.  And they

13  feel it is a very important role, and they respect your

14  decision.

15       And I apologize for repeating myself, but as law

16  enforcement officers and as district attorneys, they do

17  understand the message here.

18       In the old days, when someone was found liable, they

19  were oftentimes brought out into the yard.  And they were put

20  on public display.  And the punishment, if you will, was that

21  they were going to be passed by members of their community

22  and be seen by members of the community as having caused and

23  done the offense for which they were charged.  They literally

24  used to put them in a stock, and there was public

25  humiliation.

18

1        Well, that actually still applies today.  And how

2   that applies today is through our media.  And the media sends

3   the message back.

4        This case will be reported in the papers most likely

5   in Sacramento.  It will reach the papers in the Fairfield and

6   Solano County area, perhaps Napa and perhaps the Bay Area.

7   And clearly the message will be the humiliation and the

8   humbling that the District Attorney and the Chief

9   Investigator feel and experience as a result of this.

10       And that type of punishment, in knowing now that

11  there has been a finding that they violated the law, is a

12  very humbling experience.

13       Do they recognize now, perhaps in hindsight, that

14  they might have done something differently?

15       Yes.

16       I mean, as soon as your word is sent out, thoughts

17  are already had of:  You know, is there something we can

18  change?  Is there something we can do?

19       We didn't put in a lot of evidence on that.  You

20  heard over and over the evidence in this case.  And we didn't

21  feel like it was necessary to put on a lot of evidence in

22  addition to that.

23       But this is something now.  And you obviously will

24  remember your jury experience because it's been very

25  important to you.  But likewise, Mr. Paulson and Mr. Garza

19

1    will live with this verdict, not only through the media, but

2    they'll live with it for the rest of their lives as well.

3          This verdict does go on the record.  It is published,

4    if you will.  And their dealing with that occurs on a

5    day-to-day basis.

6          They now if ever asked to answer any question about

7    whether there is any judgment against them, the answer is

8    "Yes."  If anyone were ever to make an inquiry of that, the

9    answer is "Yes."

10         They will have to, you know, live with the fact that

11   you did find they violated the law as law enforcement

12   officers.

13         That is a very, I think, humbling and meaningful

14   experience that one doesn't just walk away and forget this.

15   They're not treating this lightly.

16         MR. GONZALEZ:  I'm sorry, Counsel.

17         Your Honor, I'm going to ask that Counsel not testify

18   for his clients.  We're willing to reopen the evidence if

19   they want to take the stand and say these things.

20         THE COURT:  The objection is overruled.

21         You may proceed, sir.

22         MR. CASSIDY:  A couple other points that I think are

23   important to make here, the -- I'm sorry.  I lost my train of

24   thought for a moment.

25         To go through this experience at trial is something

20

1    that is very difficult.  And while one party has the right to

2    assert and stand up for their rights, another party does have

3    the right to try to defend themselves.

4         And now you have certainly disagreed with that, but

5    it doesn't mean that somehow they shouldn't come forward and

6    tell their story.

7         And so I think in terms of holding that against them

8    and finding that somehow that makes them malicious in this

9    instance I would disagree with, and I would respectfully

10   submit that is not something that should be used to support a

11   claim for malice.

12        The other thing that happens with respect to

13   Mr. Paulson and Mr. Garza is that they now return to their

14   peers, and they also now face everyone locally in the

15   community.

16        So it is not just broadcast in the media, it is not

17   just something that they go home and experience or they

18   experience if they want to take out a loan.  But it is also

19   something that they have to face day-to-day with members of

20   the public, members of the local courts, members of other law

21   enforcement agencies.  They are all going to be made aware of

22   this, and it is a very humbling experience.

23        And so I would respectfully submit, and I do

24   appreciate that you've worked hard on this, that they will

25   live with this for the rest of their lives.

21

1          And is there some deterrence in this?

2          I would suggest to you that Mr. Paulson and Mr. Garza

3    have received the deterrence that they need.  They have been

4    told that you disagreed with how they acted.  You believed

5    and found that they retaliated against Mr. Toler.  And that

6    is going to send a message to them to act differently.

7          If there is a Mr. Toler in the future, perhaps

8    different methods can be employed to try to be sure that his

9    needs or there is more responsive methods used to communicate

10   with him in the future, I think that message has been sent.

11         The other thing that I believe is sending a

12   significant message back is the fact that you have awarded a

13   significant amount of damages.  $90,000 is not a light

14   amount.  That is a significant amount of money.

15         That will certainly be heard throughout the community

16   and will send the message back that a jury is not certainly

17   concerned about awarding damages in this type of case and

18   particularly against these defendants.

19         So as this case does follow them throughout their

20   future careers and in their personal life, I would

21   respectfully submit that, as the instruction says, that you

22   are to use, again, your reason.

23         And when I concluded my closing argument before, we

24   put our trust in you to use your reason and you did.  And I

25   once again put our trust in you to use your sound reason.

22

1        I respectfully request that you not find that they

2   acted maliciously or that you not award any punitive damages

3   against Mr. Paulson or Mr. Garza.

4        I believe that this verdict sends the message and is

5   punishment enough.  With that, again, I trust your sound

6   judgment.

7        So, once again, I have that position of sitting down.

8   I can't respond to Mr. Gonzalez.  But I hope that you do

9   consider this very carefully and use your sound judgment.

10       Thank you.

11       MR. GONZALEZ:  Ladies and Gentlemen, I don't mean to

12  be rude to Counsel, but as the Court has told you, the

13  evidence comes from the chair.

14       It is not enough to say that this is humbling and

15  there's all this remorse.  They have the ability to say that

16  themselves.  They have had the ability not to walk into that

17  courtroom and testify under oath to some of the things they

18  testified.

19       They were not compelled to do that, Ladies and

20  Gentlemen.  They were not.  And that is part of the problem

21  here.

22       When Counsel says that they have the right to defend

23  themselves, this is not -- this was not a defense.  This was

24  trying to portray Tom Toler in a way most negatively so that

25  a judge would do something to him, so he would be convicted

23

1    of charges, so he would be jailed, so that he would have his

2    business messed up, so that his minor kids wouldn't have the

3    security of their home.

4              This is a serious matter.

5              What did Tom Toler do?

6              Tom Toler went to the District Attorney.  Here he is,

7    an upstanding citizen.  He's given, you know, thousands of

8    hours of community service for your protection, for my

9    protection, for their protection.  And he gets treated in a

10   gross manner, and it has continued into this courtroom.

11             And I don't do it because I'm a bad person and I'm

12   trying to be mean to these guys or anything like that.  I'm

13   here saying this to you because you have to assess was it

14   malicious, was it oppressive, was it in reckless disregard

15   for Tom Toler's rights?

16             And there is an answer to that, and the answer is

17   "Yes."  And they choose to act that way, and that's why we're

18   here today.

19             You know, Tom Toler's made a lot of sacrifices in his

20   life for other people.  He's done them, and I suppose good

21   people make sacrifices for other people.  But I am not going

22   to expound on the things you haven't heard because that

23   wouldn't be evidence.  I want to keep it limited to what you

24   actually heard.

25             What is it when you falsely testify or give evidence

24

1    against someone and try to put them in jail?

2            What is it when you are an elected District Attorney

3    and you decide you're allowed to do that?

4            What is it when you allow your employees to come into

5    court and do summersaults over whether or not they knew that

6    you responded to an inquiry from the Board of Supervisors?

7            What is it when you do that?

8            Why should we say:  Oh, well, they're humbled now.

9    It is all over.  They're humbled and they're going to be

10   embarrassed, therefore it's all over.  Let's just go home and

11   be friends.

12           Punitive damages is part of awarding for the harm

13   that they caused, the harm that they did.  It says loud and

14   clear that their actions were oppressive, malicious, in

15   disregard of Tom Toler's rights.

16           You know, you are in a position that, you know, when

17   you look at this case, and you look at this evidence, and you

18   walk out of this courtroom and out of this courthouse, you

19   should feel that you made a decision based on the evidence

20   that was before you and that you can stand by it and you can

21   respect it.

22           And it may be that, yes, we're unhappy to have to

23   come to terms that any elected official got to a place where

24   he allowed this to happen or his Chief Investigator allowed

25   this to happen, but this is a clear case, Ladies and

25

1    Gentlemen.

2         From the beginning of this case there are the gross

3    efforts to mischaracterize Tom's first visit to that office,

4    the efforts repeatedly to suggest that his pleas for help in

5    stating his willingness to protect his children were threats

6    against the Fairfield police and threats against Mr. Oawster.

7         And then you had all the lengths to which they go to

8    generate paper about Tom Toler but do so little about

9    Mr. Oawster.  They don't do a threat assessment on him.

10   They're just not -- they don't care frankly.

11        And that is oppressive, that is offensive and that's

12   why we ask that you return the appropriate decision.

13        Thank you.

14        THE COURT:  Madam Clerk, will you hand the jury the

15   one instruction.

16        (READING:)

17        Ladies and Gentlemen:

18             If you have found for the plaintiff, you may,

19             but are not required to award punitive damages.  The

20             purpose of punitive damages are not to compensate the

21             plaintiff, but to punish a defendant and deter a

22             defendant and others from committing similar acts in

23             the future.

24             The plaintiff has the burden of proving that

25             punitive damages should be awarded and the amount by

26

1      a preponderance of the evidence.  You may award

2      punitive damages only if you find that a defendant's

3      conduct was malicious, oppressive or in reckless

4      disregard of the plaintiff's rights.  Conduct is

5      malicious if it is accompanied by ill-will or spite,

6      or if it is for the purpose of injuring another.

7      Conduct is in reckless disregard of the plaintiff's

8      rights if, under the circumstances, it reflects

9      complete indifference to the plaintiff's safety and

10     rights under federal law.  An act or omission is

11     oppressive if the person who performed injures or

12     damages or otherwise violates the rights of a

13     plaintiff with unnecessary harshness or severity,

14     such as by the misuse or abuse of authority or power,

15     or by the taking advantage of some weakness or

16     disability or misfortune of the plaintiff.

17          If you find that punitive damages are

18     appropriate, you must use reason in setting the

19     amount.  Punitive damages, if any, should be in an

20     amount sufficient to fulfill their purpose, but

21     should not reflect bias, prejudice or sympathy toward

22     any party.  In considering punitive damages, you may

23     consider the degree of reprehensibility of the

24     defendant's conduct and the relationship of any award

25     of punitive damages to actual harm inflicted by the

27

1          plaintiff.

2               You may impose punitive damages against one or

3          more of the defendants and not others.  You may award

4          different amounts against different defendants.

5          Punitive damages may be awarded even if you award

6          plaintiff only nominal and not compensatory damages.

7          (READING CONCLUDED.)

8          And, once again, there is a verdict form:

9          (READING:)

10         Do you find by a preponderance of the evidence

11         that defendant's conduct was malicious, oppressive or

12         in reckless disregard of plaintiff's First Amendment

13         rights?

14         (READING CONCLUDED.)

15              Then each of the defendants are named, "Yes" or "No".

16    And when you have unanimously agreed upon that, your

17    foreperson will check that.

18         Second question is:

19         (READING:)

20         If you answered "No" in Question 1 as to all of the

21         defendants, your foreperson should date and sign the

22         verdict form and return it to the court.  If you

23         answered "Yes" as to Question 1 as to any of the

24         defendants, please answer Question 2.

25         What amount do you award as punitive damages?

28

1          (READING CONCLUDED.)

2          Then there is a blank for Paulson and a blank for

3     Garza.

4          That is how much each of them will be liable for

5     punitive damages.

6          Once again, you date it and the foreperson signs it.

7          Mr. Marshal, will you come forward.

8          Madam Clerk, you will deliver the verdict form to the

9     marshal.

10          Ladies and Gentlemen, this is your last task.  Will

11     you please follow the marshal in for further deliberations.

12          (Jury retires for further deliberations at 2:33 p.m.)

13          THE COURT:  Stand in recess.

14          (Off the record at 2:33 p.m.)

15          (Back on the record at 3:52 p.m.)

16          THE COURT:  On the record.

17          We have a message from the jury which may be

18     disconcerting.

19          (READING:)

20          Your Honor, we have carefully considered the

21          instruction package containing Instructions Number 1

22          through 36 many times over the course of the three

23          days of deliberation.  We were not aware that there

24          would be other instructions.  When we arrived at the

25          sum of $90,000, our intention was to award 72,000 in

29

1          compensatory damages, all of which should be for

2          attorneys fees, and $18,000 in punitive damages.  We

3          referenced Instruction Number 32 in making this

4          decision.  We, all eight of us, were unaware we were

5          to consider punitive damages at a separate penalty

6          phase.

7          (READING CONCLUDED.)

8          I read this as saying that they've already done their

9    determination of punitive damages and that there's no more to

10   be done.

11         Somebody want to say something?

12         MR. CASSIDY:  I was going to let plaintiff go first.

13   I get the middle say.

14         MR. GONZALEZ:  Your Honor, the one thing I think you

15   do have to tell the jury is that they have to then make the

16   appropriate findings that the defendants acted with malice.

17   They have to fill out those verdict forms.

18         MR. CASSIDY:  Well, I think that, but plus they need

19   to break down the amount.

20         THE COURT:  They just have.  They said all $18,000

21   over the above $72,000 they apparently were awarding --

22         MR. CASSIDY:  How would they split the 18 amongst the

23   two defendants?

24         THE COURT:  I see.  Okay.

25         Let's bring the jury in, and we'll try and talk to

30

1    them about what to do, take two or hit to right or whatever.

2            MR. GONZALEZ:  Your Honor, I do think that you should

3    say to the jury that compensatory damages included not just

4    attorneys fees, but also allows reputation or pain and

5    suffering just so --

6            THE COURT:  I understand.

7            I've got to believe the jury said what they meant,

8    but I will try and explore that with them.

9            (Jury seated at 3:56 p.m.)

10           THE COURT:  Never a dull moment, folks.

11           JURY FOREMAN TIRDEL:  No, Your Honor.

12           THE COURT:  Let me try and understand what you're

13   telling me and see where we go from there.

14           Your intention was the $72,000 would be for the

15   attorney's fees.  There would be no compensation for pain,

16   suffering, loss of reputation, any of that.  All of the rest

17   of the $18,000 was for punitive damages.

18           Was that the jury's intention?

19           JURY FOREMAN TIRDEL:  That is correct, Your Honor.

20           THE COURT:  You have to do two things then.  I will

21   accept that the $18,000 is your award of punitive damages.

22   We don't have to go through all of that again.  But you must

23   make a finding specifically as to whether or not there was

24   malice -- well, the three things.  And then you must break

25   the $18,000 down between the two defendants.

31

```
 1            Okay?

 2            JURY FOREMAN TIRDEL:  Fair enough.

 3            THE COURT:  You have -- I think the jury -- well, I'm

 4   almost positive the jury verdict permits you to do those two

 5   things.  So if you'll retire and do that, we can proceed from

 6   there.

 7            Thank you, Ladies and Gentlemen.

 8            (Jury retires for further deliberations at 3:58 p.m.)

 9            THE COURT:  Madam Clerk, record the jury's note.

10            Stand in recess.

11            (Off the record at 3:59 p.m.)

12            (On the record at 4:07 p.m.)

13            THE CLERK:  Please, remain seated.

14            Court is now in session.

15            (Jury seated at 4:09 p.m.)

16            THE COURT:  Mr. Marshal, will you get the verdict

17   from the jury and hand it to the courtroom deputy.

18            (Verdict form handed to Court for review.)

19            THE COURT:  Madam Clerk, publish the jury's

20   verdict.

21            THE CLERK:  Ladies and Gentlemen of the Jury, listen

22   to your verdict as it will stand recorded.

23            (READING:)

24            We, the jury, in the above entitled case, find as

25   follows:
```

32

```
 1              Question Number 1:
 2              Do you find by a preponderance of the evidence that
 3     any defendant's conduct was malicious, oppressive or in
 4     reckless disregard of plaintiff's First Amendment rights?
 5              As to Defendant Paulson:  Yes.
 6              As to Defendant Garza:  Yes.
 7              As to Question Number 2:
 8              What amount do you award as punitive damages?
 9              $9000 for Paulson and $9000 for Garza.
10              (READING CONCLUDED.)
11              Signed today's date and signed by the foreperson.
12              So say you all?
13              THE JURY:  Yes.
14              THE COURT:  Again, does Counsel desire a polling of
15     the jury?
16              MR. GONZALEZ:  No, Your Honor.
17              MR. CASSIDY:  No, Your Honor.
18              THE COURT:  Thank you.
19              Ladies and Gentlemen, this has been a very long, very
20     difficult case, and I want to thank you.  You know, it is
21     customary that the lawyers thank you in their final argument,
22     and it is customary the Court thank you as well.  And it is
23     right.  We interrupt your life to come down and decide these
24     matters for folks that you don't know or have any interest
25     beyond the case in.
```

1          And that's right.  We should thank you.  But I want

2     to suggest to you that in another sense it is inappropriate,

3     because what we all do together, counsel, myself, and

4     especially you, is the best expression of democracy in the

5     world.

6          If there is an appeal in this case, the appeal will

7     be about what I've done, not what you've done.  Because if

8     I've allowed appropriate evidence in, kept inappropriate

9     evidence out, and given you appropriate instructions, your

10    factual determination is inviolate.  It can't be overturned.

11         I used to tell folks a long time ago, when I was a

12    trial lawyer, and you can tell from my beard how long ago

13    that was, I used to say to them:  Ladies and Gentlemen, if I

14    had a matter of great importance to me, I would want the 12

15    people and true to decide it and not the fellow in the black

16    robe.

17         And now that I've been the fellow in the black robe

18    for a lot of years, I have no reason to change my mind.  It

19    is not that you're so much smarter than I am, it's that when

20    people try matters to me and I go back into chambers to try

21    and figure it out, I've got nobody to talk to.

22         There is nobody around to say:  Wait a minute, judge.

23    That's not what happened.  The theory of the jury is that

24    when you all deliberate together, that's exactly what does

25    happen.  And I believe that.

34

1          I hope that you have had a good experience.  And when

2     you hear people outside attacking the jury system say:  You

3     know, that wasn't my experience at all.

4          I have two last things to say to you.  The first is

5     that your vow of silence is now lifted.  If you want to talk

6     to the lawyers, you can.  But if you don't, just tell them to

7     take a hike.  It is perfectly appropriate.

8          And you are bound by one thing.  You cannot discuss

9     what happened in the jury room.  That continues to be

10    absolutely inviolate.

11         Sometimes the lawyers want to say:  Well, what did I

12    do that got you upset or happy or whatever.  And it is up to

13    you whether you want to talk to them about that.

14         The last thing I'm going to say to you is, and I'm

15    sure you don't remember, it was so long ago when we started

16    this trial, but when we started these proceedings I said,

17    "This is your United States District Court," and then I began

18    to behave as if it was mine.

19         But it is not mine, it is yours.  So I've always

20    thought it odd that jurors never got to see the chambers that

21    I occupy on their behalf.  For that reason, every since I've

22    been a judge, I've always invited the jury back to chambers.

23         We can talk about everything except this case

24    because, you know, there is going to be more lawyer

25    hoopty-do.  But it is late, and you've had a very long, hard

35

1     task, and if you want to go home, believe me, I won't feel

2     insulted at all.

3             But if you want to come back, right after we stand in

4     recess, Ana will show you the way to chambers.

5             Thank you, Ladies and Gentlemen.

6             Stand in recess.

7             (Off the record at 4:14 p.m.)

8                                 ---o0o---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                      REPORTER'S CERTIFICATE

2                           ---o0o---

3
   STATE OF CALIFORNIA  )
4  COUNTY OF SACRAMENTO )

5

6          I certify that the foregoing is a correct transcript
7
   from the record of proceedings in the above-entitled matter.
8

9

10              IN WITNESS WHEREOF, I subscribe this
   certificate at Sacramento, California on this 24TH day of
11 MARCH, 2010.

12

13

14  /S/_Catherine E.F. Bodene_____
          CATHERINE E.F. BODENE, CSR NO. 6926
15        Official United States District Court Reporter

16

17

18

19

20

21

22

23

24

25
```